# Exhibit A

# E
# x
# h
# i
# b
# i
# t

# A

# Exhibit A

Electronically Filed
06/10/2015 09:53:22 AM

**CLERK OF THE COURT**

1  Darren Heyman
2  830 Carnegie St. #1324
   Henderson, NV 89052
3  Telephone: (702) 576-8122
   Facsimile: (702) 977-8890
4  E-mail: Darren.Heyman@Gmail.com
   In proper person
5

6                    **DISTRICT COURT**

7                  **CLARK COUNTY, NEVADA**

8

9  **DARREN HEYMAN,**            | CASE NO.:  A- 15 -718189- C
                                 | DEPT. NO.: XXXI I
10         **an individual,**

11         **Plaintiff,**          | **AMENDED COMPLAINT**

12 **vs.**

13
   **THE STATE OF NEVADA EX REL.**
14 **BOARD OF THE REGENTS OF THE NEVADA**
   **SYSTEM OF HIGHER EDUCATION ON**
15 **BEHALF OF THE UNIVERSITY OF**
   **NEVADA, LAS VEGAS; NEAL**
16 **SMATRESK; DONALD SNYDER; STOWE**
   **SHOEMAKER; RHONDA**
17 **MONTGOMERY; CURTIS LOVE; SARAH**
   **TANFORD; PHILLIP BURNS; KRISTIN**
18 **MALEK; LISA MOLL-CAIN; AND DOES I**
   **- X INCLUSIVE,**
19

20         **Defendants.**

21

22

23      **COMES NOW**, Plaintiff DARREN HEYMAN (hereinafter "Darren"), an individual,

24  acting pro se, and for his causes of action against Defendants the STATE OF NEVADA ex rel.

25  BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION on behalf of

26  the UNIVERSITY OF NEVADA, LAS VEGAS; NEAL SMATRESK; DONALD SNYDER;

27  RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS;

28

                        AMENDED COMPLAINT
                              1

KRISTIN MALEK; and LISA MOLL-CAIN, (hereinafter "Defendants"); and DOES I through X, alleges and avers as follows:

## A. JURISDICTION

01.     At all times mentioned in this Amended Complaint Darren was and is a citizen of the United States of America and a resident of the State of Nevada.

02.     At all times mentioned herein, Darren was and is a resident of Clark County, Nevada.

03.     Upon information and belief, it is alleged that Defendant the STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS (hereinafter known as "UNLV") is physically located in, or doing business in, Clark County Nevada.

04.     Upon information and belief, it is alleged that Defendants, individuals DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN (hereinafter "Nevada Individual Defendants") were, and are, residents of, or physically located in, Clark County, Nevada.

05.     Upon information and belief, it is alleged that Defendant NEAL SMATRESK was a resident of Clark County, Nevada at the time of the events of the basis of this Amended Complaint, but is no longer a resident of Clark County, Nevada.

06.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X, inclusive, are unknown to Darren, who therefore sues said Defendants by such fictitious names.  Darren is informed, believes and thereupon

alleges the Defendants designated herein as DOES I through X, inclusive, are any one of the following:

    (a)    Parties responsible in some manner for the events and happenings herein referred to caused injuries and damages proximately thereby to Darren as herein alleged; or

    (b)    Parties are the agents, servants, employees, friends and/or partners of the Defendants.

    07.    Darren will ask leave of the Court to amend this Amended Complaint to insert the true names and capacities of said Defendants, DOES I through X inclusive, when the same have been ascertained by Darren, together with appropriate charging allegations, and to join said Defendants in the action.

    08.    That all claims for relief set forth herein arise from a common nucleus of operative facts.

    09.    The acts and omissions alleged hereafter occurred within Clark County, State of Nevada.

## B. PARTIES

    10.    At all times in this Amended Complaint, Darren is a private individual who lives in Clark County, Nevada, and who did not voluntarily interject himself into a public controversy.

    11.    At all times in this Amended Complaint, Darren was a registered Doctorate of Philosophy (hereinafter "Ph.D.") student at UNLV in the William F. Harrah College of Hotel Administration (hereinafter "Hotel College").

    12.    At all times in this Amended Complaint, Darren was a graduate assistant at the University of Nevada, Las Vegas.

13.     At all times mentioned in this Amended Complaint, Darren had a valid student contract with UNLV.

14.     At the time of the filing of this Amended Complaint, Darren is taking a leave of absence from the Ph.D. program at UNLV and the Hotel College.

15.     At all times in this Amended Complaint, Defendant, State of Nevada, is a state in the United States of America, provides and oversees the System of Higher Education in the state of Nevada.  The Office of the Attorney General of the state of Nevada are located in the State of Nevada, 100 North Carson Street, Carson City, NV 89701, telephone number (775) 684-1263.

16.     At all times in this Amended Complaint, Defendant, the Board of Regents of the Nevada System of Higher Education is a board which is in charge of all Nevada state-run universities, including the University of Nevada, Las Vegas and its offices are located in the State of Nevada, 4300 S. Maryland Pkwy., Las Vegas, NV 89119, telephone number (702) 889-8426.

17.     The Board of Regents of the Nevada System of Higher Education is an agent for the state of Nevada.

18.     At all times in this Amended Complaint, Defendant, University of Nevada, Las Vegas, is a Nevada state-run university located in the state of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

19.     University of Nevada, Las Vegas is a state university run by UNLV and is located in the state of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

20.     At all times in this Amended Complaint, William F. Harrah College of Hotel Administration (hereinafter "Hotel College") is a state-college run by UNLV and is located in

the State of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

21.     Upon information and belief, it is alleged that the Hotel College is an agent of UNLV.

22.     Defendant President Neal Smatresk, Ph.D. (hereinafter "President Smatresk") was the President of University of Nevada, Las Vegas at the time of many of the events herein.  He is sued in his official capacity only.

