Darren Heyman
830 Carnegie St. #1324
Henderson, NV 89052
Telephone: (702) 576-8122
Facsimile: (702) 977-8890
E-mail: Darren.Heyman@Gmail.com
In proper person

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| **DARREN HEYMAN,** | **CASE NO.:  2:15-CV-01228-RFB-GWF** |
| **an individual,** | |
| **Plaintiff,** | **FIRST AMENDED COMPLAINT** |
| **vs.** | |
| **THE STATE OF NEVADA EX REL. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION ON BEHALF OF THE UNIVERSITY OF NEVADA, LAS VEGAS; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; LISA MOLL-CAIN; DEBRA PIERUSCHKA; ELSA SIDHU AND DOES I - X INCLUSIVE,** | |
| **Defendants.** | |

   **COMES NOW**, Plaintiff DARREN HEYMAN (hereinafter "Darren"), an individual,

acting pro se, and for his causes of action against Defendants the STATE OF NEVADA ex rel.

BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION on behalf of

the UNIVERSITY OF NEVADA, LAS VEGAS; NEAL SMATRESK; DONALD SNYDER;

RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS;

KRISTIN MALEK; LISA MOLL-CAIN; DEBRA PIERUSCHKA; and ELSA SIDHU,

(hereinafter "Defendants"); and DOES I through X, alleges and avers as follows:

## A.    JURISDICTION

01.    At all times mentioned in this First Amended Complaint for Nevada Federal District Court (hereinafter "First Amended Complaint") Darren was and is a citizen of the United States of America and a resident of the State of Nevada.

02.    At all times mentioned herein, Darren was and is a resident of Clark County, Nevada.

03.    Upon information and belief, it is alleged that Defendant the STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS (hereinafter known as "UNLV") is physically located in, or doing business in, Clark County Nevada.

04.    Upon information and belief, it is alleged that Defendants, individuals DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; LISA MOLL-CAIN; DEBRA PIERUSCHKA; and ELSA SIDHU (hereinafter "Nevada Individual Defendants") were all, at the times of the events herein, residents of, or physically located in, Clark County, Nevada.

05.    Upon information and belief, it is alleged that Defendant NEAL SMATRESK was a resident of Clark County, Nevada at the time of events of the basis of his participation in this First Amended Complaint, but is no longer a resident of Clark County, Nevada.

06.    Upon information and belief, it is alleged that Defendant KRISTIN MALEK was a resident of Clark County, Nevada at the time of events of the basis of her participation in this First Amended Complaint, but is no longer a resident of Clark County, Nevada.

07.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X, inclusive, are unknown to Darren, who therefore

sues said Defendants by such fictitious names. Darren is informed, believes and thereupon alleges the Defendants designated herein as DOES I through X, inclusive, are any one of the following:

      (a)    Parties responsible in some manner for the events and happenings herein referred to caused injuries and damages proximately thereby to Darren as herein alleged; or

      (b)    Parties are the agents, servants, employees, friends, and/or partners of the Defendants.

08.    On May 11, 2015, Darren filed a Complaint in the Eighth Judicial District Court, in County of Clark, State of Nevada.

09.    On June 10, 2015, Darren filed an Amended Complaint in the Eighth Judicial District Court in County of Clark, State of Nevada.

10.    The Amended Complaint alleged both federal and state law claims.

11.    On June 29, 2015, Defendants filed a Petition of Removal and removed the action to federal court because the court had original jurisdiction over actions arising under federal statute pursuant to 28 U.S.C. §1441(a) (b).

12.    On July 13, 2015, Defendants filed a Motion to Dismiss.

13.    On August 24, 2015, Darren filed his Response to Motion to Dismiss.

14.    On September 3, 2015, Defendants filed Reply to Response to Motion to Dismiss.

15.    On March 31, 2016, this Court DENIED Defendants' Motion to Dismiss.

16.    On August 7, 2015, Darren filed his First Motion for Leave to Amend Complaint.

17.    On August 18, 2015, Defendants filed their Response to Motion for Leave to File.

18.    On August 25, 2015, Darren filed his Reply to Response First Motion for Leave to File Amended Complaint.

19.     On March 31, 2016, this Court GRANTED Darren's First Motion for Leave to Amend, giving Darren 14 days to file.

20.     Claims ONE to FIFTEEN, inclusive, herein are the same as those in the Amended Complaint upon which Defendants' Motion to Dismiss was DENIED.

21.     Claims SIXTEEN and SEVENTEEN herein are additional claims that stem from the same original Removed Complaint.

22.     Claims EIGHTEEN to TWENTY-FIVE, inclusive, herein, are additional claims that pertain to the actions of Defendant counsel with dealing with Darren in litigating claims ONE to FIFTEEN.

23.     Claims TWENTY-SIX to THIRTY-ONE, inclusive, herein, pertain to subsequent actions taken by Defendants, connected to claims ONE to FIFTEEN, since this case has been before this Court.

24.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

25.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

FIRST AMENDED COMPLAINT
4

26.     Pursuant to 28 U.S.C. §1367, federal courts have supplemental jurisdiction over all of the state law claims.

27.     Pursuant to Nevada Revised Statute 41.031, the State of Nevada waives its immunity from liability and action as to the State and its political subdivisions in Nevada state court.

28.     Nevada Revised Statute 41.031 also states that the State of Nevada does not waive immunity conferred by the Eleventh Amendment.

29.     Plaintiff brings this action to redress, among other things, a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

30.     This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

31.     Pursuant to 42 U.S.C. § 2000(d), the State of Nevada shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Title IX of the Education Amendments of 1972.

32.     Pursuant to 42 U.S.C. § 2000(d), in a suit against a State for a violation of a Title IX statute, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

33.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

34.     Darren will ask leave of the Court to amend this First Amended Complaint to insert the true names and capacities of said Defendants, DOES I through X inclusive, when the

FIRST AMENDED COMPLAINT

5

same have been ascertained by Darren, together with appropriate charging allegations, and to join said Defendants in the action.

35.     That all claims for relief set forth herein arise from a common nucleus of operative facts.

36.     The acts and omissions alleged hereafter occurred within Clark County, State of Nevada.

## B.  PARTIES

37.     At all times in this First Amended Complaint, Darren is a private individual who lives in Clark County, Nevada.

38.      At all times in this First Amended Complaint, Darren did not voluntarily interject himself into a public controversy.

39.     At all times in this First Amended Complaint, Darren was a registered Doctorate of Philosophy (hereinafter "Ph.D.") student at UNLV in the William F. Harrah College of Hotel Administration (hereinafter "Hotel College").

40.     From Fall 2012 until Spring 2014 semesters, inclusive, Darren was a graduate assistant at UNLV.

41.     At all times mentioned in this First Amended Complaint, Darren had a valid student contract with UNLV.

42.     From Fall 2012 until Spring 2014 semesters, Darren had a valid graduate assistant contract with UNLV.

43.     At the time of the filing of this First Amended Complaint, Darren is taking a leave of absence from the Ph.D. program at UNLV and the Hotel College until such time this legal action is completed.

44.     At all times in this First Amended Complaint, Defendant, State of Nevada, is a state in the United States of America, provides and oversees the System of Higher Education in the state of Nevada.  The Office of the Attorney General of the state of Nevada are located in the State of Nevada, 100 North Carson Street, Carson City, NV 89701, telephone number (775) 684-1263.

45.     At all times in this First Amended Complaint, Defendant, the Board of Regents of the Nevada System of Higher Education is a board which is in charge of all Nevada state-run universities, including UNLV and its offices are located in the State of Nevada, 4300 S. Maryland Pkwy., Las Vegas, NV 89119, telephone number (702) 889-8426.

46.     The Board of Regents of the Nevada System of Higher Education is an agent for the state of Nevada.

47.     At all times in this First Amended Complaint, Defendant, UNLV, is a Nevada state-run university located in the state of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

48.     UNLV is a state university run by the Nevada System of Higher Education and is located in the state of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

49.     At all times in this First Amended Complaint, William F. Harrah College of Hotel Administration (hereinafter "Hotel College") is a state-college run by UNLV and is located in the State of Nevada, 4505 S. Maryland Pkwy., Las Vegas, NV 89154, telephone number (702) 895-3011.

50.     Upon information and belief, it is alleged that the Hotel College is an agent of UNLV at the time of the events herein.

FIRST AMENDED COMPLAINT

51.     Defendant President Neal Smatresk, Ph.D. (hereinafter "President Smatresk") was the President of UNLV at the time of many of the events herein.  He is sued in his official capacity only.

52.     Upon information and belief, it is alleged that President Smatresk was an agent of UNLV at certain times of the events herein.

53.     At all times in this First Amended Complaint Defendant President Donald Snyder (hereinafter "President Snyder") was either the Dean of the Hotel College or President of UNLV. He is sued in his official and individual capacities.

54.     Upon information and belief, it is alleged that President Snyder is and was an agent of UNLV.

55.     At all times in this First Amended Complaint Defendant Stowe Shoemaker, Ph.D. (hereinafter "Dean Shoemaker") is and was either a tenured faculty member at UNLV, in the Hotel College, or Dean of the Hotel College.  He is sued in his official and individual capacities.

56.     Upon information and belief, it is alleged that Dean Shoemaker is and was an agent of UNLV at the time of the events herein.

57.     Upon information and belief, it is alleged that at all times in this First Amended Complaint Defendant Dr. Rhonda Montgomery, Ph.D. (hereinafter "Prof. Montgomery") is and was a tenured faculty member at UNLV, in the Hotel College.  She is sued in her official and individual capacities.

58.     Upon information and belief, it is alleged that at all times during the investigation of the source of the original accusations herein, Prof. Montgomery served as the Deputy Chair of the Faculty Senate at UNLV.

59.     Upon information and belief, it is alleged that Prof. Montgomery later served as the Chair of the Faculty Senate at UNLV.

60.     Upon information and belief, it is alleged that Prof. Montgomery is and was an agent of UNLV at the time of the events herein.

61.     Upon information and belief, it is alleged that at all times in this First Amended Complaint Dr. Curtis Love, Ph.D. (hereinafter "Prof. Love") was a tenured faculty member at UNLV, in the Hotel College.  He is sued in his official and individual capacities.

62.     Upon information and belief, it is alleged that Prof. Love was an agent of UNLV.

63.     Upon information and belief, it is alleged that at all times in this First Amended Complaint Defendant Dr. Sarah Tanford, Ph.D. (hereinafter "Prof. Tanford") is and was a faculty member at UNLV, in the Hotel College. She is sued in her official and individual capacities.

64.     Upon information and belief, it is alleged that Prof. Tanford was, since the events herein, awarded a tenured position at UNLV.

65.     Upon information and belief, it is alleged that Prof. Tanford, since the original events herein, was appointed the Director of the Master's Program in Hotel Administration, at the Hotel College.

66.     Upon information and belief, it is alleged that Prof. Tanford is and was an agent of UNLV at the time of the events herein.

67.     Upon information and belief, it is alleged that at all times in this First Amended Complaint Defendant Mr. Phillip Burns (hereinafter "Dir. Burns") is and was the Director of the Office of Student Conduct at UNLV.  He is sued in his official and individual capacities.

68.     Upon information and belief, it is alleged that Dir. Burns is and was the Title IX Deputy Coordinator.

69.     Upon information and belief, it is alleged that Dir. Burns is and was an agent of UNLV at the time of the events herein.

70.     Upon information and belief, it is alleged that at all times in this First Amended Complaint Defendant Ms. Kristin Malek (hereinafter "Ms. Malek") was a Ph.D. student and

FIRST AMENDED COMPLAINT

graduate assistant at UNLV, in the Hotel College.  She is sued in her individual capacity, and to the extent that she was found to be acting as an agent of UNLV, in her official capacity.

71.     Upon information and belief, it is alleged that Ms. Malek has since been awarded a Ph.D. from UNLV.

72.     Upon information and belief, it is alleged that UNLV considered Ms. Malek an employee of UNLV at the time of the events herein.

73.     At no point prior to the filing of the Initial Complaint did UNLV inform Darren that Ms. Malek was an employee of UNLV.

74.     At no point prior to the filing of the Initial Complaint did UNLV direct Darren to discuss any of the issues herein with any Nevada Defendants with the UNLV human resources department.

75.     Upon information and belief, it is alleged that Ms. Malek to have been agent of UNLV at the time of the events herein.

76.     Upon information and belief, it is alleged that Ms. Malek, since the events herein, has become an assistant professor at Kansas State University.

77.     At all times in this First Amended Complaint Defendant Ms. Lisa Moll-Cain (hereinafter "Ms. Moll-Cain") was a Ph.D. student and graduate assistant at UNLV, in the Hotel College.  She is sued in her individual capacity, and to the extent that she was found to be acting as an agent of UNLV, in her official capacity.

78.     Darren had sent an email to Ms. Moll-Cain, prior to the events in question, wherein he requested that Ms. Moll-Cain cease and desist from repeating baseless and defamatory statements about Darren.

79.     Upon information and belief, it is alleged that UNLV considered Ms. Moll-Cain an employee of UNLV while studying there.

80.    At no point prior to the filing of the Initial Complaint did UNLV inform Darren that Ms. Moll-Cain was an employee of UNLV.

81.    At no point prior to the filing of the Initial Complaint did UNLV direct Darren to discuss any issues with Ms. Moll-Cain with the UNLV human resources department.

82.    Upon information and belief, it is alleged that Ms. Moll-Cain is married to a faculty member of UNLV.

83.    Upon information and belief, it is alleged that Ms. Moll-Cain has since been awarded a Ph.D. from UNLV.

84.    Upon information and belief, it is alleged that Ms. Moll-Cain, has since become an assistant professor, online only, at Florida International University.

85.    Upon information and belief, it is alleged that Ms. Moll-Cain's father, Mr. Steven Moll, is a Vice Provost of Florida International University.

86.    At all times mentioned in this First Amended Complaint, Darren did not believe Ms. Malek and/or Ms. Moll-Cain to be agents of UNLV pertaining to the events herein.

87.    Defendant Elsa Sidhu, J.D. (hereinafter "Ms. Sidhu") is, and has been, General Counsel of UNLV since, at latest, April 2015.  She is sued in her official capacity only.

88.    Upon information and belief, it is alleged that Ms. Sidhu is, and has been, an agent of UNLV at least since, at latest, April 2015.

89.    Defendant Debra Pieruschka, J.D. (hereinafter "Ms. Pieruschka") is, and has been, Assistant to the General Counsel of UNLV since, at latest, April 2015.  She is sued in her official and individual capacities.

90.    Upon information and belief, it is alleged that Ms. Pieruschka is, and has been, an agent of UNLV since, at latest, April 2015.

FIRST AMENDED COMPLAINT
11

91.    The UNLV Office of General Counsel represents, at the time of this First Amended Complaint, Defendants THE STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN (hereinafter "the Accusation Defendants").

92.    Ms. Pieruschka is, and has been since April 2015, until, at least, the time of this First Amended Complaint, for the Accusation Defendants, the attorney of record for the Accusation Defendants.

93.    Upon information and belief, it is alleged that Ms. Pieruschka works, and has worked, under the direction of Ms. Sidhu since, at latest, April 2015.

94.    At all times mentioned in this First Amended Complaint, Darren does not know the true identity of Doe Defendants I - X (hereinafter "Doe Defendants"); if and when their identities become known Darren will amend this First Amended Complaint to reflect the same. Doe defendants are each sued in their official and individual capacities.

///

///

///

///

## C.    ALLEGATIONS AND FACTS COMMON TO CLAIMS ONE THROUGH SEVENTEEN, INCLUSIVE

95.    Claims ONE to FIFTEEN, inclusive, herein are the same as those in the Complaint upon which Defendants' Motion to Dismiss was DENIED on March 31, 2016.

96.     Claims SIXTEEN and SEVENTEEN herein are additional claims that stem from the same facts that were addressed in the original Complaint.

97.     Darren had a contract with UNLV as a student therewith, starting in, or about, August 2012.

98.     Darren had a contract with UNLV as a graduate assistant therewith, starting in, or about, August 2012.

99.     Darren had a contract with UNLV agents, as a student therewith, starting in, or about, August 2012.

100.    Darren had a contract with UNLV's agents, as a graduate assistant therewith, starting in, or about, August 2012.

101.    There existed a special element of reliance between Darren and UNLV, and its agents, where UNLV, its faculty, staff, and administration, were in a superior or entrusted position.

102.    Upon information and belief, it is alleged that the Q-Exam is a mandatory exam given, in the subjects of statistics and research methods, at the end of the first year of Ph.D. study at the Hotel College.

103.    Upon information and belief, it is alleged that it is mandatory to pass both sections of this exam in order to later obtain a Ph.D. in Hospitality Administration from the Hotel College and UNLV.

104.    Upon information and belief, it is alleged that a Ph.D. students are given at least two (2) chances to take the entire Q-Exam, even if he/she fails either or both parts of the exam.

105.    Upon information and belief, it is alleged that only one Ph.D. student in the history of the Hotel College has been separated from UNLV for failing the Q-Exam more than one time.

FIRST AMENDED COMPLAINT

13

106.    On or about Friday, May 3, 2013, Darren was informed that Ms. Malek, Ms. Moll-Cain, and "faculty who they had aligned themselves with" were going to try and have Darren separated from UNLV if he failed the Qualifying Examination (hereinafter "the Q-Exam") the first time.

107.    Darren contacted Professor Bo Bernhard, Ph.D., his academic mentor, to tell him what he had heard.

108.    Upon information and belief, it is alleged that certain Defendants had conspired, prior to the Q-Exam, to have Darren separated from UNLV (hereinafter "the Plan").

109.    The Q-Exam in 2013 for the Hotel College Ph.D.s was scheduled to take place on Friday, May 17 and Saturday, May 18, 2013.

110.    Upon information and belief, it is alleged that six (6) Hotel College Ph.D. students, including Darren, were scheduled to take the exam together in a Beam Hall (hereinafter "BEH") computer lab, overseen by a proctor.

111.    The computer lab in which the exam was scheduled to take place, and where Darren later took the exam, is smaller than 600 square feet, and is a single room.

112.    Upon information and belief, it is alleged that all of the exam takers would sit within two (2) and twenty (20) feet from where the proctor was to sit.

113.    Upon information and belief, it is alleged that the proctor would have had, if he/she wanted to, direct line of sight of all exam takers while proctoring the exam.

114.    Students take the Q-Exam by computer, with the proctor providing a USB stick on the days of the exam, on which the questions were provided, and the answers were to be saved, and the USB returned to the proctor at the end of each day.

115.    Upon information and belief, it is alleged that students did not have access to the Q-Exam questions before the exam.

FIRST AMENDED COMPLAINT
14

116.     Upon information and belief, it is alleged that students did not have knowledge of the physical characteristics of the USB stick on which the exam questions would be given, and the answers would be saved.