23.     President Smatresk was an agent of UNLV.

24.     At all times in this Amended Complaint Defendant President Donald Snyder (hereinafter "President Snyder") is and was either the Dean of the Hotel College or President of University of Nevada, Las Vegas.  He is sued in his official and individual capacities.

25.     President Snyder is and was an agent of UNLV.

26.     At all times in this Amended Complaint Defendant Stowe Shoemaker, Ph.D. (hereinafter "Dean Shoemaker") is and was either a tenured faculty member at University of Nevada, Las Vegas, in the Hotel College, or Dean of the Hotel College.  He is sued in his official and individual capacities.

27.     Dean Shoemaker is and was an agent of UNLV.

28.     At all times in this Amended Complaint Defendant Dr. Rhonda Montgomery, Ph.D. (hereinafter "Prof. Montgomery") is and was a tenured faculty member at University of Nevada, Las Vegas, in the Hotel College.  She is sued in her official and individual capacities.

29.     At all times during the investigation of the source of the original accusations herein, Prof. Montgomery served as the Deputy Chair of the Faculty Senate at University of Nevada, Las Vegas.

AMENDED COMPLAINT

30.     Prof. Montgomery currently serves as the Chair of the Faculty Senate at University of Nevada, Las Vegas.

31.     Prof. Montgomery is and was an agent of UNLV.

32.     At all times in this Amended Complaint Dr. Curtis Love, Ph.D. (hereinafter "Prof. Love") is and was a tenured faculty member at University of Nevada, Las Vegas, in the Hotel College.  He is sued in his official and individual capacities.

33.     Prof. Love is and was an agent of UNLV.

34.     Upon information and belief, it is alleged that Dr. Love has retired from University of Nevada, Las Vegas.

35.     Upon information and belief, it is alleged that Dr. Love is receiving a full pension from UNLV.

36.     At all times in this Amended Complaint Defendant Dr. Sarah Tanford, Ph.D. (hereinafter "Prof. Tanford") is and was a faculty member at University of Nevada, Las Vegas, in the Hotel College. She is sued in her official and individual capacities.

37.     Prof. Tanford was, since the events herein, awarded a tenured position at University of Nevada, Las Vegas.

38.     Prof. Tanford, since the events herein, was appointed the Director of the Master's Program in Hotel Administration, at the Hotel College.

39.     Prof. Tanford is and was an agent of UNLV.

40.     At all times in this Amended Complaint Defendant Mr. Phillip Burns (hereinafter "Dir. Burns") is and was the Director of the Office of Student Conduct at University of Nevada, Las Vegas.  He is sued in his official and individual capacities.

41.     Upon information and belief, it is alleged that Dir. Burns is and was the Title IX Deputy Coordinator.

42.     Dir. Burns is and was an agent of UNLV.

43.     At all times in this Amended Complaint Defendant Ms. Kristin Malek (hereinafter "Ms. Malek") was a Ph.D. student and graduate assistant at University of Nevada, Las Vegas, in the Hotel College.  She is sued in her individual capacity.

44.     Upon information and belief, it is alleged that Ms. Malek has since been awarded a Ph.D. from University of Nevada, Las Vegas.

45.     The University of Nevada, Las Vegas, has come to consider Ms. Malek an employee of UNLV at the time of the events herein.

46.     At no point prior to the filing of the Initial Complaint did UNLV inform Darren that Ms. Malek was an employee of UNLV.

47.     At no point prior to the filing of the Initial Complaint did UNLV direct Darren to discuss any of the issues herein with any Nevada Defendants with the UNLV human resources department.

48.     Because Ms. Malek was considered an employee of UNLV, then UNLV considers Ms. Malek to have been agent of UNLV at the time of the events herein.

49.     At all times in this Amended Complaint Defendant Ms. Lisa Moll-Cain (hereinafter "Ms. Moll-Cain") is and was a Ph.D. student and graduate assistant at UNLV, in the Hotel College.  She is sued in her individual capacity.

50.     Darren had sent an email to Ms. Moll-Cain, prior to the events in question, wherein he requested that Ms. Moll-Cain cease and desist from spreading baseless and defamatory statements about Darren.

AMENDED COMPLAINT

51.     The University of Nevada, Las Vegas, has come to consider Ms. Moll-Cain an employee of UNLV at the time of the events herein.

52.     At no point prior to the filing of the Initial Complaint did UNLV inform Darren that Ms. Moll-Cain was an employee of UNLV.

53.     At no point prior to the filing of the Initial Complaint did UNLV direct Darren to discuss any issues with Ms. Moll-Cain with the UNLV human resources department.

54.     Because Ms. Moll-Cain was considered an employee of UNLV, then UNLV considers Ms. Moll-Cain to have been agent of UNLV at the time of the events herein.

55.     Ms. Moll-Cain, since the events herein, has married a professor of UNLV.

56.     At all times mentioned in this Amended Complaint, Darren did not believe Ms. Malek and/or Ms. Moll-Cain to be agents of UNLV pertaining to the events herein.  Once their agency status with UNLV becomes known to Darren, he may amend this Amended Complaint to reflect the same.

57.     At all times mentioned in this Amended Complaint, Darren does not know the true identity of Doe Defendants I - X (hereinafter "Doe Defendants"); if and when their identities become known Darren will amend this Amended Complaint to reflect the same.  Doe defendants are each sued in their official and individual capacities.