117.     Associate Dean Dr. James Busser (hereinafter "Dean Busser") is and was the head of the Ph.D. program at the Hotel College.

118.     On, or about, Monday, May 13, 2013, about four days prior to the Q-exam, Dean Busser met with Darren in his office.

119.     At that meeting Dean Busser asked Darren if he planned to cheat on the Q-Exam.

120.     Darren answered he did not plan to cheat on the Q-Exam.

121.     Dean Busser informed Darren that Prof.s Montgomery and Love, and Ms. Malek had accused Darren of planning to cheat on the Q-Exam (hereinafter "the Accusation").

122.     Darren never had any intention to cheat on the Q-Exam.

123.     Darren never told anyone that he planned to cheat on the Q-Exam.

124.     Any and all accusations that Darren planned to cheat on the Q-Exam are false.

125.     Any and all accusations that Darren told anyone that he planned to cheat on the Q-Exam are false.

126.     No complaint was ever filed against Darren by UNLV, its faculty, its administration, its staff, or another student.

127.     Upon information and belief, it is alleged that Prof. Montgomery, during the Accusation events, was continuing to use alcohol on, at least, a weekly basis.

128.     Upon information and belief, it is alleged that Prof. Montgomery, during the Accusation events, was continuing to use federally illegal Schedule 1 federally controlled substances on, at least, a weekly basis.

FIRST AMENDED COMPLAINT

129.    Upon information and belief, it is alleged that Prof. Montgomery's common use of alcohol and/or and federally controlled substances was known among faculty, staff, administration, and/or students of the Hotel College.

130.    Upon information and belief, it is alleged that Prof. Montgomery would show up to classes, on occasion, under the effects of alcohol and/ or federally controlled substances.

131.    Upon information and belief, it is alleged that Prof. Montgomery's showing up to classes, on occasion, under the effects of alcohol and/ or federally controlled substances, was known among faculty, staff, administration, and/or students of the Hotel College.

132.    Upon information and belief, it is alleged that Prof. Montgomery would miss teaching her classes, on occasion, due to her being under the influence of alcohol and/ or federally controlled substances.

133.    Upon information and belief, it is alleged that Prof. Montgomery's missing from teaching her classes, on occasion, due to her being under the influence of alcohol and/ or federally controlled substances, was known among faculty, staff, administration, and/or students of the Hotel College.

134.    Upon information and belief, it is alleged that Prof. Montgomery would show up to university functions, on occasion, apparently under the effects of alcohol and/ or federally controlled substances.

135.    Upon information and belief, it is alleged that, on at least one occasion, Prof. Montgomery was unable to leave a university function on her own and was assisted by UNLV faculty, staff, and/or students.

136.    Upon information and belief, it is alleged that Prof. Montgomery would have her graduate assistant drive her vehicle, with her in it, because she was too inebriated to drive it herself.

FIRST AMENDED COMPLAINT

137.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery would have her graduate assistant drive her vehicle, with her in it, because she was too inebriated to drive it herself.

138.    Upon information and belief, it is alleged that Prof. Montgomery would have her graduate assistant drive her vehicle, with her in it, in evenings and/or weekends.

139.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery would have her graduate assistant drive her vehicle, with her in it, in evening and/or weekends.

140.    Upon information and belief, it is alleged that Prof. Montgomery would, on occasion, ingest schedule 1 federally illegal federally controlled substances while her graduate assistant drove her vehicle, with her in it.

141.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery would, on occasion, ingest schedule 1 federally illegal federally controlled substances while her graduate assistant drove her vehicle, with her in it.

142.    Upon information and belief, it is alleged that Prof. Montgomery would, on occasion, provide alcohol to students under the age of 21 during UNLV events.

143.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery would, on occasion, provide alcohol to students under the age of 21 during UNLV events.

144.    Upon information and belief, it is alleged that Prof. Montgomery would, on occasion, use university funds to purchase alcohol for students under the age of 21 during UNLV events.

FIRST AMENDED COMPLAINT

145.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery would, on occasion, use university funds to purchase alcohol for students under the age of 21 during UNLV events.

146.    Upon information and belief, it is alleged that Prof. Montgomery had sexual intercourse with, at least, one student of the Hotel College while she held an administrative position at the Hotel College.

147.    Upon information and belief, it is alleged that Prof. Montgomery's sexual intercourse with the student of the Hotel College while she held an administrative position at the Hotel College was known among faculty, staff, administration, and/or students of the Hotel College.

148.    Upon information and belief, it is alleged that Prof. Montgomery provided schedule 1 federally controlled substances to UNLV faculty, staff, administration, and/or students.

149.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery provided schedule 1 federally controlled substances to UNLV faculty, staff, administration, and/or students.

150.    Upon information and belief, it is alleged that Prof. Montgomery has discriminated against students, prior to Darren, based on their sex, gender, race, and/or country of national origin.

151.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery has discriminated against students, prior to Darren, based on their sex, gender, race, and/or country of national origin.

152.     Upon information and belief, it is alleged that prior to the Accusation against Darren, it was known among faculty, staff, administration, and/or students of the Hotel College that Ms. Malek had a reputation for spreading falsehoods within the Hotel College.

153.     Upon information and belief, it is alleged that prior to the Accusation against Darren, Ms. Malek had a reputation for spreading falsehoods within her previous university.

154.     Prior to the Accusation Prof. Love had accused Darren of lying when Darren told him that the head of the Ph.D. program, Dr. Busser, had given Darren permission to stay three nights in a city in which an academic convention was taking place and Darren was participating, and that the Hotel College would reimburse Darren.

155.     Prof. Love told Darren to "prove it" that Dr. Busser had given Darren such permission.

156.      Darren contacted Dr. Busser and asked him to verify Darren's assertion to Prof. Love.

157.     Dr. Busser contacted Prof. Love and told him that Darren was indeed telling the truth.

158.     Prof. Love appeared both embarrassed and angry at Darren.

159.     Upon information and belief, it is alleged that at, or around, the time of the Accusation both Prof. Love and Prof. Montgomery were living together at 8730 Wallaby Lane, Las Vegas, NV.

160.     Upon information and belief, it is alleged that Prof.s Montgomery, Love, and Tanford, Ms. Malek, and Ms. Moll-Cain would spend time in each other's company beyond the requirements of the university in social settings, including, but not limited to, one or more of their homes.

FIRST AMENDED COMPLAINT

19

161.     Upon information and belief, it is alleged that Prof. Love was scheduled to proctor the Q-Exam.

162.     Upon information and belief, it is alleged that Prof. Tanford would later be the chair of Ms. Malek's Ph.D. dissertation committee.

163.     Upon information and belief, it is alleged that Prof. Love would later be on Ms. Malek's Ph.D. dissertation committee.

164.     Darren was told by UNLV faculty, and upon information and belief it is alleged, that Dr. Montgomery accused Ms. Malek of starting the Accusation against Darren.

165.     Darren was told by UNLV faculty, and upon information and belief it is alleged, that Ms. Malek accused Dr. Montgomery of starting the Accusation against Darren.

166.     Upon information and belief, it is alleged that cheating on an exam is grounds for separation from UNLV.

167.     Upon information and belief, it is alleged that cheating on an exam is grounds on which not to hire a faculty member at UNLV.

168.     Upon information and belief, cheating on an exam is commonly perceived to be grounds on which not to hire for any profession.

169.     Upon information and belief, UNLV has never hired a faculty member who they knew or believed to have cheated on a Q-Exam.

170.     Upon information and belief, UNLV has never hired a faculty member who they knew had been accused of planning to cheat on a Q-Exam.

171.     Upon information and belief, UNLV has never hired a new faculty member who had filed a lawsuit against it.

172.     President Snyder was, at the time of the Accusation, Dean of the Hotel College.

FIRST AMENDED COMPLAINT

173.    On, or about, May 13, 2013, after Dean Busser informed Darren about the Accusation, Darren e-mailed President Snyder regarding the Accusation.

174.    On, or about, May 14, 2013, President Snyder replied to Darren, by email, that he had just learned of the Accusation and that it would be investigated.

175.    Upon information and belief, it is alleged that President Snyder consulted with UNLV legal counsel prior to responding to Darren's email.

176.    On, or about, Thursday, May 16, the day before the scheduled Q-Exam, President Snyder wrote an email to Darren, stating "the accusation that [Darren] had an intention to cheat on the qualifying exam was a student based rumor and clearly not the thinking or belief of the College or the University."

177.    Upon information and belief, it is alleged that President Snyder chose to use the word "rumor" after consulting with UNLV legal counsel.

178.    At no point was the student identified of whom President Snyder referred.

179.    Upon information and belief, it is alleged that the student to whom President Snyder referred was Defendant Ms. Malek.

180.    Upon information and belief, it is alleged that President Snyder, after writing Darren about the "student-based rumor," requested that an investigation of involved students be done by the Office of Student Conduct.

181.    Upon information and belief, it is alleged that the creation and repetition of the "rumor" was, in fact, an intentional act on the part of Defendants to minimize Darren's claim that UNLV faculty, staff, and students were going around telling people that Darren was planning to cheat on the Q-Exam.

FIRST AMENDED COMPLAINT
21

182.    Upon information and belief, it is alleged that the creation and repetition of the Accusation was, in fact, an intentional act on the part of Defendants to ruin Darren's academic reputation within and without the university.

183.    Upon information and belief, it is alleged that the creation and repetition of the Accusation was, in fact, an intentional act on the part of Defendants to purposefully distress Darren before taking the Q-Exam.

184.    Upon information and belief, it is alleged that Prof. Love was scheduled to be a proctor of the Q-Exam, even for some time after his involvement in the Accusation.

185.    Upon learning of Prof. Love's involvement in the Accusation, Darren requested that Prof. Love be removed as proctor.

186.    Upon information and belief, it is alleged that only after Darren's request was Prof. Love removed as proctor of the Q-Exam.

187.    Upon information and belief, it is alleged that Prof. Love was upset that he was removed as proctor.

188.    In light of the distraction due to the accusations against Darren, President Snyder offered Darren up to a one month period to take the exam.

189.    Darren suggested that he take it the following week.

190.    Upon information and belief, it is alleged that the other five (5) Ph.D. students took the exam as originally scheduled.

191.    Darren took the Q-Exam, as the only student, May 23 and 24, with Dean Busser as the proctor.

192.    The Q-Exam passing grade was 60% in each section.

193.    Darren scored above 80% in both sections of the Q-Exam.

194.    Darren passed both sections of the exam.

FIRST AMENDED COMPLAINT

195.    President Snyder emailed Darren that "[the Dean's] office will take appropriate action to address this matter under applicable UNLV policies and procedures, which includes an investigation into the origins of the rumor, a determination of whether a violation of UNLV's policies and procedures occurred, and if so, appropriate disciplinary proceedings."

196.    President Snyder wrote Darren that "this matter [of student misconduct] has been referred to the Office of Student Conduct for review and appropriate action under applicable University policies and procedures.  Given the nature of this matter and the concerns you have expressed, it is important that you now work directly with the Director of OSC, Phil Burns (copied on this email), who can address your concerns within these policies and procedures."

197.    On, or about, May 31, 2013, Darren met with Dir. Burns at the Office of Student Conduct.

198.    During this initial meeting Darren asked Dir. Burns if he, Dir. Burns, was friendly with Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

199.    To which Dir. Burns responded he was not.

200.    Darren asked Dir. Burns if he, Dir. Burns, knew Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

201.    To which Dir. Burns replied that after being at UNLV for many years he probably had come across one or two of them over the years, but did not know any of them by name.

202.    Darren then spent over two hours with Dir. Burns providing him with an oral sequence of events.

203.    Darren told Dir. Burns that he felt he had been discriminated against on the basis of his sex/ gender.

204.    Darren later sent a written sequence of events to Dir. Burns, including approximately a 17-page, detailed account of names, dates, e-mails, times, and events.

FIRST AMENDED COMPLAINT

23

205.    Upon information and belief, it is alleged that Dir. Burns was, at the time of this original meeting with Darren, the Deputy Title IX Coordinator for UNLV.

206.    Dir. Burns did not tell Darren that he may have a Title IX claim against UNLV or the individuals.

207.    Upon information and belief, it is alleged that Dir. Burns purposely failed to tell Darren about his potential Title IX claims.

208.    At no point during any of their meetings did Dir. Burns, or any other member of UNLV, describe Ms. Malek or Ms. Moll-Cain as an employee, quasi or otherwise, of UNLV or the state.

209.    At no point during any of their meetings did Dir. Burns describe Ms. Malek or Ms. Moll-Cain as an employee, quasi or otherwise, of UNLV or the state.

210.    At no point during any of their meetings did Dir. Burns describe Darren as an employee of UNLV, quasi or otherwise.

211.    On, or about, May 31, 2013, Dir. Burns told Darren that he would commence his investigation immediately.

212.    Darren sent Dir. Burns several emails over the course of that summer regarding the investigation.

213.    Dir. Burns emailed Darren that he could only question those students who were enrolled over the summer semester.

214.    Upon receipt of this email, within one day, Darren informed Dir. Burns that all the students in question were enrolled that summer.

215.    Dir. Burns emailed Darren that he could not question any faculty who were not present over the summer semester.

FIRST AMENDED COMPLAINT

24

216.    Upon receipt of this email, Darren informed Dir. Burns within one day that all faculty involved were on campus that summer.

217.    Darren did not receive a response to this last email until the end of August, 2013.

218.    Finally, in September 2013, Dir. Burns agreed to meet with Darren.

219.    Dir. Burns told Darren that he completed his investigation.

220.    Upon information and belief, it is alleged that Dir. Burns did not contact all parties who Darren told him were involved in or witnessed the events.

221.    Dir. Burns informed Darren he maintained authority only over students, not faculty.

222.    Dir. Burns further informed Darren that the investigation of the students in question was a "he-said, she-said" and that he recommended no action be taken against any student.

223.    Dir. Burns then told Darren that he, Darren, had a reputation among those he interviewed as being aggressive.

224.    Dir. Burns continued that Darren was largely to blame for the accusations of planning to cheat made against him.

225.    Dir. Burns told Darren that due to the Jerry Sandusky pedophilic molestation allegations at Penn State University, all faculty and staff were instructed to inform others if there was anything out of the ordinary occurring among faculty, staff, and students.

226.    Dir. Burns told Darren that the Jerry Sandusky instructions justified the students' and faculty's actions in repeating the false allegations about Darren.

227.    Dir. Burns refused to inform Darren who he had questioned.

228.    Dir. Burns refused to provide Darren with a copy of the investigation report.

229.    Shortly thereafter, Darren met with Dean Shoemaker regarding the findings of the investigation.

230.    Dean Shoemaker informed Darren that he knew of the actions of certain faculty, staff, and students, and asked Darren to give him a little time to try and correct what was "wrong in the Hotel College."

231.    Darren agreed to refrain from further action while Dean Shoemaker tried to correct what was "wrong in the Hotel College."

232.    Over six months later, in June 2014, Darren was told, for the first time, that Dir. Burns did know Prof. Montgomery prior to Darren's initial meeting with him.

233.    Upon information and belief, it is alleged that Dir. Burns had, for multiple years prior, lectured at Prof. Montgomery's request, in her classes.

234.    Upon information and belief, it is alleged that Dir. Burns had given lectures for Prof. Montgomery on one or more occasions prior to Darren's initial conversation with him.

235.    Upon information and belief, it is alleged that Dir. Burns had socialized with Prof. Montgomery, outside of UNLV, on one or more occasions prior to Darren's initial conversation with him.

236.    Upon information and belief, it is alleged that Dir. Burns had given lectures for Prof. Love on one or more occasions prior to Darren's initial conversation with him.

237.    Upon information and belief, it is alleged that Dir. Burns had socialized with Prof. Love, outside of UNLV, on one or more occasions prior to Darren's conversation with him.

238.    Darren, shortly thereafter, emailed President Snyder informing him that while Dir. Burns failed to disclose, and expressly denied, knowing any of those he was investigating, Darren had evidence that would call Dir. Burns' objectivity and veracity into question.

FIRST AMENDED COMPLAINT

26

239.     President Snyder informed Darren he would no longer discuss the issue of the Accusation with him.

240.     UNLV in-house counsel then emailed Darren stating that it recommended to all faculty and staff to refrain from discussing the Accusation with Darren and that any further discussion should go through the office of counsel.

241.     Darren met with UNLV Associate General Counsel, John Marty Howard (hereinafter, "Mr. Howard").

242.     Mr. Howard asked Darren about all the events that had transpired.

243.     Darren spent over two hours with Mr. Howard recounting what had transpired, from the initial accusation, to his recent learning of Dir. Burns' prior relationship with Prof. Montgomery.

244.     Darren requested that UNLV hire an independent outside investigation service to investigate Darren's claims after Darren learned of Dir. Burns', the UNLV investigator, biases.

245.     No independent investigation was ever done.

246.     Upon information and belief, it is alleged that UNLV general sent memos to the UNLV faculty, staff, and students, based on Darren's conversation with Mr. Howard.

247.     At no point prior to filing suit was Darren told by any of the Defendants, nor UNLV legal counsel, that he was an employee of the UNLV, and entitled to any employee rights of action.

248.     Following Darren's first knowledge of the Accusation, Darren told Dr. Busser that he wanted a public apology from those who made and repeated the Accusation.

249.     To date Darren has not received any apology from any Defendant regarding the Accusation.

FIRST AMENDED COMPLAINT

250.    Upon information and belief, it is alleged that there has been no disciplining by UNLV of faculty, staff, or student Defendants, based on their actions regarding the Accusation.

251.    Upon information and belief, it is alleged that UNLV, subsequent to the Accusation, awarded Defendant Prof. Tanford tenure at the university.

252.    Upon information and belief, it is alleged that Dean Shoemaker awarded Defendant Prof. Tanford, subsequent to her involvement in the Accusation, the position of Director of the Hotel College Master's program.

253.    Upon information and belief, it is alleged that UNLV promoted Prof. Montgomery, subsequent to her involvement in the Accusation, to Chair of the UNLV Faculty Senate.

254.    Upon information and belief, it is alleged that Dean Shoemaker awarded Prof. Montgomery, subsequent to her involvement in the Accusation, the position of "Director of Student Success."

255.    Upon information and belief, it is alleged that Prof. Love has retired from UNLV.

256.    Upon information and belief, it is alleged that Prof. Love, subsequent to his involvement in the Accusation, was given a full pension for his time at UNLV.

257.    Darren maintains a property interest in his public education.

258.    The UNLV Conduct Code (hereinafter "the Code"), §2 I.A states that students have the "right to fair and equitable process in all matters concerning the Code."

259.    The Code's Philosophy specifically states "students … have all the responsibilities and rights that are incumbent upon any citizen."