## C. ALLEGATIONS AND FACTS COMMON TO ALL CLAIMS

58.     On or about Friday, May 3, 2013, Darren was informed that Ms. Malek, Ms. Moll-Cain, "and powerful faculty who they had aligned themselves with" were going to try and have Darren kicked out of the Ph.D. program if [Darren] failed the Qualifying Examination (hereinafter the "Q-Exam") the first time."

AMENDED COMPLAINT
8

59.     Upon information and belief, it is alleged that certain Defendants had conspired, months prior to the Q-Exam, to have Darren "kicked out of the Ph.D. program."

60.     Upon information and belief, it is alleged that the Q-Exam is a mandatory exam given, in the subjects of statistics and research methods, at the end of the first year of Ph.D. study at the Hotel College.

61.     Upon information and belief, it is alleged that it is mandatory to pass both sections of this exam in order to later obtain a Ph.D. in Hospitality Administration from the Hotel College and University of Nevada, Las Vegas.

62.     Upon information and belief, it is alleged that a Ph.D. students are given at least two (2) chances to take the entire Q-Exam, even if he/she fails either or both parts of the exam.

63.     Upon information and belief, it is alleged that only one Ph.D. student in the history of the Hotel College has been asked to leave University of Nevada, Las Vegas for failing the Q-Exam more than one time.

64.     The Q-Exam in 2013 for the Hotel College Ph.D.s was scheduled to take place on Friday, May 17 and Saturday, May 18, 2013.

65.     Six (6) Hotel College Ph.D. students, including Darren, were scheduled to take the exam together in a Beam Hall (hereinafter "BEH") computer lab, overseen by a proctor.

66.     The computer lab in which the exam was scheduled to take place, and where Darren later took the exam, is smaller than 500 square feet.

67.     Upon information and belief, it is alleged that all of the exam takers would sit within two (2) and ten (10) feet from where the proctor was to sit.

68.     Students take the Q-Exam by computer, with the proctor providing a USB stick on which the questions were provided, and the answers were to be saved.

AMENDED COMPLAINT

69.     Upon information and belief, it is alleged that no students have either access to the Q-Exam questions before the exam, or knowledge of the characteristics of the USB stick on which the exam questions would be given, and the answers would be saved.

70.     Associate Dean Dr. James Busser (hereinafter "Dean Busser") is and was the head of the Ph.D. program at the Hotel College.

71.     On, or about, Monday, May 13, 2013, days prior to the Q-exam, Dean Busser asked Darren into his office.

72.     At the same time Dean Busser asked Darren if he planned to cheat on the Q-Exam.

73.     Darren answered he did not plan to cheat on the Q-Exam.

74.     Dean Busser informed Darren that Prof.s Montgomery and Love, and Ms. Malek had accused Darren of planning to cheat on the Q-Exam.

75.     Upon information and belief, it is alleged that Prof.s Montgomery, Love, and Tanford, Ms. Malek, and Ms. Moll-Cain would spend time in each other's company beyond the requirements of the university in social settings, including, but not limited to, one or more of their homes.

76.     Upon information and belief, it is alleged that Prof. Love was scheduled to proctor the Q-Exam.

77.     Upon information and belief, it is alleged that Prof. Tanford was the chair of Ms. Malek's Ph.D. dissertation committee.

78.     Upon information and belief, it is alleged that Prof. Love was on Ms. Malek's Ph.D. dissertation committee.

AMENDED COMPLAINT

10

79.     Upon information and belief, it is alleged that Prof. Montgomery conveyed to non-interested and/or non-privileged University of Nevada, Las Vegas faculty, staff, students, and/or non-university persons that Darren planned to cheat on the Q-Exam.

80.     Upon information and belief, it is alleged that Prof. Love conveyed to non-interested and/or non-privileged University of Nevada, Las Vegas faculty, staff, students, and/or non-university persons that Darren planned to cheat on the Q-Exam.

81.     Upon information and belief, it is alleged that Prof. Tanford conveyed to non-interested and/or non-privileged University of Nevada, Las Vegas faculty, staff, students, and/or non-university persons that Darren planned to cheat on the Q-Exam.

82.     Upon information and belief, it is alleged that Ms. Malek conveyed to non-interested and/or non-privileged University of Nevada, Las Vegas faculty, staff, students, and/or non-university persons that Darren planned to cheat on the Q-Exam.

83.     Upon information and belief, it is alleged that Ms. Moll-Cain conveyed to non-interested and/or non-privileged University of Nevada, Las Vegas faculty, staff, students, and/or non-university persons that Darren planned to cheat on the Q-Exam.

84.     Upon information and belief, it is alleged that Dr. Montgomery accused Ms. Malek of starting the false accusation against Darren.

85.     Upon information and belief, it is alleged that Ms. Malek accused Dr. Montgomery of starting the false accusation against Darren.

86.     Darren never told anyone that he planned to cheat on the Q-Exam.

87.     Darren never planned to cheat on the Q-Exam.

88.     Upon information and belief, it is alleged that cheating on an exam is commonly perceived to be grounds on which not to hire as a professor at a university.

AMENDED COMPLAINT
11

89.     Upon information and belief, cheating on an exam is commonly perceived to be grounds on which not to hire for any profession.

90.     Upon information and belief, UNLV has never hired a professor who they knew or believed to have cheated on a Q-Exam.

91.     President Snyder, at the time of the events of this accusation, served as Dean of the Hotel College.

92.     On, or about, May 13, 2013, after Dean Busser informed Darren about the accusation, Darren e-mailed President Snyder regarding the accusation.