260.    The Code's Philosophy also states that UNLV "holds students … responsible for their own actions."

261.    The Code's Philosophy also states that "[s]tudents … are subject to the University's internal disciplinary procedures… *and also*, when applicable, *to local state, and federal laws.*" (italics added).

262.    The Code also states that, in §2 III.G, prohibited conduct includes "[p]roviding false information to a University official who is performing his/ her official duties or engaging in other similar forms of dishonesty, *including making a wrongful accusation against any member of the University community.*" (italics added).

263.    The Code, in §2 III.V (1), defines prohibited abuse of the Code as "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person."

264.    The Code, in §2 III.V (2), defines prohibited abuse of the Code as "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

265.    The Code, in §2 III.V (10), also includes abuse of the Code as "[i]nfluencing, or attempting to influence, another person to commit an abuse of the conduct system."

266.    Upon information and belief, it is alleged that UNLV took no disciplinary action against Ms. Malek regarding the Accusation.

267.    Upon information and belief, it is alleged that UNLV took no disciplinary action against Ms. Moll-Cain regarding the Accusation.

268.    The Code is, among other things, a contract between UNLV, its faculty, staff, and students.

269.    The Student Academic Misconduct Policy (hereinafter "Policy") expressly states "[h]onesty is the foundation of teaching, learning, research and service; and the prerequisite for full realization of trust, fairness, respect and responsibility. Students and faculty alike must be honest with themselves and others."

FIRST AMENDED COMPLAINT

270.    The Policy expressly states "[t]he UNLV community fosters a climate of mutual trust and encourages the free exchange of ideas. Only with trust can the public believe in the social value and meaning of an institution's scholarship and degrees."

271.    The Policy expressly states "[w]e strive to establish clear standards, practices, and procedures and expect fairness in the interactions of students, faculty and administrators. Important components of fairness are predictability, clear expectations, a predictable and transparent process, as well as consistent and just responses."

272.    The Policy expressly states "Because students are aspiring professionals, our community expects them to exercise professional conduct during their career as students and uphold the core value of integrity."

273.    The Policy expressly states "[i]ntegrity is a concern for every member of the campus community; all share in upholding the fundamental values of honesty, trust, respect, fairness, responsibility and professionalism. By choosing to join the UNLV community, students accept the Student Academic Misconduct Policy and are expected to always engage in ethical decision-making. Students enrolling in UNLV assume the obligation to conduct themselves in a manner compatible with UNLV's function as an educational institution.

274.    Darren signed the Graduate Assistant Contract that stated, in part, that "Graduate Assistants are required to abide by all federal and state laws, as well as NSHE and university policies, standards of professional conduct, and the rules, ethical codes, and policies that govern the GA's field of work, area of study, and funding source. Any violation thereof may lead to the termination of a student's Graduate Assistantship, possible separation from his or her graduate program, as well as possible legal action, criminal penalties, and/or other sanctions deemed appropriate."

FIRST AMENDED COMPLAINT

275.     Upon information and belief, it is alleged that the Hotel College released a College Climate Survey (hereinafter "Survey") in May, 2015, two years after the Accusation was originally made.

276.     Upon information and belief, it is alleged that in the Survey 57% of Hotel College administrative faculty, academic faculty, and classified staff, responded to the questions therein.

277.     Upon information and belief, it is alleged that only 15% of those who responded disagreed or strongly disagreed that "in the end, the right thing usually happens in [the Hotel College]."

278.     Upon information and belief, it is alleged that a Hotel College faculty or staff felt that there is a "hostile work environment that is retaliatory towards anyone who speaks against [the administration's] ideas."

279.     Upon information and belief, it is alleged that a Hotel College faculty or staff felt "atmosphere [at the Hotel College] is toxic."

280.     Upon information and belief, it is alleged that the Survey found that only 2% who responded strongly agreed that job performance in the Hotel College was valued higher than personal relationships.

281.     Upon information and belief, it is alleged that the Survey found that only 24% who responded agreed that job performance in the Hotel College was valued higher than personal relationships.

282.     Upon information and belief, it is alleged that a Hotel College faculty or staff wrote in the Survey that "[t]here is an air of intimidation that prevails" in the Hotel College.

283.     Upon information and belief, it is alleged that another Hotel College faculty or staff wrote in the Survey that "[t]here is an air if *(sic)* intimidation that prevails" in the Hotel College.

FIRST AMENDED COMPLAINT

284.    Upon information and belief, it is alleged that an overwhelming 64% of those who responded disagreed or strongly disagreed that "in the end, the right thing usually happens in [the Hotel College]."

285.    Upon information and belief, it is alleged that another Hotel College faculty or staff wrote in the Survey that the biggest issue facing Administrative faculty is "[h]olding people accountable."

286.    Upon information and belief, it is alleged that another Hotel College faculty or staff wrote in the Survey that the faculty "members of the college believe that the laws, policies, and procedures should not be followed and as a result engage in activities that are completely against all the protocols."

287.    Despite the false accusations made against him regarding planning to cheat on the Q-Exam, Darren was never charged with an alleged violation within or without UNLV.

288.    Any accusation regarding cheating at the university level is significant grounds not to hire an applicant for a tenure track professor position at UNLV.

289.    Any accusation regarding cheating at the university level is significant grounds not to hire an applicant for a tenure track professor position at any university.

290.    Any accusation regarding cheating at the university level is significant grounds not to hire an applicant for an employment position at any professional company.

291.    Upon information and belief, it is alleged that UNLV has never hired, for a tenure track position, a student or faculty member who has sued the university.

///

///

///

FIRST AMENDED COMPLAINT

32

### D.   FIRST CLAIM FOR RELIEF

**(DEFAMATION– AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

292.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

293.   Defendants, or their agents, made an allegation that Darren was planning to cheat on the Qualifying Exam.

294.   Upon information and belief, it is alleged that the standard UNLV procedure for an accusation of academic misconduct, at the time of these events, was to report the alleged misconduct directly to the Office of Student Conduct.

295.   Upon information and belief, it is alleged that none of the professors or students herein reported Darren's alleged conduct to the Office of Student Conduct prior to May 10, 2013.

296.   The Accusation is, and was, false.

297.   Defendants, or their agents, made the Accusation, either knowing, or having reckless disregard, as to the truth or falsity of the statements.

298.   On, or about, Thursday, May 16, President Snyder wrote that "the accusation that [Darren] had an intention to cheat on the qualifying exam was a student based rumor and clearly not the thinking or belief of the College or the University."

299.   Upon information and belief, it is alleged that professors, staff, and students repeated the Accusation with other faculty, staff, students, and other third person(s).

300.   Upon information and belief, it is alleged that, Prof. Montgomery started the Accusation.

301.    Third person(s) shall be interpreted to mean any person(s), other than Darren, who are deemed privileged and/or not.

302.    Upon information and belief, it is alleged that, Prof. Montgomery repeated the Accusation to third person(s) in written form.

303.    Upon information and belief, it is alleged that, Prof. Montgomery repeated the Accusation to third person(s) in oral form.

304.    Upon information and belief, it is alleged that, Prof. Love started the Accusation.

305.    Upon information and belief, it is alleged that, Prof. Love repeated the Accusation to third person(s) in written form.

306.    Upon information and belief, it is alleged that, Prof. Love repeated the Accusation to third person(s) in oral form.

307.    Upon information and belief, it is alleged that Prof. Tanford started the Accusation.

308.    Upon information and belief, it is alleged that Prof. Tanford repeated the Accusation to third person(s) in written form.

309.    Upon information and belief, it is alleged that Prof. Tanford repeated the Accusation to third person(s) in oral form.

310.    Upon information and belief, it is alleged that Ms. Malek started the Accusation.

311.    Upon information and belief, it is alleged that Ms. Malek repeated the Accusation to third person(s) in written form.

312.    Upon information and belief, it is alleged that Ms. Malek repeated the Accusation to third person(s) in oral form.

313.    Upon information and belief, it is alleged that Ms. Moll-Cain started the Accusation.

314.    Upon information and belief, it is alleged that Ms. Moll-Cain repeated the Accusation to third person(s) in written form.

315.    Upon information and belief, it is alleged that Ms. Moll-Cain repeated the Accusation to third person(s) in oral form.

316.    Upon information and belief, it is alleged that an agent of UNLV started the Accusation.

317.    Upon information and belief, it is alleged that agents of UNLV, other than Defendants, repeated the Accusation to third person(s) in written form.

318.    Upon information and belief, it is alleged that agents of UNLV, other than Defendants, repeated the Accusation to third person(s) in oral form.

319.    Upon information and belief, it is alleged that Defendants, or their agents, made the Accusation, at the very least, with reckless disregard to its truth.

320.    Upon information and belief, it is alleged that Defendants, or their agents, made the Accusation with malice.

321.    Upon information and belief, it is alleged that these Defendants did so to purposefully harm Darren's academic and professional reputation.

322.    A false accusation of cheating on any university exam is extreme and outrageous, and far beyond any reasonable conduct within or without the university setting.

323.    The purposeful creation and/or repetition of a known falsity to purposefully injure another is beyond the discretion of any university discretionary duty.

324.    Intending to cheat on a university exam demonstrates lack of fitness for trade, business, or profession as a student, professional, Ph.D. candidate, and a university professor or faculty member.

325.     False statements imputing lack of fitness for trade, business, or profession constitute defamation per se.

326.     Defamation per se claims presume damages and special damages need not be shown.

327.     When Darren was made aware of the Accusation, he demanded that the university hold those accountable responsible for their actions, for there to be a public retraction of the statements, as well as a public apology.

328.     Upon information and belief, it is alleged that, to date, no public retraction has been made, nor has Darren received an apology from any of the faculty or students involved in the creation and dissemination of the Accusation.

329.     Darren sustained actual and presumed damages as a result of the false accusation that he was planning to cheat, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, and his actual separation and constructive expulsion from UNLV.

### E.     SECOND CLAIM FOR RELIEF

**(INVASION OF PRIVACY - FALSE LIGHT– AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; KRISTIN MALEK; and LISA MOLL-CAIN)**

330.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

331.     Upon information and belief, it is alleged that Defendants gave publicity to a matter concerning Darren that placed Darren before the public in a false light by starting and/or repeating the Accusation, both among and beyond UNLV faculty, administration, and staff, and other third person(s).

FIRST AMENDED COMPLAINT

36

332.    Upon information and belief, it is alleged that Defendants started and/or repeated the Accusation to person(s) who were not involved in the Q-Exam.

333.    Upon information and belief, it is alleged that Defendants knew, or should have known, that the false accusations were not true.

334.    Such persons, who were not involved in administration, proctoring, or grading, of the Q-exam are considered to be public persons.

335.    A false accusation of planning to cheat on a university exam, would be highly offensive to a reasonable person.

336.    Upon information and belief, it is alleged that Defendants maliciously had knowledge of, or acted with malice in reckless disregard as to, the truth of the Accusation and the light in which Darren was placed.

337.    The purposeful creation and/or repetition of a known falsity, is beyond the discretion of any university discretionary duty.

338.    Darren was harmed and suffered damages as a result of these invasions of privacy, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## F.    THIRD CLAIM FOR RELIEF

### (CIVIL CONSPIRACIES – AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

339.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

340.    On or about Friday, May 3, 2013, Darren learned about the Plan to have him separated from UNLV if he failed the first take of the Q-Exam.

FIRST AMENDED COMPLAINT

341.     Upon information and belief, it is alleged that the faculty members involved in the Plan included Prof. Montgomery, Prof. Love, and Prof. Tanford.

342.     Upon information and belief, it is alleged that the students and/or staff involved in the Plan included Ms. Malek and Ms. Moll-Cain.

343.     Upon information and belief, it is alleged that Dir. Burns used his influence as Director of Student Conduct to end the investigation of the students, staff and professors before conducting good-faith, unbiased, and complete investigation.

344.     Upon information and belief, it is alleged that Dir. Burns used this influence at the request of the Defendant Professors.

345.     Upon information and belief, it is alleged that Dir. Burns used this influence at the request of UNLV administration.

346.     Upon information and belief, it is alleged that Defendants, or their agents, by acting in concert, intended to accomplish the unlawful goals of defamation, intentional infliction of emotional distress, false light, and the other torts named herein, as well as to protect their colleagues from internal discipline.

347.     Darren was harmed and suffered damages as a result of these civil conspiracies, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

### G.  FOURTH CLAIM FOR RELIEF

**(CONCERTS OF ACTION – AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

348.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

349.     On or about Friday, May 3, 2013, Darren learned about the Plan.

350.     Upon information and belief, it is alleged that Defendants, or their agents, acted with others, or defendants acted together, to commit defamation, intentional infliction of emotional distress, false light, and/or the other torts named herein against Darren, while acting in concert or pursuant to a common design of harming Darren, and his reputation.

351.     Knowingly repeating false accusations that imputes a student's professional and academic reputation, posed a substantial risk of emotional, psychological, reputational, and economic harm to the student.

352.     Darren was harmed and suffered damages as a result of this civil conspiracy, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## H.       FIFTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTIONS OF EMOTIONAL DISTRESS– AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

353.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

354.     On or about Friday, May 3, 2013, Darren learned about the Plan.

355.     A false accusation that a student is planning to cheat on the Q-Exam is extreme or outrageous behavior.

356.     Making such an accusation, without any evidence, demonstrates either the intention of, or reckless disregard for, causing emotional distress to the student.

357.     A deliberately false accusation of purposeful academic misconduct for the purpose to injure the reputation of a student in the university setting exceeds all bounds of decency and is intolerable in civilized society.

358.    The Code considers "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person" to be expressly prohibited conduct that can result in expulsion from the university.

359.    The purposeful repetition of the false accusation that a student planned to cheat on an exam is extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to the student.

360.    Dir. Burns is in a high position of trust in UNLV as Director of Student Conduct.

361.    Upon information and belief, it is alleged that Dir. Burns has the power to recommend the expulsion of students from UNLV.

362.    Dir. Burns blamed Darren for "[Darren's] part in causing the [Defendants'] accusation against [Darren]."

363.    Upon information and belief, it is alleged that Dir. Burns did not interview all parties who Darren identified.

364.    Upon information and belief, it is alleged that Dir. Burns intentionally failed to disclose his familiar relationships with any of the Defendants.

365.    For the Director of the Office of Student Conduct to blame a student for causing the baseless accusations made against him, without any substantive evidence, demonstrates extreme and/or outrageous behavior.

366.    For the Director of the Office of Student Conduct to blame a student for causing the baseless accusations made against him, without any substantive evidence, demonstrates either the intention of, or reckless disregard for, causing emotional distress to the student.

367.    But for the Accusation Defendants' ongoing conduct, Darren would not have been falsely accused, and would not have suffered severe or extreme emotional distress as an actual or proximate result.

368.     Again, Darren alleges that these actions were done with malice and/or reckless disregard to the truth.

369.     Darren was harmed and suffered damages as a result of these intentional inflictions of emotional distress, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## I.   SIXTH CLAIM FOR RELIEF

### (BREACH OF CONTRACT – AGAINST DEFENDANTS UNLV; NEAL SMATRESK; DONALD SNYDER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN))

370.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

371.     Darren entered into a valid contract with UNLV as a graduate assistant.

372.     Darren entered into a valid contract with UNLV as a paying student.

373.     UNLV is responsible for the actions, and inactions, taken on its behalf, of its faculty and staff in the furtherance of UNLV duties.

374.     The Accusation herein does not apply to student academic performance or the evaluation thereof.

375.     UNLV has a Student Conduct Code.

376.     Upon information and belief, it is alleged that UNLV does not have a Faculty Conduct Code.

377.     Upon information and belief, it is alleged that UNLV does not have a Staff Conduct Code.

378.     The Code states that "[p]ersons found in violation may be accountable to both civil and criminal authorities … for actions that constitute violations of the *Code*."

379.     The Code expressly states "persons," rather than "students."

380.     Upon information and belief, it is alleged that all persons involved with UNLV found in violation of the Code, whether they be students, faculty, staff, counsel, or administration, are not immune from civil or criminal liability for breaches of the Code.

381.     The Code Philosophy expressly states as a violation "[a]ny act or actions, committed by a student within the authority and jurisdiction of the *Code* that is contrary to federal, state, local law, or University policy/regulation."

382.     The Student Academic Misconduct Policy (hereinafter "Policy") expressly states "[h]onesty is the foundation of teaching, learning, research and service; and the prerequisite for full realization of trust, fairness, respect and responsibility. Students and faculty alike must be honest with themselves and others."

383.     The Policy expressly states "[t]he UNLV community fosters a climate of mutual trust and encourages the free exchange of ideas. Only with trust can the public believe in the social value and meaning of an institution's scholarship and degrees."

384.     The Policy expressly states "[w]e strive to establish clear standards, practices, and procedures and expect fairness in the interactions of students, faculty and administrators. Important components of fairness are predictability, clear expectations, a predictable and transparent process, as well as consistent and just responses."

385.     The Policy expressly states "Because students are aspiring professionals, our community expects them to exercise professional conduct during their career as students and uphold the core value of integrity."

386.     The Policy expressly states "[i]ntegrity is a concern for every member of the campus community; all share in upholding the fundamental values of honesty, trust, respect, fairness, responsibility and professionalism. By choosing to join the UNLV community, students accept the Student Academic Misconduct Policy and are expected to always engage in ethical

FIRST AMENDED COMPLAINT
42

decision-making. Students enrolling in UNLV assume the obligation to conduct themselves in a manner compatible with UNLV's function as an educational institution.

387.    Ms. Malek was a UNLV student as defined by the Code and discussed in the Policy.

388.    Ms. Moll-Cain was a UNLV student as defined by the Code and discussed in the Policy.

389.    The Code also expressly prohibits "[p]roviding false information to a University official."

390.    Upon information and belief, it is alleged that Ms. Malek provided false information to UNLV faculty, staff, administration, and counsel by stating that Darren was planning to cheat on the exam.

391.    Upon information and belief, it is alleged that Ms. Moll-Cain provided false information to UNLV faculty, staff, administration, and counsel by stating that Darren was planning to cheat on the exam.

392.    The Code also expressly prohibits "[f]alsifying or withholding required information in any form from a University official."

393.    Upon information and belief, it is alleged that Ms. Malek provided false information to UNLV faculty and staff by stating that Darren was planning to cheat on the exam, knowing it not to be true.

394.    Upon information and belief, it is alleged that Ms. Moll-Cain provided false, and/or withheld required, information to UNLV faculty and staff by stating that Darren was planning to cheat on the exam, knowing it not to be true.

395.    The Code states that an abuse of the Code includes "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person."

396.    Upon information and belief, it is alleged that Ms. Malek knowingly made a false, inaccurate and misleading statement against Darren by stating that he was going to cheat on the exam.

397.    Upon information and belief, it is alleged that Ms. Moll-Cain knowingly made a false, inaccurate and misleading statement against Darren by stating that he was going to cheat on the exam.