93.     On, or about, May 14, 2013, President Snyder replied to Darren, by email, that he had just learned of the accusation and that it would be investigated immediately.

94.     On, or about, Thursday, May 16, the day before the scheduled Q-Exam, President Snyder wrote an email to Darren, stating "the accusation that [Darren] had an intention to cheat on the qualifying exam was a student based rumor and clearly not the thinking or belief of the College or the University."

95.     Upon information and belief, it is alleged that Prof. Love was removed as proctor of the Q-Exam.

96.     In light of the distraction due to the accusations against Darren, President Snyder offered Darren up to a one month period to take the exam.

97.     Darren suggested that he take it the following week.

98.     Upon information and belief, it is alleged that the other five (5) Ph.D. students took the exam as originally scheduled.

99.     Darren took the Q-Exam, as the only student, May 23 and 24, with Dean Busser as the proctor.

AMENDED COMPLAINT
12

100.   Q-Exam passing grade was 60% in each section.

101.   Darren scored above 80% in both sections of the Q-Exam.

102.   Darren passed both sections of the exam.

103.   President Snyder emailed Darren that "[the Dean's] office will take appropriate action to address this matter under applicable UNLV policies and procedures, which includes an investigation into the origins of the rumor, a determination of whether a violation of UNLV's policies and procedures occurred, and if so, appropriate disciplinary proceedings."

104.   Upon information and belief, it is alleged that University of Nevada, Las Vegas subsequently awarded Prof. Tanford tenure at the university.

105.   Upon information and belief, it is alleged that Dean Shoemaker subsequently awarded Prof. Tanford the position of Director of the Hotel College Master's program.

106.   Prof. Montgomery subsequently was promoted to Chair of the University of Nevada, Las Vegas Faculty Senate.

107.   Dean Shoemaker subsequently awarded Prof. Montgomery the position of Director of Student Success.

108.   President Snyder wrote Darren that "this matter [of student misconduct] has been referred to the Office of Student Conduct for review and appropriate action under applicable University policies and procedures.  Given the nature of this matter and the concerns you have expressed, it is important that you now work directly with the Director of OSC, Phil Burns (copied on this email), who can address your concerns within these policies and procedures."

109.   On, or about, May 31, 2013, Darren met with Dir. Burns at the Office of Student Conduct.

110.    During this initial meeting Darren asked Dir. Burns if he, Dir. Burns, was friendly with Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

111.    To which Dir. Burns responded he was not.

112.    Darren asked Dir. Burns if he, Dir. Burns, knew Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

113.    To which Dir. Burns replied that after being at UNLV for many years he probably had come across one or two of them over the years, but did not know any of them by name.

114.    Darren then provided Dir. Burns with an oral and written sequence of events.

115.    The written sequence of events that Darren sent to Dir. Burns included a multi-page, approximately 17-page, detailed account of names, dates, e-mails, times, and events.

116.    Upon information and belief, it is alleged that Dir. Burns purposely failed to tell Darren that Dir. Burns had given lectures for Prof. Montgomery on one or more occasions prior to Darren's initial conversation with Dir. Burns.

117.    Upon information and belief, it is alleged that Dir. Burns purposely failed to tell Darren that, despite Darren's assertion to Dir. Burns that he felt that he may have been discriminated against on the basis of sex and gender, Dir. Burns did not inform Darren that he may have a Title IX claim against the individuals involved and/or the university.

118.    At no point during any of their meetings did Dir. Burns, or any other member of UNLV, describe Ms. Malek or Ms. Moll-Cain as an employee, quasi or otherwise, of UNLV or the state.

119.    At no point during any of their meetings did Dir. Burns, or any other member of UNLV, tell Darren that he was an employee, quasi or otherwise, of UNLV or the state and subject to employee rights.

120.   To date, no one at UNLV has told Darren that he is an employee of UNLV, quasi or otherwise.

121.   Upon information and belief, it is alleged that Dir. Burns was, at this time, the Deputy Title IX Coordinator for the University of Nevada, Las Vegas.

122.   Upon information and belief, it is alleged that Dir. Burns did not contact all parties who Darren told him were involved or witnessed the events.

123.   Upon information and belief, it is alleged that Dir. Burns purposely failed to tell Darren that Dir. Burns at least knew Prof. Montgomery well.

124.   On, or about, May 31, 2013, Dir. Burns told Darren that he would commence his investigation immediately.

125.   Darren sent Dir. Burns several emails over the course of that Summer regarding the investigation.

126.   Dir. Burns emailed Darren that he could only question those students who were enrolled over the Summer semester.

127.   Darren informed Dir. Burns immediately thereafter that all the students in question were enrolled that Summer.

128.   Dir. Burns emailed Darren that he could not question any faculty who were not present over the Summer semester.

129.   Darren informed Dir. Burns immediately that all faculty involved were on campus that Summer.

130.   Darren did not receive a response to this last email until the end of August, 2013.

131.   Finally, in September 2013, Dir. Burns agreed to meet with Darren.

132.   Dir. Burns told Darren that he completed his investigation.

AMENDED COMPLAINT
15

133. Dir. Burns informed Darren he maintained authority only over students, not faculty.

134. Dir. Burns further informed Darren that the investigation of the students in question was a "he said, she said" and that he recommended no action be taken against any student.

135. Dir. Burns then told Darren that he, Darren, had a reputation among those he interviewed as being aggressive.

136. Dir. Burns continued that Darren was largely to blame for the accusations of planning to cheat made against him.

137. Dir. Burns told Darren due to the Jerry Sandusky pedophilic molestation allegations at Penn State University, all faculty and staff were instructed to inform others if there was anything out of the ordinary occurring among faculty, staff, and students, and this justified the students' and faculty's actions in spreading the allegations about Darren.