398.    Upon information and belief, it is alleged that Ms. Moll-Cain knowingly withheld required information by not presenting a University official with her knowledge of the falsity of the Accusation.

399.    Upon information and belief, it is alleged that Prof. Montgomery knowingly made a false, inaccurate and misleading statement against Darren by stating that he was going to cheat on the exam.

400.    Upon information and belief, it is alleged that Prof. Montgomery knowingly withheld required information by not presenting a University official with her knowledge of the falsity of the Accusation.

401.    Upon information and belief, it is alleged that Prof. Love knowingly made a false, inaccurate and misleading statement against Darren by stating that he was going to cheat on the exam.

402.    Upon information and belief, it is alleged that Prof. Love knowingly withheld required information by not presenting a University official with his knowledge of the falsity of the Accusation.

403.    Upon information and belief, it is alleged that Prof. Tanford knowingly made a false, inaccurate and misleading statement against Darren by stating that he was going to cheat on the exam.

FIRST AMENDED COMPLAINT
44

404.    Upon information and belief, it is alleged that Prof. Tanford knowingly withheld required information by not presenting a University official with her knowledge of the falsity of the Accusation.

405.    Upon information and belief, it is alleged that Dir. Burns knowingly withheld required information by not presenting a University official with his knowledge of the falsity of the Accusation.

406.    The Code also states that it is an abuse of the Code "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

407.    Upon information and belief, it is alleged that Ms. Malek knowingly made a false, inaccurate and misleading statement to Dir. Burns, against Darren, by stating that he was going to cheat on the exam.

408.    Upon information and belief, it is alleged that Ms. Moll-Cain knowingly made a false, inaccurate and misleading statement to Dir. Burns, against Darren, by stating that he was going to cheat on the exam.

409.    Upon information and belief, it is alleged that Prof. Montgomery knowingly made a false, inaccurate and misleading statement to Dir. Burns, against Darren, by stating that he was going to cheat on the exam.

410.    Upon information and belief, it is alleged that Prof. Love knowingly made a false, inaccurate and misleading statement to Dir. Burns, against Darren, by stating that he was going to cheat on the exam.

411.    Upon information and belief, it is alleged that Prof. Tanford knowingly made a false, inaccurate and misleading statement to Dir. Burns, against Darren, by stating that he was going to cheat on the exam.

412.    The Code also forbids "[a]ssisting in or inciting others into violating any provision of the *Code*."

413.    Upon information and belief, it is alleged that Ms. Malek knowingly assisted others in violating the Code by stating that Darren was going to cheat on the exam.

414.    Upon information and belief, it is alleged that Ms. Moll-Cain knowingly assisted others in violating the Code by stating that Darren was going to cheat on the exam.

415.    Upon information and belief, it is alleged that Prof. Montgomery knowingly assisted others in violating the Code by stating that Darren was going to cheat on the exam.

416.    Upon information and belief, it is alleged that Prof. Love knowingly assisted others in violating the Code by stating that Darren was going to cheat on the exam.

417.    Upon information and belief, it is alleged that Prof. Tanford knowingly assisted others in violating the Code by stating that Darren was going to cheat on the exam.

418.    Upon information and belief, it is alleged that Dir. Burns knowingly assisted others in violating the Code by not sincerely investigating and prosecuting any of the Defendants that he knew had violated the Code.

419.    It is also a violation of the Code by simply "[b]eing present during any violation of the *Code* in such a way as to condone, support, or encourage such violation."

420.    Upon information and belief, it is alleged that Ms. Malek was present in conspiring to violate the Code, and condoned, supported, or encouraged such an action.

421.    Upon information and belief, it is alleged that Ms. Malek did not report any violation of the Code by any of the other Accusation Defendants.

422.    Upon information and belief, it is alleged that Ms. Moll-Cain was present in conspiring to violate the Code, and condoned, supported, or encouraged such an action.

423.    Upon information and belief, it is alleged that Ms. Moll-Cain did not report any violation of the Code by any of the other Accusation Defendants.

424.    Upon information and belief, it is alleged that Prof. Montgomery was present in conspiring to violate the Code, and condoned, supported, or encouraged such an action.

425.    Upon information and belief, it is alleged that Prof. Montgomery did not report any violation of the Code by any of the other Accusation Defendants.

426.    Upon information and belief, it is alleged that Prof. Love was present in conspiring to violate the Code, and condoned, supported, or encouraged such an action.

427.    Upon information and belief, it is alleged that Prof. Love did not report any violation of the Code by any of the other Accusation Defendants.

428.    Upon information and belief, it is alleged that Prof. Tanford was present in conspiring to violate the Code, and condoned, supported, or encouraged such an action.

429.    Upon information and belief, it is alleged that Prof. Tanford did not report any violation of the Code by any of the other Accusation Defendants.

430.    The Code states that "[t]he President of the University has the responsibility for student conduct and discipline."

431.    President Smatresk was President of the University at the time of the Accusation.

432.    President Smatresk was responsible for Ms. Malek and Ms. Moll-Cain's conduct.

433.    According to the Code, any breach of Ms. Malek or Ms. Moll-Cain's student conduct is therefore the responsibility of President Smatresk.

434.    President Snyder was President of UNLV at the time of the potential disciplining of the students.

435.    According to the Code, President Snyder was responsible for Ms. Malek and Ms. Moll-Cain's disciplining.

FIRST AMENDED COMPLAINT

436.    According to the Code, any disciplining of Ms. Malek or Ms. Moll-Cain's student conduct, or lack thereof, is therefore the responsibility of President Snyder.

437.    There is an implied covenant between UNLV, UNLV's agents, and its students that UNLV will protect the integrity and reputation of its students from baseless accusations from its faculty, staff, administration, counsel, and other UNLV students.

438.    Upon information and belief, it is alleged that Prof. Montgomery purposefully did not protect Darren's integrity and reputation, thereby breaching this duty.

439.    Upon information and belief, it is alleged that Prof. Love purposefully did not protect Darren's integrity and reputation, thereby breaching this duty.

440.    Upon information and belief, it is alleged that Prof. Tanford purposefully did not protect Darren's integrity and reputation, thereby breaching this duty.

441.    There is an implied covenant that the Director of Student Conduct at UNLV will be forthright and honest in his dealings with the students.

442.    There is an implied covenant between the Director of Student Conduct at UNLV and UNLV students, upon saying that he will do so, to objectively and impartially investigate any wrongdoing by other students.

443.    Upon information and belief, it is alleged that Dir. Burns did not objectively investigate the wrongdoing of Ms. Malek.

444.    Upon information and belief, it is alleged that Dir. Burns did not objectively investigate the wrongdoing of Ms. Moll-Cain.

445.    The Accusation Defendants breached the express covenants of the Code.

446.    The Accusation Defendants breached the implied covenants with Darren.

447.    UNLV is liable for any contractual breaches made as a result of its agents, working within the scope of employment, or its students.

FIRST AMENDED COMPLAINT
48

448.     The Accusation Defendants are personally liable for any contractual breaches made beyond their scope as UNLV agents or as students.

449.     Darren was harmed and suffered damages as a result of these contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual separation and constructive expulsion from UNLV.

## J.   SEVENTH CLAIM FOR RELIEF

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – CONTRACTUAL BREACH - AGAINST DEFENDANTS UNLV; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN))**

450.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

451.     There is an implied covenant of good faith and fair dealing between UNLV, UNLV's agents, and its students.

452.     Darren and UNLV entered into a valid and existing contract when Darren became a student at UNLV.

453.     Darren and UNLV entered into a valid and existing contract when Darren became signed a graduate assistant contract with UNLV.

454.     Darren worked for UNLV, as a graduate assistant, and paid tuition dues, as well as other fees to UNLV.

455.     These contracts have an implied covenant of good faith and fair dealing.

456.     There is an implied covenant of good faith and fair dealing that the Director of Student Conduct at UNLV will be upfront and honest in his dealings with its students.

457.     There is an implied covenant of good faith and fair dealing between the Director of Student Conduct at UNLV and its students, upon saying that he will do so, to thoroughly and objectively investigate any wrongdoing by other students.

458.     Upon information and belief, it is alleged that Dir. Burns did not objectively investigate the wrongdoing of Ms. Malek.

459.     There is an implied covenant of good faith and fair dealing that the President of the University will investigate and discipline staff and faculty who have breached their duties.

460.     Upon information and belief, it is alleged that President Smatresk did not objectively investigate the wrongdoing of faculty with regards to the repetition of the false allegations.

461.     There is an implied covenant of good faith and fair dealing that the President of the University will keep his word when he says that he will objectively investigate and discipline faculty and staff who have breached their duties.

462.     President Snyder emailed Darren that he would investigate and discipline any faculty wrongdoing with regards to the repetition of the false allegations against Darren.

463.     Upon information and belief, it is alleged that President Snyder did not objectively investigate the wrongdoing of faculty with regards to the repetition of the false allegations against Darren.

464.     Upon information and belief, it is alleged that President Snyder did not discipline faculty with regards to the repetition of the Accusation.

465.     There is an implied covenant of good faith and fair dealing that the Dean of the Hotel College will keep his word when he says that he will objectively investigate and discipline faculty and staff who have breached their duties.

FIRST AMENDED COMPLAINT

466.     Dean Shoemaker told Darren that he would objectively investigate the wrongdoing of faculty with regards to the repetition of the false allegations against Darren.

467.     Upon information and belief, it is alleged that Dean Shoemaker did not discipline faculty with regards to the repetition of the false allegations against Darren.

468.     There is an implied covenant of good faith and fair dealing that UNLV faculty, staff, and administration will protect the integrity and reputation of its students from false accusations.

469.     Upon information and belief, it is alleged that Prof. Montgomery intentionally imputed Darren's integrity and reputation by creating, and/or repeating, the false accusation that Darren was planning to cheat on the exam.

470.     Upon information and belief, it is alleged that Prof. Love intentionally imputed Darren's integrity and reputation by creating, and/or repeating, the false accusation that Darren was planning to cheat on the exam.

471.     Upon information and belief, it is alleged that Prof. Tanford intentionally imputed Darren's integrity and reputation by creating, and/or repeating, the false accusation that Darren was planning to cheat on the exam.

472.     There is an implied covenant of good faith and fair dealing that UNLV students will protect the integrity and reputation of their fellow students from false accusations.

473.     Upon information and belief, it is alleged that Ms. Malek intentionally imputed Darren's integrity and reputation by creating, and/or repeating, the false accusation that Darren was planning to cheat on the exam.

474.     Upon information and belief, it is alleged that Ms. Moll-Cain intentionally imputed Darren's integrity and reputation by creating, and/or repeating, the false accusation that Darren was planning to cheat on the exam.

475.   UNLV is liable for any contractual breaches made as a result of its agents working within the scope of employment or its students.

476.   UNLV is liable for any contractual breaches made as a result of its students.

477.   The Defendants are personally liable for any contractual breaches made beyond their scope as UNLV agents or as students.

478.   Darren was harmed and suffered damages as a result of these contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual separation and constructive expulsion from UNLV.

## K.  EIGHTH CLAIM FOR RELIEF

**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – TORTIOUS BREACH - AGAINST DEFENDANTS UNLV; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; and PHILLIP BURNS)**

479.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

480.   There existed a special element of reliance between Darren and President Smatresk, where the latter was in a superior or entrusted position as the President of the University, where Darren was a student and graduate assistant therein.

481.   Upon information and belief, it is alleged that President Smatresk performed his duties in a manner that was unfaithful to the contract by not objectively investigating and disciplining the faculty, staff, and students who initiated and spread the false allegations about Darren.

482.   Upon information and belief, it is alleged that President Smatresk purposefully did not objectively investigate and discipline the faculty, staff, and students who initiated and spread the false allegations about Darren.

483.    President Smatresk's breach of this duty was a proximate cause to Darren's reputational injury, as Darren was not publicly vindicated.

484.    President Smatresk's breach of this duty was a substantial factor in Darren's reputational injury, as the faculty, staff, and students were not, upon information and belief, disciplined for their parts in the false accusations made against Darren.

485.    There existed a special element of reliance between Darren and President Snyder, where the latter was in a superior or entrusted position as the President of the University, and Dean of the Hotel College, where Darren was a student and graduate assistant therein.

486.    Upon information and belief, it is alleged that President Snyder purposefully did not objectively investigate and discipline the faculty, staff, and students who initiated and spread the false allegations about Darren.

487.    President Snyder's breach of this duty was a substantial factor in Darren's reputational injury, as Darren was not publicly vindicated.

488.    But for President Snyder's breach of this duty, the faculty, staff, and students were not disciplined for their parts in the false accusations made against Darren, Darren's reputation would have been, at least partially, repaired.

489.    There existed a special element of reliance between Darren and Dean Shoemaker, where the latter was in a superior or entrusted position as the Dean of the Hotel College, where Darren was a student and graduate assistant therein.

490.    Upon information and belief, it is alleged that Dean Shoemaker purposefully did not objectively investigate and discipline the faculty, staff, and students who initiated and spread the false allegations about Darren.

491.    Dean Shoemaker's breach of this duty was a substantial factor in Darren's reputational injury, as Darren was not publicly vindicated.

FIRST AMENDED COMPLAINT

492.     But for Dean Shoemaker's breach of this duty, the faculty, staff, and students would have been disciplined for their parts in the false accusations made against Darren, Darren's reputation would have been, at least partially, repaired.

493.     There existed a special element of reliance between Darren and Prof. Montgomery, where the latter was in a superior or entrusted position as a UNLV tenured associate professor, where Darren was a student and graduate assistant therein.

494.     Upon information and belief, it is alleged that Prof. Montgomery purposefully initiated, and/or spread the false allegations about Darren.

495.     Prof. Montgomery's breach of this duty was a substantial factor in Darren's reputational injury.

496.     Upon information and belief, it is alleged that Prof. Montgomery intentionally breached this duty to Darren.

497.     There existed a special element of reliance between Darren and Prof. Love, where the latter was in a superior or entrusted position as a UNLV tenured associate professor, where Darren was a student and graduate assistant therein.

498.     Upon information and belief, it is alleged that Prof. Love purposefully initiated, and/or spread the false allegations about Darren.

499.     Prof. Love's breach of this duty was a substantial factor in Darren's reputational injury.

500.     Upon information and belief, it is alleged that Prof. Love intentionally breached this duty to Darren.

501.     There existed a special element of reliance between Darren and Prof. Tanford, where the latter was in a superior or entrusted position as a UNLV assistant professor, where Darren was a student and graduate assistant therein.

502.    Upon information and belief, it is alleged that Prof. Tanford purposefully initiated, and/or spread the false allegations about Darren.

503.    Prof. Tanford's breach of this duty was a substantial factor in Darren's reputational injury.

504.    Upon information and belief, it is alleged that Prof. Tanford intentionally breached this duty to Darren.

505.    There existed a special element of reliance between Darren and Dir. Burns where Dir. Burns was in a superior or entrusted position as Director of the Office of Student Conduct of UNLV, and Darren was a student and graduate assistant therein.

506.    Upon information and belief, it is alleged that Dir. Burns purposefully did not objectively investigate and discipline the student who initiated and/or spread the false allegations about Darren.

507.    Dir. Burns' breach of this duty was a substantial factor in Darren's reputational injury, as Darren was not publicly vindicated.

508.    Dir. Burns' breach of this duty was a proximate cause to Darren's reputational injury, as the student was not, upon information and belief, disciplined for her parts in the false accusations made against Darren.

509.    UNLV is liable for any contractual breaches made as a result of its agents working within the scope of employment or its students.

510.    The Defendants are personally liable for any contractual breaches made beyond their scope as UNLV agents or as students.

511.    Darren was harmed and suffered damages as a result of these tortious contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual separation and constructive expulsion from UNLV.

## L.      NINTH CLAIM FOR RELIEF

### (CONSTRUCTIVE FRAUD– AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

512.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

513.     A university has a fiduciary relationship with its graduate assistants.

514.     President Snyder, as Dean of the Hotel School, instructed Darren to speak with Dir. Burns, the Director of the Office of Student Conduct, and tell him the events that occurred.

515.     Darren and Dir. Burns had a confidential relationship upon President's Snyder's request to speak with Dir. Burns.

516.     During this initial meeting Darren asked Dir. Burns if he, Dir. Burns, was friendly with Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

517.     To which Dir. Burns responded he was not.

518.     Darren asked Dir. Burns if he, Dir. Burns, knew Defendants Prof.s Love, Montgomery, and Tanford, or Ms. Malek or Ms. Moll-Cain.

519.     To which Dir. Burns replied that after being at UNLV for many years he probably had come across one or two of them over the years, but did not know any of them by name.

520.     This information given by Dir. Burns was material in Darren's choice to share all the details of the Accusation with Dir. Burns.

521.     Darren, based on this response, shared all material facts that Darren had about the Accusation.

522.     Dir. Burns had, in fact, over the course of multiple semesters, taught/ gave classes for Prof. Montgomery prior to Darren's original May 2013 meeting with Dir. Burns.

523.   Dir. Burns knew Prof. Montgomery, and upon information and belief, socialized with her and other Defendants in non-university settings, prior to Darren's 2013 meeting with Dir. Burns.

524.   Defendants breached his duty to Darren by misrepresenting or concealing this material fact.

525.   Darren relied on this material fact by proceeding to give Dir. Burns extremely sensitive information about the accusations that could be used against Darren in the future.

526.   Darren withheld filing suit against Defendants based on Dir. Burns' concealing his friendship with Defendants.

527.   Darren trusted Dir. Burns' assertions of objectivity and impartiality.

528.   Darren trusted that President Smatresk would satisfy his legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students.

529.   Upon information and belief, it is alleged that President Smatresk breached these duties by not properly investigating and disciplining the faculty, staff, and students involved in the false accusations made against Darren.

530.   Darren trusted that President Snyder would satisfy his legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students.

531.   Upon information and belief, it is alleged that President Snyder breached these duties by not properly investigating and disciplining the faculty, staff, and students involved in the false accusations made against Darren.

FIRST AMENDED COMPLAINT

532.    Darren trusted that Dean Shoemaker would satisfy his legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students.

533.    Upon information and belief, it is alleged that President Shoemaker breached these duties by not properly investigating and disciplining the faculty, staff, and students involved in the false accusations made against Darren.

534.    Darren trusted that Prof. Montgomery would satisfy her legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students, and the express UNLV duties of not "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person;" or "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

535.    Upon information and belief, it is alleged that Prof. Montgomery breached these duties by being directly involved in the false accusations made against Darren.

536.    Darren trusted that Prof. Love would satisfy her legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students, and the express UNLV duties of not "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person;" or "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

537.    Upon information and belief, it is alleged that Prof. Love breached these duties by being directly involved in the false accusations made against Darren.