138. Dir. Burns refused to inform Darren who he had questioned.

139. Dir. Burns refused to provide Darren with a copy of the investigation report.

140. Shortly thereafter, Darren met with Dean Shoemaker regarding the findings of the investigation.

141. Dean Shoemaker informed Darren that he knew of the actions of certain faculty, staff, and students, and asked Darren to give him a little time to try and correct what was "wrong in the Hotel College."

142. Darren agreed to refrain from further action while Dean Shoemaker tried tp correct what was "wrong in the Hotel College."

143.    Over six months later, in June 2014, Darren learned, for the first time, that Dir. Burns did know Prof. Montgomery prior to Darren's initial meeting with him.

144.    Darren also the learned, as previously stated, Dir. Burns had, for multiple years prior, lectured at Prof. Montgomery's request, in her classes.

145.    Darren, shortly thereafter, emailed President Snyder informing him that while Dir. Burns failed to disclose, and expressly denied, knowing any of those he was investigating, Darren had evidence that would call Dir. Burns' veracity into question.

146.    President Snyder informed Darren he would no longer discuss the issue with him.

147.    Darren received an email from University of Nevada, Las Vegas in-house counsel stating that University of Nevada, Las Vegas in-house counsel recommended to all faculty and staff to refrain from discussing the case with Darren and that any further discussion should go through the office of counsel.

148.    Darren then met with University of Nevada, Las Vegas assistant general counsel.

149.    Assistant general counsel asked Darren about all the events that had transpired.

150.    Darren spent over two hours with assistant general counsel recounting everything that had transpired, from the initial accusation, to his recent learning of Dir. Burns' familial relationship with Prof. Montgomery.

151.    Upon information and belief, it is alleged that assistant general counsel sent memos to the University of Nevada, Las Vegas faculty, staff, and students based on Darren's conversation with general counsel.

152.    At no point was Darren told by any of the Defendants that he was an employee of the University of Nevada, Las Vegas, and entitled to any employee rights of action.

153.    Darren has, to date, not received an apology from any Defendant.

AMENDED COMPLAINT
17

154.   Upon information and belief, it is alleged that Defendants Prof.s Montgomery, Love, and Tanford, along with Ms. Malek and Ms. Moll-Cain either collectively, or individually, maliciously intended to spread the accusation that Darren planned to cheat on the Q-Exam.

155.   Upon information and belief, it is alleged that there has been no disciplining by University of Nevada, Las Vegas of faculty, staff, or student Defendants, based on their actions herein.

156.   Prof.s Montgomery, Love, and Tanford are all agents of the Hotel College by their official positions.

157.   Darren maintains a property interest in his education.

158.   The UNLV Conduct Code (hereinafter "the Code") states that students have the "right to fair and equitable process in all matters concerning the Code."

159.   The Code also states that prohibited conduct includes "[p]roviding false information to a University official who is performing his/ her official duties or engaging in other similar forms of dishonesty, including making a wrongful accusation against any member of the University community (italics added).

160.   The Code defines abuse of the Code as "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person."

161.   The Code also includes abuse of the Code as "[i]nfluencing, or attempting to influence, another person to commit an abuse of the conduct system."

162.   The Code is, among other things, a contract between University of Nevada, Las Vegas, its faculty, staff, and students.

163.   Darren signed the Graduate Assistant Contract that stated, in part, that "Graduate Assistants are required to abide by all federal and state laws, as well as NSHE and university

AMENDED COMPLAINT
18

policies, standards of professional conduct, and the rules, ethical codes, and policies that govern the GA's field of work, area of study, and funding source. Any violation thereof may lead to the termination of a student's Graduate Assistantship, possible separation from his or her graduate program, as well as possible legal action, criminal penalties, and/or other sanctions deemed appropriate."

164.    An accusation of cheating at the university level is significant grounds not to hire an applicant for a tenure track professor at any university, or any other professional position.

## D. FIRST CLAIM FOR RELIEF

**(DEFAMATION– AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

165.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

166.    Defendants, or their agents, made false and defamatory statements regarding Darren.

167.    Prof. Montgomery told non-interested and/or non-privileged parties that Darren planned to cheat on the Q-Exam.

168.    In the alternative, Prof. Montgomery, with no basis in fact, fabricated the accusation that Darren planned to cheat on the Q-Exam.

169.    Prof. Love told non-interested and/or non-privileged parties that Darren planned to cheat on his Q-Exams.

170.    In the alternative, Prof. Love, with no basis in fact, fabricated the accusation that Darren planned to cheat on the Q-Exam.

171.    Prof. Tanford told non-interested and/or non-privileged parties that Darren planned to cheat on the Q-Exam.

172.    In the alternative, Prof. Tanford, with no basis in fact, fabricated the accusation that Darren planned to cheat on the Q-Exam.

173.    Ms. Malek told non-interested and/or non-privileged parties that Darren planned to cheat on the Q-Exam.

174.    In the alternative, Ms. Malek, with no basis in fact, fabricated the accusation that Darren planned to cheat on the Q-Exam.

175.    Ms. Moll-Cain told non-interested and/or non-privileged parties that Darren planned to cheat on the Q-Exam.

176.    In the alternative, Ms. Moll-Cain, with no basis in fact, fabricated the accusation that Darren planned to cheat on the Q-Exam.