538.    Darren trusted that Prof. Tanford would satisfy her legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students, and the express UNLV duties of not "[k]nowingly filing a false, inaccurate, or

misleading statement or accusation against another person;" or "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

539.    Upon information and belief, it is alleged that Prof. Tanford breached these duties by being directly involved in the false accusations made against Darren.

540.    Darren trusted that Ms. Malek would satisfy her legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students, and the express UNLV duties of not "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person;" or "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

541.    Upon information and belief, it is alleged that Ms. Malek breached these duties by being directly involved in the false accusations made against Darren.

542.    Darren trusted that Ms. Moll-Cain would satisfy her legal and equitable duties to protect the reputation of UNLV students from false accusations made by UNLV faculty, staff, and students, and the express UNLV duties of not "[k]nowingly filing a false, inaccurate, or misleading statement or accusation against another person;" or "[k]nowingly providing false, inaccurate, or misleading information to a conduct officer or body."

543.    Upon information and belief, it is alleged that Ms. Moll-Cain breached these duties by being directly involved in the false accusations made against Darren.

544.    Darren was harmed and suffered damages as a result of these constructive frauds, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

///

///

FIRST AMENDED COMPLAINT

59

## M.    TENTH CLAIM FOR RELIEF

### (DECEIT OR MISREPRESENTATION – AGAINST DEFENDANTS UNLV; DONALD SNYDER; PHILLIP BURNS; and STOWE SHOEMAKER)

545.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

546.    President Snyder made a representation to Darren that Dir. Burns would be an impartial investigator.

547.    Upon information and belief, it is alleged that President Snyder knew that Dir. Burns would not be impartial and objective in his investigation.

548.    Upon information and belief, it is alleged that President Snyder had knowledge or belief that the representation was false or without a sufficient basis for making the representation when he made it.

549.    As a result of President Snyder's suggestion the Dir. Burns would be impartial, and Dir. Burns' assertion that he would be impartial, Darren emailed Dir. Burns a multi-page, approximately 17-page, detailed account of names, dates, e-mails, times, and events regarding the accusation.

550.    Upon information and belief, it is alleged that the purpose of the request for Darren's detailed account was not to assist in the investigation.

551.    Upon information and belief, it is alleged that the purpose of the request for Darren's detailed account was to have detailed knowledge of any legal claims that Darren may have against UNLV, its agents, and its students.

552.    Darren, believing in President Snyder's representations, justifiably relied on his assertions in handing over all of his evidence regarding the false representations to UNLV.

553.    Darren, believing in Dir. Burns' representations, justifiably relied on his assertions in handing over all of his evidence regarding the false representations to UNLV.

554.     By the time this Amended Complaint is filed, UNLV have had detailed knowledge of Darren's allegations against UNLV and its faculty, students, staff and administration for over two years and ten months.

555.    Dean Shoemaker made a representation to Darren that he would investigate and discipline those involved in the repetition the false accusations against Darren.

556.    Upon information and belief, it is alleged that Dean Shoemaker knew that he was not going to investigate or discipline those involved in the repetition of the false accusations against Darren.

557.    Upon information and belief, it is alleged that Dean Shoemaker had knowledge or belief that the representation was false or without a sufficient basis for making the representation when he made it.

558.    Upon information and belief, it is alleged that Dean Shoemaker made the false representations to delay, and/or prevent, Darren from filing suit against Defendants in a court of law or equity.

559.    Darren, believing Dean Shoemaker's representations, justifiably relied on his assertions in postponing filing suit against UNLV and other Defendants.

560.    Darren was harmed and suffered damages as a result of these deceits and misrepresentations, including, but not limited to, economic, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

///

///

FIRST AMENDED COMPLAINT

## N.    ELEVENTH CLAIM FOR RELIEF

### (DETRIMENTAL RELIANCE – AGAINST DEFENDANTS UNLV; DONALD SNYDER; STOWE SHOEMAKER; and PHILLIP BURNS)

561.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

562.    President Snyder, Dean Shoemaker, and Dir. Burns all promised Darren that those involved in the Accusation against Darren would be investigated and, if any wrong-doing was found, disciplined.

563.    President Snyder, Dean Shoemaker, and Dir. Burns promised Darren that there would be an objective internal investigation as to the events leading up to the Accusation made about Darren.

564.    President Snyder, Dean Shoemaker, and Dir. Burns knew, or should have known, when making that promise, that Darren would rely on the promises to provide Defendants with a significant amount of information regarding Darren's case, to Darren's detriment.

565.    Darren handed over a 17-page written statement of his knowledge regarding the Accusation to UNLV.

566.    Defendants knew, or should have known, when making the promises, that Darren would rely on the promise not to immediately file suit against Defendants, to Darren's detriment.

567.    Upon information and belief, it is alleged that Defendants intended that their statements cause Darren to hand over any evidence that he had against UNLV, its faculty, and students.

568.    Upon information and belief, it is alleged that Defendants intended that their statements cause Darren to delay any legal suit against UNLV, its faculty, and students.

569.    It is reasonable for a student to rely on such promises made by university superiors.

570.    Darren's reliance on such promises made by those in a superior position within UNLV was reasonable.

571.    The delay in filing suit, based upon reliance on Defendants' assertions, provided UNLV with almost all of Darren's evidence, in advance of litigation.

572.    The delay in filing suit, based upon reliance on Defendants' assertions, provided UNLV with plenty of time to forewarn and prepare all the Defendants as to Darren's causes of action and allegations, in advance of litigation.

573.    The delay in filing suit, based upon reliance on Defendants' assertions, has made the availability of Defendants and witnesses more difficult due to their moving from the State of Nevada.

574.    Darren was ignorant of the fact that UNLV and its agents had, upon information and belief, no intention of objectively investigating, nor disciplining, those involved in the false accusations against Darren.

575.    Darren was harmed and suffered damages as a result of these deceits and misrepresentations, including, but not limited to, economic, emotional, psychological, and reputational harm, and his actual separation and constructive expulsion from UNLV.

### O.    TWELFTH CLAIM FOR RELIEF

**(FRAUD IN THE INDUCEMENT – AGAINST DEFENDANTS UNLV; NEAL SMATRESK; DONALD SNYDER; STOWE SHOEMAKER; and PHILLIP BURNS)**

576.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

577.     Upon information and belief, it is alleged that false representations were intentionally made by Defendants that Dir. Burns would be impartial in his investigation of accusations made against Darren.

578.     Upon information and belief, it is alleged that false representations were intentionally made by Defendants that those faculty who were found to have wrongly started and spread the accusations against Darren would be disciplined.

579.     Upon information and belief, it is alleged that Defendants who made the representations had at least an insufficient basis for making the representations.

580.     Upon information and belief, it is alleged that Defendants intended that their statements cause Darren to hand over any evidence that he had against UNLV, its faculty, and students.

581.     Upon information and belief, it is alleged that Defendants who made the representations intended to induce Darren to hand over information that Darren had about the accusations.

582.     Upon information and belief, it is alleged that Defendants who made the representations had the intention to induce Darren to delay filing suit against Defendants.

583.     Darren justifiably relied on the misrepresentations by handing over a multi-page, approximately 17-page, detailed account of names, dates, e-mails, times, and events regarding the accusation.

584.     Darren justifiably relied on the misrepresentations by delaying in filing suit against Defendants.

585.     Darren was harmed and suffered damages as a result of this fraud in the inducement, including, but not limited to, economic, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## P.  THIRTEENTH CLAIM FOR RELIEF

### (FRAUD/ INTENTIONAL MISREPRESENTATION – AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

586.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

587.    President Snyder emailed Darren that he would investigate and come to "a determination of whether a violation of UNLV's policies and procedures occurred, and if so, appropriate disciplinary proceedings."

588.    Upon information and belief, it is alleged that President Snyder did come to the conclusion that there was at least one violation by faculty of UNLV's policies and procedures pertaining to the Accusation.

589.    Upon information and belief, it is alleged that President Snyder did not apply the "appropriate disciplinary proceedings" in response to the violation(s).

590.    Darren revealed evidence that Darren had about the Accusation to UNLV.

591.    Darren detrimentally relied on President Snyder's words in revealing evidence that Darren had about the Accusation, and postponing legal action as a result.

592.    Darren met with Dean Shoemaker regarding the lack of disciplining of the faculty and staff involved in the Accusation.

593.    Dean Shoemaker told Darren to "give him some time to discipline those involved."

594.    Upon information and belief, it is alleged that Dean Shoemaker had no intention to discipline the faculty members involved.

595.    Dean Shoemaker then awarded Prof. Montgomery the position of Director of Student Success.

FIRST AMENDED COMPLAINT

596.    Prof. Montgomery was thereafter promoted to Chair of the UNLV Faculty Senate.

597.    Prof. Tanford was thereafter awarded a tenure position at UNLV.

598.    Dean Shoemaker thereafter awarded Prof. Tanford the position of Head of the Master's program at the Hotel College.

599.    Based on Dir. Burns' assertion of lack of personal knowledge of Darren's accusers, and his and assertion of objectivity, Darren readily told Dir. Burns, openly and freely, all the information that he knew regarding the Accusation against him.

600.    Based on these assertions Darren trusted that Dir. Burns would be objective in his investigation.

601.    Based on these assertions Darren even typed out a multi-page, approximately 17-page, detailed recount of the names, dates, times, and emails of those involved, which he emailed to Dir. Burns.

602.    Upon information and belief, it is alleged that Dir. Burns would later give UNLV's Office of General Counsel all of the evidence Darren handed over to Dir. Burns.

603.    Had Darren known that Dir. Burns knew any of the parties involved, Darren would not have given Dir. Burns the information that he did about the Accusation against him.

604.    Dir. Burns also told Darren that he would start the investigation immediately.

605.    Upon information and belief, it is alleged that Dir. Burns did not complete the investigation until over three months later.

606.    Dir. Burns told Darren that Darren was at least partly to blame for the Accusation made against him.

607.    Darren was told several months later that Dir. Burns taught classes for Prof. Montgomery for semesters prior to his initial meeting with Darren.

608.     Dir. Burns had taught classes for Prof. Montgomery for semesters prior to his initial meeting with Darren.

609.     Darren later was told that Dir. Burns did not question all the witnesses involved whom Darren referred in the 17-pages he handed over to Dir. Burns.

610.     Upon information and belief, it is alleged that Dir. Burns was not objective in his investigation.

611.     Telling a student that he plans on being objective, without such intention, is a false representation of material fact.

612.     Upon information and belief, it is alleged that UNLV, through its agent(s), made false representations of material fact.

613.     Upon information and belief, it is alleged that UNLV, through its agent(s), knew the representations to be false.

614.     Upon information and belief, it is alleged that UNLV, through its agent(s), intended for Darren to rely on these misrepresentations.

615.     Darren detrimentally relied on these misrepresentations by revealing to UNLV, through its agent(s), all the evidence that Darren had regarding the false accusations.

616.     The misrepresentations proximately caused damages to Darren.

617.     Upon information and belief, it is alleged that Darren and UNLV made a contract when UNLV agreed to objectively investigate and discipline those involved in the false accusation made against Darren, in exchange for Darren's agreement to reveal any evidence that Darren had against those parties, and Darren's delay in bringing his case to court.

618.     Darren was harmed and suffered damages as a result of these frauds /misrepresentations, including, but not limited to, economic, emotional, psychological, and reputational harm, and his actual separation and constructive expulsion from UNLV.

FIRST AMENDED COMPLAINT
67

## Q.    FOURTEENTH CLAIM FOR RELIEF

**(NEVADA FAIR EMPLOYMENT PRACTICES ACT - SEXUAL HARRASSMENT – AGAINST DEFENDANTS UNLV; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

619.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

620.    Darren only learned that he was considered an employee of UNLV since the filing of this suit.

621.    Prior to filing this suit Darren believed that he, Ms. Malek, and Ms. Moll-Cain were simply students at UNLV.

622.    Defendant Ms. Malek made an unwanted sexual advance towards Darren during his time at the UNLV.

623.    Darren thought this to simply be the unwanted sexual advances of another student, and not within the realm of sexual harassment.

624.    Darren thought nothing of the unwanted advance, and never thought that there may be any repercussions to his thwarting of the sexual advance.

625.    Upon information and belief, it is alleged that Ms. Malek purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

626.    Darren only learned of any potential retaliatory and adverse action being taken against him when he was falsely accused of planning to cheat on the exams.

627.    Upon information and belief, it is alleged that Ms. Moll-Cain purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

628.    Upon information and belief, it is alleged that Prof. Montgomery purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

629.    Upon information and belief, it is alleged that Prof. Love purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

630.    Upon information and belief, it is alleged that Prof. Tanford purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

631.    Upon information and belief, it is alleged that Dir. Burns purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

632.    Prior to filing suit Darren was never informed by UNLV that he had any internal recourse as an employee of UNLV.

633.    Darren had previously met with President Snyder.

634.    President Snyder never told Darren that Darren was an employee.

635.    President Snyder never told Darren that Darren had any employee rights or remedies within UNLV.

636.    Darren had previously met with Dean Shoemaker.

637.    Dean Shoemaker never told Darren that Darren was an employee.

638.    Dean Shoemaker never told Darren that Darren had any employee rights or remedies within UNLV.

639.    Darren had previously met with Dir. Burns.

640.    Dir. Burns never told Darren that Darren was an employee.

641.    Dir. Burns never told Darren that Darren had any employee rights or remedies within UNLV.

642.    To date, Darren has still never been told that he is an employee of UNLV.

643.    Upon information and belief, it is alleged that Defendants purposefully did not inform Darren that he was a UNLV employee subject to employee rights and remedies because

they did not want Darren to contact UNLV human resources and file a complaint against Defendants.

644.     Upon information and belief, it is alleged, in the alternative, that Defendants purposefully did not inform Darren that he was a UNLV employee subject to employee rights and remedies because they did not believe Darren, at the time, to be an employee at the time.

645.     Even UNLV counsel referred to Ms. Malek and Ms. Moll-Cain as "quasi-employees" after Darren started talking with UNLV about filing suit.

646.     Darren did not even know that he was an employee with any rights to complain about the unwanted sexual advances of other students/ employees.

647.     Darren was harmed and suffered damages as a result of this sexual discrimination, including, but not limited to, economic, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## R.     FIFTEENTH CLAIM FOR RELIEF

## (TITLE IX- SEXUAL HARRASSMENT – AGAINST DEFENDANT UNLV)

648.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

649.     Defendant Ms. Malek made an unwanted sexual advance towards Darren during his time at UNLV.

650.     Only upon the filing of the complaint against UNLV was Darren informed that Ms. Malek was considered a "quasi-employee" of UNLV.

651.     Prior to this information Darren believed Ms. Malek to simply be a Ph.D. student without any of the protections of being a UNLV staff member.

652.     When Darren told Dir. Burns of his belief as to one of the potential causes of the false accusations made by Defendants, he thought nothing of Ms. Malek's unwanted sexual advances, as he thought her simply an individual, not an agent of UNLV.

653.     Upon information and belief, it is alleged Defendants purposefully took retaliatory and adverse action against Darren on the basis of Darren's sex and/or gender.

654.     Darren informed Dir. Burns about the accusations made against Darren.

655.     At no point did Dir. Burns inform Darren that he, Dir. Burns, was the Title IX Deputy Coordinator for UNLV.

656.     At no point did Dir. Burns inform Darren that Ms. Malek or Ms. Moll-Cain were employees, of any kind, of the university.

657.     At no point did Dir. Burns inform Darren that he had any potential Title IX claims against any of the Defendants.

658.     Only upon information received by Defendants' counsel did Darren learn that Ms. Malek and Ms. Moll-Cain were agents of UNLV.

659.     As Darren was also a graduate student at the time of the events in question, that would mean that Darren too was an employee of UNLV.

660.     At no time did anyone at UNLV suggest to Darren that he speak with human relations department of UNLV.

661.     Upon information and belief, it is alleged that Prof. Montgomery, Prof. Love, Prof. Tanford, used Darren's sex as a basis on which to initiate and/or spread the falsity that Darren was planning to cheat on his exams.

662.     Upon information and belief, it is alleged that Prof. Montgomery, Prof. Love, Prof. Tanford, and Dir. Love have, prior to and since the facts herein, discriminated against

FIRST AMENDED COMPLAINT

71

heterosexual men as a matter of policy in their dealings with students, faculty, faculty hiring, and other staff.

663.    Upon information and belief, it is alleged that this sex-based discrimination is intentional in nature.

664.    In the alternative, it is alleged that this sex-based discrimination is treated with deliberate indifference.

665.    Upon information and belief, it is alleged that Defendants have engaged in numerous acts of sex-based discrimination it the past in their roles as professors, staff, and students.

666.    Upon information and belief, it is alleged that UNLV knew about these acts of sex-based discrimination.

667.    Upon information and belief, it is alleged that UNLV has not ever disciplined the Defendant professors, staff, and students for sex-based discrimination.

668.    Darren has learned, since filing this lawsuit, upon information and belief, that there is an unwritten policy of sex-based discrimination by certain UNLV faculty and staff.

669.    Upon information and belief, it is alleged that Defendant professors, staff, and students engaged in federally illegal use of narcotics in each other's company.

670.    Upon information and belief, it is alleged that UNLV was aware of the Defendant professors, staff, and students' use of federally illegal narcotics.

671.    Upon information and belief, it is alleged that UNLV chose not to discipline any of the Defendant professors, staff, or students for their federally illegal use of narcotics.

672.    Upon information and belief, it is alleged that UNLV chose not to discipline any of the Defendant professors, staff, or students on the basis of their sex or gender identification.

FIRST AMENDED COMPLAINT

673.    The Consensual Relations Policy of UNLV expressly states that UNLV "prohibits romantic or sexual relationships between members of the university community when one of the individuals involved has direct professional influence or direct authority over the other."

674.    Upon information and belief, it is alleged that Prof. Montgomery had sexual relations with one of her students over whom she had direct professional influence over and/or direct authority over, while she was a tenured professor at UNLV.

675.    Upon information and belief, it is alleged that UNLV was aware of the sexual relations between Prof. Montgomery and at least one UNLV student.

676.    Upon information and belief, it is alleged that UNLV never disciplined Prof. Montgomery due to this Code violation.

677.    Upon information and belief, it is alleged that UNLV chose not to discipline Prof. Montgomery due to her sex.

678.    Darren's education at UNLV, was subjected to adverse action as a result of the sex-based discrimination.

679.    Darren currently experiences extreme discomfort and anxiety whenever he has to return onto UNLV campus, as a direct result of the false accusations

680.    Darren has been constructively expelled from the university, as he would need to interact with UNLV faculty and staff who have been involved in the false accusations, and would have to be on UNLV campus often in order to finish his Ph.D.