177.    Unprivileged publication of false and defamatory statements were made by Defendants to third persons.

178.    Defendants, or their agents, were at least negligent in making the false and defamatory statements.

179.    The defamatory statements imputed Darren's lack of fitness for trade, business, or profession.

180.    Darren sustained actual and presumed damages as a result of the false and defamatory statements.

///

///

///

AMENDED COMPLAINT
20

## E.  SECOND CLAIM FOR RELIEF

### (INVASION OF PRIVACY - FALSE LIGHT– AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; KRISTIN MALEK; and LISA MOLL-CAIN)

181.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

182.   Defendants gave publicity to a matter concerning Darren that placed Darren before the public in a false light by spreading the accusation that Darren planned to cheat on the Q-Exam both among and beyond UNLV privileged faculty and staff.

183.   The false light under which Darren was placed, as a conspiring cheater, would be highly offensive to a reasonable person.

184.   Defendants had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which Darren was placed.

185.   Darren was harmed and suffered damages as a result of these invasions of privacy.

## F.  THIRD CLAIM FOR RELIEF

### (CIVIL CONSPIRACY – AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

186.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

187.   Defendants, or their agents, by acting in concert, intended to accomplish unlawful objectives for the purpose of harming Darren.

188.   Darren was harmed and suffered damages as a result of these civil conspiracies.

///

## G.  FOURTH CLAIM FOR RELIEF

### (CONCERT OF ACTION – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

189.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

190.    Defendants, or their agents, acted with others, or defendants acted together, to commit a tort against Darren while acting in concert or pursuant to a common design.

191.    Darren was harmed and suffered damages as a result of this concert of action.

## H.  FIFTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS– AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

192.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

193.    Defendants' original accusation that Darren planned to cheat on the Q-Exam was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Darren.

194.    Defendants' actions of purposeful spreading the accusation that Darren planned to cheat on the Q-Exam was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Darren.

195.    Dir. Burns is in a high position of trust in UNLV.

196.    Dir. Burns has the power to recommend the expulsion of students from UNLV.

197.    Dir. Burns blamed Darren for "[Darren's] part in causing the [Defendants'] accusation against [Darren]."

198. Dir. Burns did not interview all parties who Darren identified.

199. Dir. Burns intentionally failed to disclose his familiar relationships with Defendants.

200. Dir. Burns' actions, as Director of the Office of Student Conduct, towards Darren, including, but not limited to, blaming Darren for the accusations made against him, were extreme and/or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Darren.

201. Darren suffered severe or extreme emotional distress as the actual or proximate result of each Defendant's conduct.

## I. SIXTH CLAIM FOR RELIEF

**(BREACH OF CONTRACT – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN))**

202. Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

203. Darren entered into a valid contract with UNLV as a graduate assistant.

204. Darren entered into a valid contract with UNLV as a paying student.

205. There is an implied covenant between UNLV, UNLV's agents, and its students that the university will protect the integrity and reputation of its students from baseless accusations.

206. There is an implied covenant that the Director of Student Conduct at UNLV will be upfront and honest in his dealings with the students.

207. There is an implied covenant between the Director of Student Conduct at UNLV and UNLV students, upon saying that he will do so, to objectively investigate any wrongdoing by other students.

208. Defendants breached the implied covenants with Darren.

209. Darren was harmed and suffered damages as a result of these breaches.

## J. SEVENTH CLAIM FOR RELIEF

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – CONTRACTUAL BREACH - AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN))**

210. Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

211. There is an implied covenant of good faith and fair dealing between UNLV, UNLV's agents, and its students.

212. Darren and Defendants entered into a valid and existing contract wherein there is the covenant of good faith and fair dealing.

213. Darren worked for UNLV, as a graduate assistant, and paid tuition dues, as well as other fees to UNLV.

214. There is an implied covenant of good faith and fair dealing that the Director of Student Conduct at UNLV will be upfront and honest in his dealings with the students.

215. There is an implied covenant of good faith and fair dealing between the Director of Student Conduct at UNLV and UNLV students, upon saying that he will do so, to objectively investigate any wrongdoing by other students.

216. Defendants' actions breached these implied covenants of good faith with Darren.

217. Darren was harmed and suffered damages as a result of these breaches.

AMENDED COMPLAINT
24

## K.  SEVENTH CLAIM FOR RELIEF

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – TORTIOUS BREACH - AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

218.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

219.    There existed a special element of reliance between Darren and UNLV, and its agents, where UNLV was in a superior or entrusted position.

220.    There existed a special element of reliance between Darren and Defendant Hotel College where the Hotel College was in a superior or entrusted position.

221.    There existed a special element of reliance between Darren and Defendant President Smatresk, where President Smatresk was in a superior or entrusted position as President of UNLV.

222.    There existed a special element of reliance between Darren and Defendant President Snyder, where President Snyder was in a superior or entrusted position as Dean of the Hotel College and President of UNLV.

223.    There existed a special element of reliance between Darren and Dean Shoemaker, where Dean Shoemaker was in a superior or entrusted position as Dean of the Hotel College.

224.    There existed a special element of reliance between Darren and Prof. Montgomery where Prof. Montgomery was in a superior or entrusted position as a tenured faculty member.

225.    There existed a special element of reliance between Darren and Prof. Love where Prof. Love was in a superior or entrusted position as a tenured faculty member.

226.   There existed a special element of reliance between Darren and Prof. Tanford where Prof. Tanford was in a superior or entrusted position as a faculty member.

227.   There existed a special element of reliance between Darren and Dir. Burns where Dir. Burns was in a superior or entrusted position as Director of the Office of Student Conduct of UNLV.