681.    Darren has a property right in his Ph.D. from UNLV.

682.    Upon information and belief, it is alleged that if he were to obtain his Ph.D. from UNLV, he would be one of fewer than five Ph.D., J.D., M.B.A.s in the state of Nevada, and perhaps the United States of America.

683.    Darren is seeking monetary damages due to the actual and foreseeable damages as a result of this sex-based discrimination.

684.    Darren is also seeking punitive damages for this sex-based discrimination, as upon information and belief, Darren alleges that this discrimination was intentionally done by the individuals, who are agents of the university.

685.    In the alternative, Darren is seeking solely injunctive relief to force the faculty, staff, administration, and students of UNLV to refrain from any further form of sex-based discrimination.

## S.    SIXTEENTH CLAIM FOR RELIEF

**(NEGLIGENCE – AGAINST DEFENDANTS UNLV; NEAL SMETRASK; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

686.    Darren was a student and graduate assistant at UNLV.

687.    Darren was a part of the "University community" as defined by the Code.

688.    UNLV, its faculty, administration, and staff, had a common law duty to protect those in the "University community" from wrongful accusations made by faculty, administration, staff, and other students.

689.    UNLV, its faculty, administration, and staff, had a contractual duty according to the Code to protect Darren from "wrongful accusation[s]" made within the University.

690.    UNLV students had a common law duty to protect those in the "University community" from wrongful accusations made by faculty, administration, staff, and other students.

691.    UNLV students have a contractual duty, under the Code, not to make "wrongful accusation[s]" about other members of the University community.

FIRST AMENDED COMPLAINT

74

692.    Upon information and belief, it is alleged that Dean Shoemaker told other people that Darren was planning to cheat on the exam.

693.    Upon information and belief, it is alleged, in the alternative, that Dean Shoemaker told other people that he had heard that Darren was planning to cheat on the exam.

694.    Upon information and belief, it is alleged that Prof. Montgomery told other people that Darren was planning to cheat on the exam.

695.    Upon information and belief, it is alleged, in the alternative, that Prof. Montgomery told other people that he had heard that Darren was planning to cheat on the exam.

696.    Upon information and belief, it is alleged that Prof. Love told other people that Darren was planning to cheat on the exam.

697.    Upon information and belief, it is alleged, in the alternative, that Prof. Love told other people that he had heard that Darren was planning to cheat on the exam.

698.    Upon information and belief, it is alleged that Prof. Tanford told other people that Darren was planning to cheat on the exam.

699.    Upon information and belief, it is alleged, in the alternative, that Prof. Tanford told other people that he had heard that Darren was planning to cheat on the exam.

700.    Upon information and belief, it is alleged that Ms. Malek told other people that Darren was planning to cheat on the exam.

701.    Upon information and belief, it is alleged, in the alternative, that Ms. Malek told other people that he had heard that Darren was planning to cheat on the exam.

702.    Upon information and belief, it is alleged that Ms. Moll-Cain told other people that Darren was planning to cheat on the exam.

703.    Upon information and belief, it is alleged, in the alternative, that Ms. Moll-Cain told other people that he had heard that Darren was planning to cheat on the exam.

FIRST AMENDED COMPLAINT

704.     Upon information and belief, it is alleged that unidentified UNLV faculty, staff, and students told other people that Darren was planning to cheat on the exam.

705.     Upon information and belief, it is alleged, in the alternative, that unidentified UNLV faculty, staff, and students told other people that he had heard that Darren was planning to cheat on the exam.

706.     President Snyder emailed Darren that "the accusation that [Darren] had an intention to cheat on the qualifying exam was a student based rumor and clearly not the thinking or belief of the College or the University."

707.     By repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Dean Shoemaker breached his duty to Darren.

708.     By creating and/or repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Prof. Montgomery breached her duty to Darren.

709.     By creating and/or repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Prof. Love breached his duty to Darren.

710.     By creating and/or repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Prof. Tanford breached her duty to Darren.

711.     By creating and/or repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Ms. Malek breached her duty to Darren.

712.     By repeating a false accusation that was "clearly not the thinking or belief of the College or the University" to a third party, Ms. Moll-Cain breached her duty to Darren.

FIRST AMENDED COMPLAINT

713.    By not controlling its agents from creating and/or spreading the false accusation against Darren, UNLV was negligent in its control over its agents.

714.    When the principal is known to the Plaintiff, the principal is liable for the negligence of its agents to the degree that the agents were working within the scope of employment.

715.    If an agent acts beyond the scope of employment, then the agent is personally liable for any negligence caused to the third person.

716.    But for Defendants' creation and repetition of the false statement among the Defendants and unidentified third parties, Darren's reputation would not have been injured.

717.    Defendants' conscious or unconscious decision to create and disseminate the false accusations was the proximate cause of the injury to Darren's reputation.

718.    The Code expressly states that members of the University community are not to make "wrongful accusation[s]" regarding other members of the University.

719.    The purpose of this rule in the Code is to protect those in the UNLV community from accusations exactly like those alleged in this case.

720.    Darren is a member of the class for which this Code was designed.

721.    Breaches of this Code due to negligence constitute, under Nevada law, negligence per se.

722.     The Code states that "[t]he President of the University has the responsibility for student conduct and discipline."

723.    President Smatresk was President of UNLV at the time that the false accusations were made by UNLV students.

724.    According to the Code, President Smatresk was responsible for student conduct.

FIRST AMENDED COMPLAINT

725.    A breach of the Code by a UNLV student is the responsibility of the UNLV President.

726.    President Smatresk breached his duty by not preventing UNLV students from creating and/or disseminating the false accusations against Darren.

727.    Had it not been for President Smatresk's lack of control over the UNLV students' creation and/or repetition of the false statement among the Defendants and unidentified third parties, Darren's reputation would not have been injured.

728.    President Smatresk's failure to control the conduct of UNLV students' creation and/or dissemination of the false accusation, the proximate cause of the injury to Darren's reputation.

729.    President Snyder was President of UNLV at the time that possible disciplinary action could have been taken against students who had created and/or disseminated the false accusations against Darren.

730.    According to the Code, President Snyder was responsible for student discipline.

731.    Upon information and belief, it is alleged that no student was publicly disciplined for his/ her part in the creation/ dissemination of the false accusations against Darren.

732.    Upon information and belief, it is alleged that no student was privately disciplined for his/ her part in the creation/ dissemination of the false accusations against Darren.

733.    President Snyder breached his duty by not disciplining the UNLV students involved in the creation and/or dissemination of the false statements against Darren.

734.    A public disciplining of students by President Snyder would have acted as a public absolution of Darren with regards to the false accusations against him.

735.    President Snyder's failure to discipline these students, furthered the injury against Darren, as he was not publicly absolved.

FIRST AMENDED COMPLAINT
78

736.     According to the Code, students have the "right to fair and equitable process in all matters concerning the *Code*."

737.     Dir. Burns was charged with investigating any UNLV students who were involved in the creation and/or dissemination of the false accusations against Darren.

738.     Upon information and belief, it is alleged that Dir. Burns was the Title IX Deputy Coordinator of UNLV.

739.     Upon information and belief, it is alleged that Dir. Burns currently is the Title IX Deputy Coordinator of UNLV.

740.     Dir. Burns met with Darren to discuss his accusations against the professor and student Defendants.

741.     Darren specifically asked Dir. Burns whether he knew any of the professor or student Defendants.

742.     Dir. Burns told Darren that he may have known some of them by name, but did not know specifically who they were.

743.     Dir. Burns had a duty to be honest with Darren in their dealings.

744.     Dir. Burns had a duty to be objective in his investigation regarding the false accusations made against Darren.

745.     Upon information and belief, it is alleged that Dir. Burns was very familiar with some of the Defendants at the time of the discussion.

746.     Upon information and belief, it is alleged that Dir. Burns taught classes on several occasions for Prof. Montgomery.

747.     Upon information and belief, it is alleged that Dir. Burns had been social with some of the professor and/or student Defendants inside the University.

FIRST AMENDED COMPLAINT

748.     Upon information and belief, it is alleged that Dir. Burns had been social with some of the professor and/or student Defendants outside the University.

749.     Upon information and belief, it is alleged that Dir. Burns did not objectively investigate the students involved in the creation and/or dissemination of the false accusations against Darren.

750.     Upon information and belief, it is alleged that Dir. Burns did not speak with all the witnesses that Darren had named to the wrongdoing.

751.     Dir. Burns breached his duty of honesty by not disclosing to Darren that he had taught for Prof. Montgomery prior.

752.     Dir. Burns breached his duty of honesty by not disclosing that he had been social with professor and/or student Defendants inside of the University.

753.     Dir. Burns breached his duty of honesty by not disclosing that he had been social with professor and/or student Defendants outside of the University.

754.     Upon information and belief, it is alleged that as a direct result of Dir. Burns' breaches, Darren provided Dir. Burns with all the evidence he had regarding the creation and/or dissemination by professor and student Defendants regarding the false accusations made against him.

755.     Upon information and belief, it is alleged that as a direct result of Dir. Burns not objectively investigating Defendants, he found that the accusations made against Darren were a "he-said, she-said" scenario, and therefore he did not suggest for the discipline of any student Defendants.

756.     The Code expressly prohibits any member of the University community engaging in "[a]ny act or conduct that obstructs or hinders in the application and enforcement of the *Code*."

757.     Upon information and belief, it is alleged that Dir. Burns' actions in not being honest with Darren were in direct violation of the Code.

758.     These violations directly resulted in the failure of those involved in the Accusation from being publicly disciplined.

759.     The failure of public discipline directly caused Darren not to be publicly vindicated of the false accusations against him.

760.     Dir. Burns told Darren that he, Darren, was largely to blame for the accusations being made against him, as he, Darren, was seen as "aggressive" by the faculty and student Defendants that he had questioned, and that Darren should look closely at his part in causing the false accusations being created and disseminated by Defendants.

761.     Darren interpreted this to mean that Dir. Burns was blaming him, Darren, for the false accusations that were made and spread against him.

762.     Upon information and belief, it is alleged that Dir. Burns made this comment to hinder Darren from pursuing any further action against UNLV or the other Defendants.

763.     This was the reason that Darren delayed filing suit against Defendants.

764.     Only did Darren learn later that Dir. Burns had not been honest with him regarding his relationship with Prof. Montgomery.

765.     Dir. Burns did not inform Darren that Darren was an employee of UNLV and afforded employee rights and remedies.

766.     Dir. Burns also did not tell Darren that Darren may have a Title IX complaint against UNLV based on the sexual discrimination that Darren had told Dir. Burns that he felt he had encountered by the professor and student Defendants as a result of his sex.

FIRST AMENDED COMPLAINT
81

767.     As a result of Defendants' negligence, Darren was harmed and suffered damages, including, but not limited to, economic, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

## T.     SEVENTEENTH CLAIM FOR RELIEF

## (NEGLIGENT HIRING, TRAINING, SUPERVISION, and RETENTION – AGAINST DEFENDANTS UNLV; NEAL SMETRASK; DONALD SNYDER; and STOWE SHOEMAKER)

768.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

769.     A university has a duty to its students to conduct a background check of any and all faculty, staff, and administration that it plans to hire and retain, to ensure that the individual is fit for the position.

770.     A university that knows, or should know, about an employee's dangerous propensities, and hires, or retains, that employee, breaches this duty.

771.     Upon information and belief, it is alleged that Prof. Montgomery's issues with alcohol and federally controlled substance(s) was known among faculty, staff, administration, and/or students of the Hotel College.

772.     Upon information and belief, it is alleged that Prof. Montgomery's issues with alcohol and federally controlled substance(s), and how it affected the performance of her duties, was known among faculty, staff, administration, and/or students of the Hotel College.

773.     Upon information and belief, it is alleged that Prof. Montgomery's abuse of her position in dealing with graduate student(s) assigned to her, was known among faculty, staff, administration, and/or students of the Hotel College.

774.    Upon information and belief, it is alleged that Prof. Montgomery's sexual intercourse with a student within the Hotel College was known among faculty, staff, administration, and/or students of the Hotel College.

775.    Upon information and belief, it is alleged that Prof. Montgomery's misappropriation of university funds to purchase alcohol for students under the age of 21, was known among faculty, staff, administration, and/or students of the Hotel College.

776.    Upon information and belief, it is alleged that it was known among faculty, staff, administration, and/or students of the Hotel College that Prof. Montgomery has discriminated against students, prior to Darren, based on their sex, gender, race, and/or country of national origin.

777.    Despite all of the above known among faculty, staff, administration, and/or students of the Hotel College, Prof. Montgomery was retained by UNLV.

778.    Upon information and belief, it is alleged that Prof. Montgomery was not, to date, disciplined by UNLV, or its agents, for all of the allegations herein.

779.    Upon information and belief, it is alleged that prior to the Accusation against Darren, it was known among faculty, staff, administration, and/or students of the Hotel College that Ms. Malek had a reputation for spreading falsehoods within the Hotel College.

780.    Upon information and belief, it is alleged that prior to the Accusation against Darren, Ms. Malek had a reputation for spreading falsehoods within her previous university.

781.    Upon information and belief, it is alleged that despite Ms. Malek's reputation, Ms. Malek was hired by UNLV, or its agents.

782.    Upon information and belief, it is alleged that despite Ms. Malek's reputation, Ms. Malek was retained by UNLV, or its agents.

783.     Upon information and belief, it is alleged that Dir. Burns was found guilty of the crime of Public Indecency.

784.     Upon information and belief, it is alleged that UNLV, or its agents, was aware that Dir. Burns was found guilty of the crime of Public Indecency.

785.     Upon information and belief, it is alleged that despite knowledge of Dir. Burns' criminal record, Dir. Burns was retained by UNLV, or its agents.

786.     Upon information and belief, it is alleged that despite Dir. Burns' criminal record, Dir. Burns was promoted to the role of Director of Student Conduct at UNLV.

787.     Upon information and belief, it is alleged that it is the duty of UNLV not to hire faculty who have a known alcohol and/or substance abuse problem.

788.     Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to retain faculty who have a known alcohol and/or substance abuse problem.

789.     Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to hire faculty who have had sexual intercourse with students over who they have even a modicum of control.

790.     Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to retain faculty who have had sexual intercourse with students over who they have even a modicum of control.

791.     Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to hire faculty who provide others with federally controlled substances.

792.     Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to retain faculty who provide others with federally controlled substances.

793.     It is the duty of UNLV, or its agents, not to hire faculty who provide underage students with alcohol.

794.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to retain faculty who provide underage students with alcohol.

795.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to hire employees who will deal with its student population and are known to have a criminal record for public indecency.

796.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to retain employees who will deal with its student population and are known to have a criminal record for public indecency.

797.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, not to hire employees who have a reputation for spreading falsehoods.

798.    It is the duty of UNLV, or its agents, not to retain employees who have a reputation for spreading falsehoods.

799.    But for the fact that Prof. Montgomery was hired by UNLV, the Accusation would not have been made against Darren.

800.    But for the fact that Prof. Montgomery was retained by UNLV, the Accusation would not have been made against Darren.

801.    But for the fact that Dir. Burns was hire by UNLV, Darren was not publicly vindicated.

802.    But for the fact that Dir. Burns was retained by UNLV, Darren was not publicly vindicated.

803.    But for the fact that Ms. Malek was hired by UNLV, the Accusation would not have been made against Darren.

804.    But for the fact that Ms. Malek was retained by UNLV, the Accusation would have not been made against Darren.

805.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, to properly train its faculty, staff, and administration in how to deal with life-altering accusations made by faculty, staff, students, or administration, against students.

806.    Upon information and belief, it is alleged that it is the duty of UNLV, or its agents, to properly supervise its faculty, staff, and administration when dealing with serious accusations made by faculty, staff, students, or administration, against students.

807.    Upon information and belief, it is alleged that UNLV, or its agents, did not properly train its faculty, staff, and administration in how to deal with accusations made by faculty, staff, students, or administration, against students.

808.    Upon information and belief, it is alleged that UNLV, or its agents, did not properly supervise its faculty, staff, and administration in how to deal with accusations made by faculty, staff, students, or administration, against students.

809.    But for the improper training, the Accusation would have been stopped immediately upon initial dissemination.

810.    But for the improper supervision, the Accusation would have been stopped immediately upon initial dissemination.

811.    The Accusation was a career-changing accusation against Darren.

812.    As a result of Defendants' negligence, Darren was harmed and suffered damages, including, but not limited to, economic, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

///

///

///

FIRST AMENDED COMPLAINT

## U. ALLEGATIONS AND FACTS COMMON TO CLAIMS EIGHTEEN THROUGH TWENTY-FIVE, INCLUSIVE

813. Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

814. Upon information and belief, it is alleged that Ms. Pieruschka was made aware of Darren's immigration law practice through one, or more, of the Accusation Defendants.

815. Upon information and belief, it is alleged that the following was a result of Darren's filing suit against Accusation Defendants, and therefore falls under the same case and controversy as the original suit.

816. As a result of his actual separation and constructive expulsion from UNLV, and his inability to find a job thereafter in the State of Nevada, Darren started an immigration law practice in Nevada on July 1, 2014.

817. Darren practices immigration law in the State of Nevada.

818. Darren cannot practice Nevada law in the State of Nevada without the Nevada bar license.

819. Darren does not, nor has he ever, practiced Nevada law, other than in this case before the court.

820. Darren has only ever practiced immigration law in the State of Nevada.

821. The domain name for Darren's law practice is www.GreenCardAdvice.com.

822. Ms. Pieruschka was aware that Darren's law practice's domain address is www.GreenCardAdvice.com.

823. Darren is a member of the bar for the State of Illinois.

824. Immigration law falls under federal law.

825. Darren is legally permitted to practice immigration law in the State of Nevada.

FIRST AMENDED COMPLAINT

826.    Ms. Pieruschka knew that Darren is legally permitted to practice immigration law in the State of Nevada.

827.    Ms. Pieruschka did not have probable cause to assert that Darren ever practiced Nevada law in the State of Nevada.

828.    On May 20, 2015, Ms. Pieruschka filed a complaint against Darren with the State Bar of Nevada, claiming that he was practicing law without a license.

829.    On May 20, 2015, Ms. Pieruschka, under the direction of Ms. Sidhu, filed a complaint against Darren with the State Bar of Nevada, claiming that he was practicing law without a license.

830.    Ms. Pieruschka never contacted Darren prior to May 20, 2015, to discuss, in any manner, Darren's legal practice in the State of Nevada.

831.    Upon information and belief, it is alleged that it is common practice for an attorney to contact another attorney before filing a complaint against such attorney with the state bar.

832.    Upon information and belief, it is alleged that filing a formal complaint against a lawyer is a serious matter.

833.    The State Bar of Nevada specifically states, on its website, that "A formal complaint against a lawyer is a serious matter… first sit down and talk openly and honestly with the lawyer… ask for a full explanation in terms that you can understand. Such a meeting may clear up the problem."