228.   Defendants breached these duties of good faith.

229.   Darren was harmed and suffered damages as a result of these breaches.

## L.  EIGHTH CLAIM FOR RELIEF

**(CONSTRUCTIVE FRAUD– AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

230.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

231.   President Snyder, as Dean of the Hotel School, instructed Darren to speak with Dir. Burns, the Director of the Office of Student Conduct, and tell him the events that occurred.

232.   Darren and Dir. Burns had a confidential relationship upon President's Snyder's request to speak with Dir. Burns.

233.   During this initial meeting Darren asked Dir. Burns if he, Dir. Burns, was friendly with Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

234.   To which Dir. Burns responded he was not.

235.   Darren asked Dir. Burns if he, Dir. Burns, knew Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

236.   To which Dir. Burns replied that after being at UNLV for 19 years he probably had come across one or two of them over the years, but did not know any of them by name.

237.    Darren, based on this response, shared all material facts that Darren had about the accusations.

238.    Dir. Burns had, in fact, over the course of multiple years, taught/ gave classes for Prof. Montgomery prior to Darren's original May 2013 meeting with Dir. Burns.

239.    Dir. Burns knew Prof. Montgomery, and upon information and belief, socialized with her and other Defendants in non-university settings, prior to Darren's 2013 meeting with Dir. Burns.

240.    Defendants breached this duty by misrepresenting or concealing a material fact.

241.    Darren relied on this material fact by proceeding to give Dir. Burns extremely sensitive information about the accusations that could be used against Darren in the future.

242.    Darren withheld filing suit against Defendants based on Dir. Burns' concealing his friendship with Defendants.

243.    Darren trusted Dir. Burns' assertions of objectivity and impartiality.

244.    Darren was harmed and suffered damages as a result of these constructive frauds.

### M. NINTH CLAIM FOR RELIEF

**(DECEIT OR MISREPRESENTATION – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

245.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

246.    Defendants made a false representation to Darren about Dir. Burns' impartiality.

247.    Defendants knew that Dir. Burns would not be impartial and objective in his investigation.

AMENDED COMPLAINT

27

248.   Defendants had knowledge or belief that the representation was false or without a sufficient basis for making the representation when they made it.

249.   As a result of Defendants' suggestion the Dir. Burns would be impartial, and Dir. Burns' assertion that he would be impartial, Darren emailed Dir. Burns a multi-page, approximately 17-page, detailed account of names, dates, e-mails, times, and events regarding the accusation.

250.   The purpose of the request for Darren's detailed account was not to assist in the investigation.

251.   The purpose of the request for Darren's detailed account was to have detailed knowledge of Darren's legal claims against UNLV, its agents, and its students.

252.   For almost two years Defendants have had detailed knowledge of Darren's allegations.

253.   Darren was harmed and suffered damages as a result of these deceits and misrepresentations.

## N.  TENTH CLAIM FOR RELIEF

### (DETRIMENTAL RELIANCE – AGAINST UNLV; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; and PHILLIP BURNS)

254.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

255.   Defendants promised Darren that those involved in the allegations against Darren would be investigated and, if any wrong-doing was found, disciplined.

256.   Defendants promised Darren that there would be an objective internal investigation as to the events leading up to the accusations made about Darren.

257.    Defendants knew, or should have known, when making that promise, that Darren would rely on the promises to provide Defendants with a significant amount of information regarding Darren's case, to Darren's detriment.

258.    Defendants knew, or should have known, when making the promises, that Darren would rely on the promise not to immediately file suit against Defendants, to Darren's detriment.

259.    The reliance on the promises by those in a superior position within UNLV was reasonable.

260.    Darren was harmed and suffered damages as a result of the reliance on the promises.

## O. ELEVENTH CLAIM FOR RELIEF

### (FRAUD IN THE INDUCEMENT – AGAINST UNLV; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; and PHILLIP BURNS)

261.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

262.    False representation was made by Defendants that Dir. Burns would be impartial in his investigation of accusations made against Darren.

263.    False representation was made by Defendants that those faculty who were found to have wrongly started and spread the accusations against Darren would be disciplined.

264.    Defendants who made the representation had at least an insufficient basis for making the representations.

265.    Defendants who made the representations had the intention to induce Darren to hand over information that Darren had about the accusations.

266.    Defendants who made the representations had the intention to induce Darren to delay filing suit against Defendants.

267.   Darren justifiably relied on the misrepresentations by handing over a multi-page, approximately 17-page, detailed account of names, dates, e-mails, times, and events regarding the accusation.

268.   Darren justifiably relied on the misrepresentations by delaying in filing suit against Defendants.

269.   Darren was harmed and suffered damages based on these reliance.

## P.  TWELFTH CLAIM FOR RELIEF

**(FRAUD/ INTENTIONAL MISREPRESENTATION – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

270.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

271.   President Snyder emailed Darren that he would investigate and come to "a determination of whether a violation of UNLV's policies and procedures occurred, and if so, appropriate disciplinary proceedings."

272.   President Snyder did come to the conclusion that there was a violation by faculty of UNLV's policies and procedures.

273.   President Snyder did not apply the "appropriate disciplinary proceedings."

274.   Darren detrimentally relied on President Snyder's words and postponed legal action as a result.

275.   Darren met with Dean Shoemaker regarding the lack of disciplining of the faculty and staff involved.

276.   Dean Shoemaker told Darren to "give him some time to discipline those involved."

AMENDED COMPLAINT
30

277.   Dean Shoemaker had no intention to discipline the faculty members involved.

278.   Dean Shoemaker then awarded Prof. Montgomery the position of Director of Student Success.

279.   Prof. Montgomery was thereafter promoted to Chair of the UNLV Faculty Senate.

280.   Prof. Tanford was thereafter awarded a tenure position at UNLV.

281.   Dean Shoemaker thereafter awarded Sarah Tanford the position of Head of the Master's program at the Hotel College.