834.    On June 10, 2015, Darren gave copies of the Nevada State Court Amended Complaint to Mr. Brett Nicholls, a personal friend, who was not a party to the action, to serve the Accusation Defendants through their counsel of record, Ms. Debra Pieruschka.

FIRST AMENDED COMPLAINT

88

835.    Upon information and belief, it is alleged that on, or about, June 10, 2015, Mr. Nicholls met Ms. Pieruschka at UNLV, where he gave her the copies of the Nevada State Court Amended Complaint for her clients.

836.    Upon information and belief, it is alleged that Ms. Pieruschka asked Mr. Nicholls if he had picked up the Nevada State Court Amended Complaints from Darren's office in Town Square.

837.    Upon information and belief, it is alleged that Mr. Nicholls confirmed that he had picked them up there.

838.    Upon information and belief, it is alleged that Ms. Pieruschka told Mr. Nicholls that she was planning on filing a complaint with the Nevada Bar against Darren because he, Darren, was practicing law without a license in the State of Nevada (hereinafter "Bar Complaint").

839.    Mr. Nicholls is not a party to this action.

840.    Mr. Nicholls was not, nor was he ever, an employee of Darren's.

841.    Mr. Nicholls is a friend of Darren's who delivered these documents to Ms. Pieruschka as a personal favor and without compensation.

842.    Ms. Pieruschka's statement to Mr. Nicholls did not pertain to Darren's claim against Ms. Pieruschka's clients, the Accusation Defendants, in the matter of the Accusation.

843.    Mr. Nicholls called Darren after meeting with Ms. Pieruschka.

844.    Mr. Nicholls told Darren that Ms. Pieruschka told Mr. Nicholls that since he had picked up the documents from Darren at his law office in Town Square, she was going to file a complaint against Darren with the State of Nevada Bar, because he was practicing law in Nevada without a license.

845.    Darren emailed Ms. Pieruschka on June 10, 2015, stating "Dear Ms. Pieruschka, I hope this finds you well.  I was just told by the person who served you that you told him that you are planning to report me to the Nevada bar for practicing law without a license.  I wanted to confirm that you did, indeed say that. Thank you, Sincerely, Darren."

846.    Less than one hour later, Ms. Pieruschka responded, "Mr. Heyman - Again, I request you halt the continued email correspondence and again request you correspond with my office by US Mail. This ensures my staff is aware of your communications and logs it for response.  The only thing I will confirm for you is that today our office learned that the process server is picking up your documents for service from you law office at Town Square.  Further, the attached correspondence speaks for itself."

847.    Ms. Pieruschka attached a copy of a fax that she had sent to the State Bar of Nevada, dated 21 days earlier, on May 20, 2015.

848.    The fax included a letter to the State of Nevada Bar in which she implied to the Bar, that Darren was practicing law without a license in the State of Nevada.

849.    In the Bar Complaint, Ms. Pieruschka stated that she carbon-copied Darren Heyman regarding the Bar Complaint.

850.    Darren never received a copy of the Bar Complaint from Ms. Pieruschka prior to June 10, 2015.

851.    Darren never received any notice from Ms. Pieruschka that she had any intention of filing a Bar Complaint against him prior to June 10, 2015.

852.    When Darren asked why he had not received a copy of the Bar Complaint, despite being cc-ed on it, Ms. Pieruschka stated that she had sent him a "courtesy copy" on May 20, 2015.

FIRST AMENDED COMPLAINT

853.     Ms. Pieruschka then wrote that she was "not responsible for misplaced or lost mail."

854.     Ms. Pieruschka and Darren had been in regular contact, by phone, e-mail, and U.S. Mail, in the months of May and June, 2015.

855.     Upon information and belief, it is alleged that Darren received all letters sent to him by Ms. Pieruschka, using US Mail, other than the alleged letter dated May 20, 2015.

856.     Ms. Pieruschka alleged that she used U.S. Mail to send Darren a letter dated May 20, 2015.

857.     The letter dated May 20, 2015 has, to this date, never been received by Darren via the U.S. Mail.

858.     Upon information and belief, it is alleged that Ms. Pieruschka never attempted to confirm Darren's receipt of the Bar Complaint prior to June 10, 2015.

859.     Upon information and belief, it is alleged that Ms. Pieruschka never sent Darren a copy of the Bar Complaint on May 20, 2015, as she claimed.

860.     Upon information and belief, it is alleged that Ms. Pieruschka did not send Darren a copy of the Bar Complaint on May 20, 2015, under the direction of Ms. Sidhu.

861.     Upon information and belief, it is alleged that Ms. Pieruschka filed the Bar Complaint for the purpose of harassing Darren.

862.     Upon information and belief, it is alleged that Ms. Pieruschka was under the direction of Ms. Sidhu, when she filed the Bar Complaint.

863.     Upon information and belief, it is alleged that Ms. Pieruschka told Mr. Nicholls about the Bar Complaint for the purpose of harassing and embarrassing Darren.

864.     Upon information and belief, it is alleged that Ms. Pieruschka was under the direction of Ms. Sidhu when she told Mr. Nicholls about the Bar Complaint.

865.    Upon information and belief, it is alleged that Ms. Pieruschka and/ or Ms. Sidhu knew that Darren was taking the Nevada Bar Exam.

866.    Upon information and belief, it is alleged that Ms. Pieruschka is a member of the State of Nevada Bar.

867.    Upon information and belief, it is alleged that Ms. Sidhu is a member of the State of Nevada Bar.

868.    Upon information and belief, it is alleged that Ms. Pieruschka knew that Darren would have to report the Bar Complaint to the State of Nevada Bar Admissions Committee.

869.    Upon information and belief, it is alleged that Ms. Sidhu knew that Darren would have to report the Bar Complaint to the State of Nevada Bar Admissions Committee.

870.    Upon information and belief, it is alleged that Ms. Pieruschka knew that there is a character and fitness review portion of the State of Nevada Bar Admissions process.

871.    Upon information and belief, it is alleged that Ms. Sidhu knew that there is a character and fitness review portion of the State of Nevada Bar Admissions process.

872.    Upon information and belief, it is alleged that Ms. Pieruschka knew that any allegations of ethical wrongdoing reported to the State of Nevada Bar could result in a character and fitness hearing for Darren.

873.    Upon information and belief, it is alleged that Ms. Sidhu knew that any allegations of ethical wrongdoing reported to the State of Nevada Bar could result in a character and fitness hearing for Darren.

874.    Upon information and belief, it is alleged that Ms. Pieruschka knew that a character and fitness hearing would cost Darren additional money in addition to the regular bar application cost.

FIRST AMENDED COMPLAINT
92

875.     Upon information and belief, it is alleged that Ms. Sidhu knew that a character and fitness hearing would cost Darren additional money in addition to the regular bar application cost.

876.     Upon information and belief, it is alleged that Ms. Pieruschka knew that a character and fitness hearing would cost Darren addition time in addressing the Bar Complaint.

877.     Upon information and belief, it is alleged that Ms. Sidhu knew that a character and fitness hearing would cost Darren addition time in addressing the Bar Complaint.

878.     Upon information and belief, it is alleged that Ms. Pieruschka knew that a character and fitness hearing would delay Darren's ability to be sworn into the State of Nevada Bar.

879.     Upon information and belief, it is alleged that Ms. Sidhu knew that a character and fitness hearing would delay Darren's ability to be sworn into the State of Nevada Bar.

880.     Upon information and belief, it is alleged that Ms. Pieruschka knew that such a hearing would delay Darren's ability to be sworn into the State of Nevada Bar.

881.     Upon information and belief, it is alleged that Ms. Sidhu knew that such a hearing would delay Darren's ability to be sworn into the State of Nevada Bar.

882.     Upon information and belief, it is alleged that Darren has never had any complaints filed against him with any State Bar organization prior to this Bar Complaint.

883.     The State Bar of Nevada specifically states on its website that "If your complaint has no factual basis, or even if true would not constitute misconduct, your complaint will be dismissed and you will be notified of that dismissal."

884.     On January 14, 2016, The State Bar of Nevada wrote Darren stating that "the Office of Bar Counsel has decided not to open a formal disciplinary file in this grievance [filed by Ms. Pieruschka].  As such, please consider this matter closed."

FIRST AMENDED COMPLAINT
93

## V.    EIGHTEENTH CLAIM FOR RELIEF

### (MALICIOUS PROSECUTION – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

885.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

886.    It is not necessary to have a Nevada Bar license to practice federal immigration law in Nevada.

887.    A lawyer licensed in any state can practice federal immigration law in any other state.

888.    Upon information and belief, it is alleged that Ms. Pieruschka knew that Darren has a law license from the State of Illinois.

889.    Upon information and belief, it is alleged that Ms. Sidhu knew that Darren has a law license from the State of Illinois.

890.    Upon information and belief, it is alleged that Ms. Pieruschka knew that Darren was practicing immigration law in the State of Nevada.

891.    Upon information and belief, it is that alleged Ms. Sidhu knew that Darren was practicing immigration law in the State of Nevada.

892.    Upon information and belief, it is alleged that there was no evidence that Darren had practiced Nevada law in the State of Nevada, or anywhere else.

893.    Ms. Pieruschka never asked Darren if he was practicing any law other than immigration law in the State of Nevada.

894.    Ms. Pieruschka filed a Complaint against Darren for practicing law without a license in the State of Nevada.

FIRST AMENDED COMPLAINT

94

895.    Upon information and belief, it is alleged that it is a crime to practice Nevada law in Nevada without a license.

896.    Upon information and belief, it is alleged that if the State Bar of Nevada finds that a person, within its jurisdiction, is practicing law without a license it may file criminal charges against such person with the police.

897.    Upon information and belief, it is alleged that but for the lawsuit that Darren filed against Accusation Defendants, Ms. Pieruschka would not have filed a complaint against Darren for practicing law without a license.

898.    Upon information and belief, it is alleged that Ms. Pieruschka filed the complaint with the knowledge that Darren would not be found to have committed this crime.

899.    Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, filed the complaint with the knowledge that Darren would not be found to have committed this crime.

900.    Upon information and belief, it is alleged that the State Bar of Nevada investigated Ms. Pieruschka's criminal claim against Darren.

901.    On January 14, 2016, The State Bar of Nevada wrote "the Office of Bar Counsel has decided not to open a formal disciplinary file in this grievance [filed by Ms. Pieruschka].  As such, please consider this matter closed."

902.    Darren was harmed and suffered actual and presumed damages as a result of this civil conspiracy, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

///

FIRST AMENDED COMPLAINT

## W.    NINETEENTH CLAIM FOR RELIEF

## (DEFAMATION – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

903.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

904.    Mr. Nicholls was serving Accusation Defendants, on behalf Darren, through their counsel, Ms. Pieruschka.

905.    Ms. Pieruschka, made a verbal statement to Mr. Nicholls that she filing a Bar Complaint against Darren because Darren was practicing law without a license.

906.    Defendants, or their agents, made false statements regarding Darren, either knowing, or having reckless disregard, as to the truth or falsity of the statements, by stating that Darren was practicing law without a license.

907.    Mr. Nicholls is not, nor ever was, a member of UNLV, in any capacity.

908.    Mr. Nicholls is not, nor ever was, a party to the suit in question.

909.    Mr. Nicholls is not, nor ever was, an employee of Darren's in any capacity.

910.    Upon information and belief, it is alleged that Defendants, or their agents, made the statements, at the very least, with reckless disregard to its truth.

911.    Upon information and belief, it is alleged that these defendants did so to purposefully harm Darren's personal and professional reputations.

912.    A false accusation of practicing law without a license is extreme and outrageous.

913.    Falsely claiming that a person is practicing law without a license imputes that person's lack of fitness for trade, business, or profession.

914.    The false statement, made by Defendants, imputed Darren's lack of fitness for trade, business, or profession.

FIRST AMENDED COMPLAINT

915.     Defamation per se claims presume damages and special damages need not be shown.

916.     Upon information and belief, it is alleged that, to date, no public retraction has been made, nor has Darren received an apology from Defendants in the creation and dissemination of the false accusation that Darren has ever practiced law without a license.

917.     Upon information and belief, it is alleged that, Defendants' actions were as a result of Darren's original legal case against Defendants, and hence resulted from the same case and controversy.

918.     Darren sustained actual and presumed damages as a result of the false accusation, and its repetition, of practicing law without a license, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

## X.     TWENTIETH CLAIM FOR RELIEF

### (INVASION OF PRIVACY - FALSE LIGHT– AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

919.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

920.     Upon information and belief, it is alleged that Defendants gave publicity to a matter concerning Darren that placed Darren before the public in a false light by starting and/or repeating the false accusation that Darren practiced law without a license, both among and beyond UNLV faculty, administration, and staff, including non-interested third parties.

921.    Upon information and belief, it is alleged that Defendants started and/or repeated the false accusation, that Darren practices law without a license, to persons who were not involved in Darren's legal practice in Nevada.

922.    Upon information and belief, it is alleged that Defendants knew, or should have known, that the false accusations were not true.

923.    Such persons, who were not involved with the State of Nevada Bar, are, for purposes of the Bar Complaint, public persons.

924.    The false accusation of practicing law without a license would be highly offensive to a reasonable person.

925.    Upon information and belief, it is alleged that Defendants maliciously had knowledge of, or acted with malice in reckless disregard as to, the falsity of the publicized matter and the false light in which Darren was placed.

926.    The purposeful creation and/or repetition of a known falsity to maliciously injure an opposing party to a litigation, by putting him in a false light beyond the scope of the litigation, is beyond the discretion of opposing counsel.

927.    Upon information and belief, it is alleged that Defendant Debra Pieruschka gave publicity to a matter concerning Darren that placed Darren before the public in a false light by telling Mr. Nicholls, a non-interested third party, that she planned to file a complaint against Darren with the State of Nevada Bar.

928.    Upon information and belief, it is alleged that Defendant Debra Pieruschka, under the direction of Elda Sidhu, gave publicity to a matter concerning Darren that placed Darren before the public in a false light by telling Mr. Nicholls, a non-interested third party, that she planned to file a complaint against Darren with the State of Nevada Bar.

FIRST AMENDED COMPLAINT

929.    Upon information and belief, it is alleged that Ms. Pieruschka had knowledge of, or acted with malice in reckless disregard as to, the falsity of the publicized matter and the false light in which Darren was placed.

930.    Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, had knowledge of, or acted with malice in reckless disregard as to, the falsity of the publicized matter and the false light in which Darren was placed.

931.    Upon information and belief, it is alleged that Ms. Pieruschka told additional non-interested third parties that Darren was practicing law without a license.

932.    Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, told additional non-interested third parties that Darren was practicing law without a license.

933.    Upon information and belief, it is alleged that Ms. Pieruschka acted in bad faith and with malice.

934.    Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, acted in bad faith and with malice.

935.    Darren was harmed and suffered damages as a result of this invasion of privacy, including, but not limited to, emotional, psychological, and reputational harm.

///

///

///

///

///

FIRST AMENDED COMPLAINT

## Y.     TWENTY-FIRST CLAIM FOR RELIEF

### (CIVIL CONSPIRACY– AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; ELDA SIDHU; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)

936.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

937.     Upon information and belief, it is alleged that Ms. Pieruschka works under the direction of Ms. Sidhu.

938.     Upon information and belief, it is alleged that Ms. Pieruschka consulted with Ms. Sidhu before filing the Bar Complaint against Darren regarding filing the Bar Complaint.

939.     Upon information and belief, it is alleged that Ms. Pieruschka consulted with President Snyder before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

940.     Upon information and belief, it is alleged that Ms. Pieruschka consulted with Dean Shoemaker before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

941.     Upon information and belief, it is alleged that Ms. Pieruschka consulted with Dir. Burns before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

942.     Upon information and belief, it is alleged that Ms. Pieruschka consulted with Prof. Montgomery before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

943.    Upon information and belief, it is alleged that Ms. Pieruschka consulted with Prof. Love before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

944.    Upon information and belief, it is alleged that Ms. Pieruschka consulted with Prof. Tanford before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

///

945.    Upon information and belief, it is alleged that Ms. Pieruschka consulted with Ms. Malek before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

946.    Upon information and belief, it is alleged that Ms. Pieruschka consulted with Ms. Moll-Cain before filing the Bar Complaint against Darren regarding filing the Bar Complaint against Darren.

947.    Upon information and belief, it is alleged that Ms. Pieruschka filed the Bar Complaint with the knowledge and permission of Ms. Sidhu.

948.    Upon information and belief, it is alleged that Ms. Pieruschka told Mr. Nicholls about the Bar Complaint with the knowledge and permission of Ms. Sidhu.

949.    Upon information and belief, it is alleged that Defendants Ms. Pieruschka and Ms. Sidhu, or their agents, by acting in concert, intended to accomplish the unlawful goals of malicious prosecution, defamation, intentional infliction of emotional distress, false light, and the other torts named herein, to harm Darren.

950.    Darren was harmed and suffered damages as a result of this civil conspiracy, including, but not limited to, severe psychological and emotional trauma, negative effects on

reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

### Z.     TWENTY-SECOND CLAIM FOR RELIEF

**(CONCERT OF ACTION – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; ELDA SIDHU; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; PHILLIP BURNS; KRISTIN MALEK; and LISA MOLL-CAIN)**

951.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

952.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with, and under the direction of, Ms. Sidhu, to file a Bar Complaint against Darren despite knowing that there was no solid evidence as to the claims therein.

953.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with President Snyder to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

954.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Dean Shoemaker to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

955.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Prof. Montgomery to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

956.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Prof. Love to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

957.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Prof. Tanford to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

958.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Ms. Malek to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

959.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with Ms. Moll-Cain to file a Bar Complaint against Darren, despite knowing that there was no solid evidence as to the claims therein.

960.     Upon information and belief, it is alleged that Ms. Pieruschka conspired with, and under the direction of, Ms. Sidhu, to tell Mr. Nicholls about the Bar Complaint against Darren despite knowing that there was no solid evidence as to the claims therein.

961.     Upon information and belief, it is alleged that Defendants, or their agents, acted with others, or defendants acted together, to commit malicious prosecution, defamation, intentional infliction of emotional distress, false light, and the other torts named herein against Darren, while acting in concert or pursuant to a common design of harming Darren, and his reputation.

962.     Knowingly repeating false accusations that imputed Darren's professional reputation, posed a substantial risk of emotional, psychological, reputational, and economic harm to Darren.

963.     Darren was harmed and suffered damages as a result of this concert of action, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

FIRST AMENDED COMPLAINT
103

## AA.    TWENTY-THIRD CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

964.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

965.    On May 20, 2015, Ms. Pieruschka filed a complaint against Darren with the Nevada Bar claiming that he was practicing law without a license in Nevada.

966.    On January 14, 2016, the Nevada Bar closed Ms. Pieruschka's claim without so much as opening a formal disciplinary file.