282.   Based on Dir. Burns' assertion of lack of personal knowledge of Darren's accusers, and his and assertion of objectivity, Darren readily told Dir. Burns, openly and freely, all the information that he knew regarding the accusations against him.

283.   Based on these assertions Darren even typed out a multi-page, approximately 17-page, detailed recount of the names, dates, times, and emails of those involved, which he emailed to Dir. Burns.

284.   Based on these assertions Darren trusted that Dir. Burns would be objective in his investigation.

285.   Dir. Burns would later give UNLV's Office of General Counsel all of Darren's evidence.

286.   Had Darren known that Dir. Burns knew any of the parties involved, Darren would not have given Dir. Burns the information that he did about the accusations against him.

287.   Dir. Burns also told Darren that he would start the investigation immediately.

288.   Dir. Burns did not complete the investigation until over three months later.

289.   Dir. Burns told Darren that Darren was to blame for the accusations made against him.

290.   Darren learned several months later that Dir. Burns taught classes for Prof. Montgomery for years prior to his initial meeting with Darren.

291.   Darren later learned that Dir. Burns did not question all the witnesses involved.

292.   Dir. Burns was not objective in his investigation.

293.   The Defendants made false representations of material fact.

294.   Defendants knew the representations to be false.

295.   Defendants intended for Darren to rely on these misrepresentations.

296.   Darren detrimentally relied on these misrepresentations.

297.   The misrepresentations proximately caused damages to Darren.

298.   Darren was harmed and suffered damages based on this misrepresentations.

## Q.  THIRTEENTH CLAIM FOR RELIEF

**(NEVADA FAIR EMPLOYMENT PRACTICES ACT - SEXUAL HARRASSMENT – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

299.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

300.   Darren was an employee of UNLV.

301.   Defendant Ms. Malek made an unwanted sexual advance towards Darren during his time at the University of Nevada, Las Vegas.

302.   Upon information and belief, it is alleged Defendants purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

303.   Darren's education at University of Nevada, Las Vegas, was subjected to adverse action as a result of the sex-based discrimination.

///

AMENDED COMPLAINT
32

## R.  FOURTEENTH CLAIM FOR RELIEF

### (TITLE IX- SEXUAL HARRASSMENT – AGAINST UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

304.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

305.    Darren was an employee of UNLV.

306.    Defendant Ms. Malek made an unwanted sexual advance towards Darren during his time at the University of Nevada, Las Vegas.

307.    Upon information and belief, it is alleged Defendants purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

308.    Darren informed Dir. Burns about the accusations made against Darren.

309.    Darren informed Dir. Burns about Ms. Malek's sexual advances.

310.    At no point did Dir. Burns inform Darren that he, Dir. Burns, was the Title IX Deputy Coordinator for UNLV.

311.    At no point did Dir. Burns inform Darren that Ms. Malek or Ms. Moll-Cain were employees, of any kind, of the university.

312.    At no point did Dir. Burns inform Darren that he had any potential Title IX claims against any of the Defendants.

313.    Darren's education at University of Nevada, Las Vegas, was subjected to adverse action as a result of the sex-based discrimination.

///

///

///

AMENDED COMPLAINT
33

## S. DAMAGES

314.    As a direct and proximate cause of the above, Darren suffered incalculable damage to his personal, professional, and academic reputations.

315.    As a direct and proximate cause of the above, Darren suffered emotional distress, anxiety, and severe depression that had serious adverse effects on him and his family.

316.    As a direct and proximate cause of the above, Darren incurred the expenses of necessary medical, rehabilitative, and other care, treatment and services.

317.    As a direct and proximate cause of the above, Darren suffered loss of the pleasures of life, including, but not limited to attending university, teaching, enjoying UNLV events, and other activities of the quality and to that extent previously enjoyed by Darren.

318.    As a direct and proximate cause of the above, Darren experienced sorrow, pain, and suffering.

319.    As a direct and proximate cause of the above, Darren has not been able to complete his Ph.D. at UNLV, despite having already completed a vast majority of the coursework.

320.    As a direct and proximate result of the above, Darren has suffered damages to the extent that he has incurred past attorneys' fees and expenses, and will incur future attorneys' fees and expenses that are presently undetermined.

321.    Darren is entitled to an award thereof and reserves the right to amend this Amended Complaint when such attorneys' fees and expenses are ascertained.

**WHEREFORE,** Darren, expressly reserving rights to amend this Amended Complaint prior to, or at the time of, trial of this action to insert those items of damage not yet fully ascertainable, prays judgement against the Defendants and each of them as follows:

AMENDED COMPLAINT
34

1.     For injunctive relief in the form of university-wide education regarding defamation, discrimination, and any other legal wrongdoing that the Court finds appropriate;

2.     For general damages sustained by Darren in an amount in excess of $10,000;

3.     For special damages sustained by Darren in an amount in excess of $10,000;

4.     For statutory damages sustained by Darren in an amount in excess of $10,000;

5.     For reasonable attorney's fees and costs of suit;

6.     Interest at the statutory rate;

7.     Punitive damages; and

8.     For such other relief as the Court deems just and proper.

DATED this 10th day of June, 2015.

**DARREN HEYMAN**

_/s/ Darren Heyman_
Darren Heyman
830 Carnegie St. #1324
Henderson, NV 89052

AMENDED COMPLAINT
35