967.    Darren has not and does not practice law without a license.

968.    Upon information and belief, it is alleged that Ms. Pieruschka knew that Darren was not practicing law without a license.

969.    Ms. Pieruschka never even attempted to contact Darren to ask him if he was practicing law without a license.

970.    The Bar Complaint against Darren shows that he was "cc"-ed.

971.    Upon information and belief, it is alleged that Ms. Pieruschka never caused a copy of the Bar Complaint to be sent to Darren.

972.    Upon information and belief, it is alleged that Ms. Pieruschka purposefully filed the Bar Complaint to distress Darren.

973.    Upon information and belief, it is alleged that Ms. Pieruschka was under the direction of Ms. Sidhu.

974.    Darren never received a copy of the Bar Complaint from Ms. Pieruschka prior to his asking about it weeks later.

FIRST AMENDED COMPLAINT

104

975.     Upon information and belief, it is alleged that Ms. Pieruschka told Mr. Nicholls that, who delivered the Nevada State Amended Complaint to her, on behalf of her clients, she was "planning on filing a complaint against Darren with the Nevada Bar because he is practicing law without a license."

976.     Mr. Nicholls is not a party to this action.

977.     Ms. Pieruschka's Bar Complaint has nothing to do with this action currently before this Court.

978.     Upon information and belief, it is alleged that Ms. Pieruschka's actions and comments were done/made with malicious, extreme, and/or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Darren.

## BB.     TWENTY-FOURTH CLAIM FOR RELIEF

### (NEGLIGENCE – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

979.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

980.     On May 20, 2015, Ms. Pieruschka filed a complaint against Darren with the Nevada Bar claiming that he was practicing law without a license in Nevada.

981.     Darren was not practicing law without a license.

982.     Upon information and belief, it is alleged that Ms. Pieruschka knew that Darren was not practicing law without a license.

983.     Ms. Pieruschka never attempted to contact Darren to ask him if he was practicing law without a license.

984.     A lawyer owes a duty of fairness to an opposing party.

985.     The Bar Complaint against Darren shows that he was "cc"-ed.

FIRST AMENDED COMPLAINT

986.     Upon information and belief, it is alleged that Ms. Pieruschka never caused a copy of the Bar Complaint to be sent to Darren by U.S. Mail.

987.     Upon information and belief, it is alleged that Ms. Pieruschka negligently filed the Bar Complaint against Darren.

988.     Upon information and belief, it is alleged that Ms. Pieruschka was under the direction of Ms. Sidhu.

989.     Darren never received a copy of the Bar Complaint from Ms. Pieruschka prior to his asking about it weeks later.

990.     Upon information and belief, it is alleged that Ms. Pieruschka told Mr. Nicholls, who delivered the Nevada State Amended Complaint to her, on behalf of her clients, she was "planning on filing a complaint against Darren with the Nevada Bar because he is practicing law without a license."

991.     Mr. Nicholls is not a party to this action.

992.     Ms. Pieruschka's Bar Complaint has nothing to do with this action currently before this Court.

993.     Upon information and belief, it is alleged that Ms. Pieruschka's actions and comments were done/made with malicious, extreme, and/or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Darren.

994.     Ms. Pieruschka, under the direction of Ms. Sidhu, filed the Bar Complaint against Darren.

995.     The Bar Complaint had nothing, whatsoever, to do with Darren's claims against UNLV, as Darren is a pro se litigant.

996.     It is a breach of duty to tell disinterested third party non-lawyers about ongoing complaints filed with the Nevada bar.

997.     If not for Ms. Pieruschka's Bar Complaint against Darren, there would not have been a Bar Complaint filed against Darren with the State of Nevada Bar.

998.     Darren was harmed and suffered damages as a result of this negligence, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

## CC.    TWENTY-FIFTH CLAIM FOR RELIEF

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – CONTRACTUAL BREACH – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; and ELDA SIDHU)

999.     Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1000.   There is an implied covenant of good faith and fair dealing between UNLV, UNLV's agents, and its students.

1001.   Darren and UNLV entered into a valid contract when Darren became a UNLV student at UNLV.

1002.   These contracts have an implied covenant of good faith and fair dealing.

1003.   This covenant does not expire even if there is litigation between the student and the university.

1004.   Upon information and belief, it is alleged that Ms. Pieruschka did not file the complaint against Darren in good faith.

1005.   Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, did not file the Bar Complaint against Darren in good faith.

1006.   Upon information and belief, it is alleged that Ms. Pieruschka did not, in good faith, tell Mr. Nicholls that Darren was practicing law without a license.

1007.   Upon information and belief, it is alleged that Ms. Pieruschka, under the direction of Ms. Sidhu, did not, in good faith, tell Mr. Nicholls that Darren was practicing law without a license.

1008.   Darren was harmed and suffered damages as a result of this civil conspiracy, including, but not limited to, severe psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with the State of Nevada Bar, and potential future damages as pertaining to obtaining his Nevada Bar license.

///

///

///

///

///

///

///

///

///

///

///

///

**DD.    ALLEGATIONS AND FACTS COMMON TO CLAIMS TWENTY-SIX THROUGH THIRTY-ONE, INCLUSIVE**

1009.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1010.   Upon information and belief, it is alleged that the following was a result of Darren's filing suit against Accusation Defendants, and therefore falls under the same case and controversy as the original suit.

1011.   On September 1, 2015, Darren filed for a Leave of Absence (hereinafter "LOA") from UNLV until Fall 2017.

1012.   Darren took the LOA as he does not feel welcome, comfortable, or safe at UNLV while this litigation is ongoing.

1013.   Upon information and belief, it is alleged that the LOA was approved.

1014.   Upon information and belief, it is alleged that UNLV unilaterally changed the return date to Fall 2016.

1015.   Upon information and belief, it is alleged that UNLV never informed Darren that it made this change until Darren was involuntarily separated from UNLV.

1016.   On March 10, 2016, UNLV Graduate College dated a letter to Darren stating that he "failed to return [to UNLV] as scheduled or to secure an extension of a prior leave of absence … [and t]herefore, [Darren is] being separated from [his] graduate program."

1017.   Upon information and belief, it is alleged that UNLV had not sent any letters to Darren prior regarding the possibility that he may be separated from the program.

1018.   Darren had not received any letters prior regarding the possibility that he may be separated from the program.

FIRST AMENDED COMPLAINT

1019.   Upon information and belief, it is alleged that Darren has had, at all times since enrolling at UNLV, to date, an active UNLV student email account.

1020.   Darren has not changed address since originally enrolling at UNLV.

1021.   Darren received the letter on March 17, 2016.

1022.   On March 18, 2016, Darren contacted Gael Hancock, Manager of Graduate Studies at the Hotel College via email, telling her about the letter.

1023.   Ms. Hancock responded to Darren by email, the same day, stating that the return date on the LOA was "Fall 2017" and that she would look into it.

1024.   Upon information and belief, it is alleged that it is the policy of the Graduate College to inform the College in which the student is enrolled, if the Graduate College is planning to separate a student from the university.

1025.   Upon information and belief, it is alleged that the Graduate College did not inform the Hotel College of its plans to separate Darren from the university.

1026.   Upon information and belief, it is alleged that the Dean of the Graduate College changed the return date on the LOA to Fall 2016.

1027.   Darren was never informed about this change until after Darren was involuntarily separated from UNLV.

1028.   On March 21, 2016, Ms. Dee-dee Saverin, the Senior Graduate Admissions & Records Analyst, sent an email to Ms. Hancock stating "[w]e have the LOA on file, it was actually approved for return in fall 2016, not fall 2017.  He has been reactivated in the system. My apologies Darren for any undue stress this may have caused."

1029.   Since Darren enrolled at UNLV, UNLV, through its agents, has: (i) falsely accused him of planning to cheat on an exam; (ii) baselessly reported him to the Nevada Bar for practicing law without a license, (iii) separated him "erroneously" from the University; and (iv)

FIRST AMENDED COMPLAINT
110

shared these false and baseless accusations to disinterested parties both within and without UNLV.

## EE.  TWENTY-SIXTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AGAINST DEFENDANT UNLV)

1030.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1031.   On, or about, September 1, 2015, Darren filed for a Leave of Absence from UNLV until Fall 2017.

1032.   The LOA was approved.

1033.   Upon information and belief, it is alleged that UNLV changed the return date to Fall 2016.

1034.   UNLV never informed Darren that it made this change until after Darren was involuntarily separated from UNLV.

1035.   UNLV wrote Darren a letter on March 10, 2016, stating that he was separated from UNLV.

1036.   Darren received this letter.

1037.   Upon information and belief, it is alleged that UNLV did this due to the lawsuit that Darren filed against Accusation Defendants.

1038.   UNLV is in a position of superiority over its students.

1039.   It is extreme and outrageous behavior to remove a student from a university simply because that student filed suit against the university.

1040.   But for UNLV's conduct, Darren would not have been actually separated from UNLV.

FIRST AMENDED COMPLAINT
111

1041.   Darren alleges that these actions were done with malice and/or reckless disregard to the truth.

1042.   Darren was harmed and suffered damages as a result of these intentional inflictions of emotional distress, including, but not limited to, psychological and emotional trauma, negative effects on reputation, time and effort wasted in dealing with UNLV to rectify this.

## FF.   TWENTY-SEVENTH CLAIM FOR RELIEF
## (NEGLIGENCE – AGAINST DEFENDANT UNLV)

1043.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1044.   Darren was a student and graduate assistant at UNLV.

1045.   On September 1, 2015, Darren filed for a Leave of Absence from UNLV until Fall 2017.

1046.   The LOA was approved.

1047.   UNLV changed the return date to Fall 2016.

1048.   UNLV never informed Darren that it made this change until Darren was already involuntarily separated from UNLV.

1049.   UNLV wrote Darren a letter on March 10, 2016, stating that he was separated from UNLV.

1050.   Darren received this letter.

1051.   Upon information and belief, it is alleged that UNLV has a duty towards its students to keep timely and accurate records.

1052.   Upon information and belief, it is alleged that UNLV has a duty towards its students not to unilaterally separate a student from the university who has abided by rules and regulations of UNLV.

1053.   UNLV unilaterally separated Darren from the University.

1054.   But for UNLV's actions, Darren would not have been separated from UNLV.

1055.   Darren suffered distress and reputational harm as a result of his being separated from UNLV.

1056.   As a result of Defendant's negligence, Darren was harmed and suffered damages, including, but not limited to, economic, temporal, emotional, psychological, reputational harm, and his actual separation from UNLV.

## GG.   TWENTY-EIGHTH CLAIM FOR RELIEF

## (BREACH OF CONTRACT – AGAINST DEFENDANT UNLV)

1057.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1058.   Darren entered into a valid contract with UNLV as a student.

1059.   A UNLV student under a LOA still has a contract with UNLV.

1060.   UNLV is responsible for the actions, and inactions, taken on its behalf, of its faculty and staff in the furtherance of UNLV duties.

1061.   Upon information and belief, it is alleged that UNLV does not have a Staff Conduct Code.

1062.   The Code states that "[p]ersons found in violation may be accountable to both civil and criminal authorities … for actions that constitute violations of the *Code*."

1063.   The Policy expressly states "[w]e strive to establish clear standards, practices, and procedures and expect fairness in the interactions of students, faculty and administrators.

Important components of fairness are predictability, clear expectations, a predictable and transparent process, as well as consistent and just responses."

1064.   UNLV has a duty towards its students to keep timely and accurate records.

1065.   Upon information and belief, it is alleged that UNLV purposefully kept inaccurate records for Darren.

1066.   Upon information and belief, it is alleged that UNLV purposefully kept inaccurate records for Darren due to his lawsuit against Accusation Defendants.

1067.   UNLV is liable for any contractual breaches made as a result of its agents, working within the scope of employment.

1068.   Darren was harmed and suffered damages as a result of these contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual separation from UNLV.

## HH.    TWENTY-NINTH CLAIM FOR RELIEF

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – CONTRACTUAL BREACH – AGAINST DEFENDANT UNLV)

1069.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1070.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1071.   There is an implied covenant of good faith and fair dealing between UNLV, UNLV's agents, and its students.

1072.   Darren and UNLV entered into a valid and existing contract when Darren became a student at UNLV.

1073.   UNLV has a duty towards its students to keep timely and accurate records.

1074.   Upon information and belief, it is alleged that UNLV purposefully kept inaccurate records for Darren.

1075.   Upon information and belief, it is alleged that UNLV purposefully kept inaccurate records for Darren due to his lawsuit against Accusation Defendants.

1076.   UNLV is liable for any contractual breaches made as a result of its agents, working within the scope of employment.

1077.   Darren was harmed and suffered damages as a result of these contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual separation from UNLV.

## II.     THIRTIETH CLAIM FOR RELIEF

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – TORTIOUS BREACH – AGAINST DEFENDANT UNLV)

1078.   Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1079.   There existed a special element of reliance between Darren and UNLV, through its agents therein, where the latter was in a superior or entrusted position, where Darren was a student and graduate assistant therein.

1080.   Upon information and belief, it is alleged that UNLV, through its agents therein, performed its duties in a manner that was unfaithful to the contract by not granting Darren a LOA until Fall 2017.

1081.   Upon information and belief, it is alleged that UNLV, through its agents therein, performed its duties in a manner that was unfaithful to the contract by only granting Darren an LOA until Fall 2016.

1082.   Upon information and belief, it is alleged that UNLV, through its agents therein, performed its duties in a manner that was unfaithful to the contract by not informing Darren that the LOA was only granted until Fall 2016.

1083.   Upon information and belief, it is alleged that UNLV, through its agents therein, performed its duties in a manner that was unfaithful to the contract by not giving Darren advance warning of the ensuing separation.

1084.   Upon information and belief, it is alleged that UNLV, through its agents therein, breached its duties in a manner that was unfaithful to the contract by unilaterally separating Darren from UNLV.

1085.   Darren was harmed and suffered damages as a result of these contractual breaches, both express and implied, including, but not limited to, emotional, psychological, and reputational harm, and his actual involuntary separation from UNLV.

## JJ.     THIRTY-FIRST CLAIM FOR RELIEF

### (CIVIL CONSPIRACY – AGAINST DEFENDANTS UNLV; DEBRA PIERUSCHKA; ELDA SIDHU; DONALD SNYDER; STOWE SHOEMAKER; RHONDA MONTGOMERY; CURTIS LOVE; SARAH TANFORD; and PHILLIP BURNS)

1086.    Darren repeats and re-alleges each and every foregoing paragraph set forth above and incorporates the same by reference as though fully set forth at length herein.

1087.   Upon information and belief, it is alleged that the Graduate College consulted with Debra Pieruschka regarding separating Darren from the university.

1088.   Upon information and belief, it is alleged that the Graduate College consulted with Elda Sidhu regarding separating Darren from the university.

1089.   Upon information and belief, it is alleged that the Graduate College consulted with Donald Snyder regarding separating Darren from the university.

FIRST AMENDED COMPLAINT

1090.   Upon information and belief, it is alleged that the Graduate College consulted with Dean Shoemaker regarding separating Darren from the university.

1091.   Upon information and belief, it is alleged that the Graduate College consulted with Dir. Burns before filing the Bar Complaint against Darren regarding separating Darren from the university.

1092.   Upon information and belief, it is alleged that the Graduate College consulted with Prof. Montgomery before filing the Bar Complaint against Darren regarding separating Darren from the university.

1093.   Upon information and belief, it is alleged that the Graduate College consulted with Prof. Love before filing the Bar Complaint against Darren regarding separating Darren from the university.

1094.   Upon information and belief, it is alleged that the Graduate College consulted with Prof. Tanford before filing the Bar Complaint against Darren regarding separating Darren from the university.

1095.   Upon information and belief, it is alleged that Defendants UNLV, Ms. Pieruschka, Ms. Sidhu, President Snyder, Dean Shoemaker, Dir. Burns, Prof. Montgomery, Prof. Love, and Prof. Tanford, or their agents, by acting in concert, intended to accomplish the unlawful goals of intentional infliction of emotional distress, breach of contract, breach of implied covenant, and the other torts named herein, to harm Darren.

1096.   Darren was harmed and suffered damages as a result of these civil conspiracies, including, but not limited to, emotional, psychological, reputational harm, and his actual separation and constructive expulsion from UNLV.

///

FIRST AMENDED COMPLAINT

## KK.   DAMAGES

1097.   As a direct and proximate cause of the above, Darren suffered incalculable damage to his personal, professional, and academic reputations.

1098.   As a direct and proximate cause of the above, Darren suffered emotional distress, anxiety, and severe depression that had serious adverse effects on him and his family.

1099.   As a direct and proximate cause of the above, Darren incurred the expenses of necessary medical, rehabilitative, and other care, treatment and services.

1100.   As a direct and proximate cause of the above, Darren suffered loss of the pleasures of life, including, but not limited to attending university, teaching, enjoying UNLV events, and other activities of the quality and to that extent previously enjoyed by Darren.

1101.   As a direct and proximate cause of the above, Darren experienced sorrow, pain, and suffering.

1102.   As a direct and proximate cause of the above, Darren has not been able to complete his Ph.D. at UNLV, despite already completing a vast majority of the coursework.

1103.   As a direct and proximate cause of the above, Darren was involuntarily separated from UNLV.

1104.   As a direct and proximate cause of the above, Darren has been constructively expelled from UNLV.

1105.   As a direct and proximate result of the above, Darren has suffered damages to the extent that he has incurred past attorneys' fees and expenses, and will incur future attorneys' fees and expenses that are presently undetermined.

1106.   Darren is entitled to an award thereof and reserves the right to amend this First Amended Complaint when such attorneys' fees and expenses are ascertained.

FIRST AMENDED COMPLAINT

**WHEREFORE**, Darren, expressly reserving rights to amend this First Amended Complaint prior to, or at the time of, trial of this action to insert those items of damage not yet fully ascertainable, prays judgement against the Defendants and each of them as follows:

1. For injunctive relief in the form of university-wide education regarding defamation, discrimination, and any other legal wrongdoing that the Court finds appropriate;

2. For general damages sustained by Darren in an amount in excess of $10,000;

3. For special damages sustained by Darren in an amount in excess of $10,000;

4. For statutory damages sustained by Darren in an amount in excess of $10,000;

5. For reasonable attorney's fees and costs of suit;

6. Interest at the statutory rate;

7. Punitive damages to the degree that Defendants' actions, both in their individual and official capacities, were with malice;

8. Punitive damages to the degree that Defendants' actions will be prevented in the future; and

9. For such other relief as the Court deems just and proper.

DATED this 13$^h$ day of April, 2016.

**DARREN HEYMAN**

__/s/ Darren Heyman_____
Darren Heyman
830 Carnegie St. #1324
Henderson, NV 89052
(702) 576-8122

FIRST AMENDED COMPLAINT