**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DARREN HEYMAN, | )<br>) |
| Plaintiff, | ) Case No. 2:15-cv-01228-RFB-GWF<br>) |
| vs. | ) **ORDER**<br>) |
| STATE OF NEVADA EX REL. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION ON BEHALF OF UNIVERSITY OF NEVADA, LAS VEGAS, et al. | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

This matter is before the Court on Plaintiff's Second Motion to Compel Defendant Rhonda Montgomery to Further Respond to Plaintiff's Discovery Requests (ECF No. 165), filed on August 4, 2017. Defendant Montgomery filed her Response (ECF No. 180) on September 8, 2017. Defendant Montgomery also filed a Countermotion for Protective Order (ECF No. 181) to preclude the discovery sought by Plaintiff. Plaintiff filed his Reply (ECF No. 186) on September 15, 2017 and Opposition to Defendant's Countermotion (ECF No. 187) on September 22, 2017.

**BACKGROUND**

**1.   Plaintiff's Allegations in First Amended Complaint.**

Plaintiff Darren Heyman filed a one hundred nineteen (119) page First Amended Complaint (ECF No. 28) (*"First Amended Complaint"*) on April 13, 2016. Heyman alleges that in 2013, he was enrolled in the Ph.D. program in the Hotel College at the University of Nevada Las Vegas ("UNLV"). As part of that program, he was required to pass the "Q-Exam." Heyman alleges that on May 3, 2013, he was informed that Defendants Kristin Malek and Lisa Moll-Cain, who were also Ph.D. students, and "faculty who they had aligned themselves with," were going to try to have Heyman "separated" from

1 UNLV if he failed the Q-Exam on his first try. On May 13, 2013, Heyman met with Dean Busser who
2 was the head of the Ph.D. program. Dean Busser asked Heyman if he planned to cheat on the Q-Exam.
3 He informed Heyman that Professors Rhonda Montgomery and Curtis Love, and Defendant Malek, had
4 accused him of planning to cheat on the exam. Heyman stated that the accusation was false. *First*
5 *Amended Complaint*, at ¶¶ 102-125.

6 Heyman alleges that Defendant Montgomery had a well-known problem with alcohol and illegal
7 controlled substances abuse, which occasionally caused her to miss classes or meetings. He also alleges
8 that Defendant Montgomery used university funds to provide alcohol to underage students; provided
9 controlled substances to students; and engaged in sexual relations with at least one student while she
10 held an administrative position. Heyman further alleges that Montgomery discriminated against students
11 based on their "sex, gender, race and/or country of national origin, and that she had a record of spreading
12 falsehoods. *Id.* at ¶¶ at 127-153,

13 Heyman alleges that prior to the cheating accusation, Defendant Love had accused him of lying
14 when he stated that Dean Busser had told him that he would be reimbursed for his expenses for an
15 academic conference. Dean Busser informed Love that Heyman was telling the truth, and this caused
16 Love to be embarrassed and angry at Heyman. Heyman alleges that Montgomery and Love resided
17 together, and that Montgomery, Love, Sarah Tanford (another professor), Malek and Moll-Cain spent
18 time with each other that was beyond the requirements of university social settings. Heyman was
19 informed by UNLV faculty that Montgomery and Malek had accused each other of starting the
20 accusation that Heyman intended to cheat on the Q-Exam. *Id.* at ¶¶ 154-165.

21 On May 13, 2013, Heyman sent an email to Defendant Donald Snyder, Dean of the Hotel
22 College, regarding the accusation made against him. Snyder informed Heyman that he had just learned
23 of the accusation and that it would be investigated. On May 16, 2013, one day before the Q-Exam,
24 Snyder sent Heyman an email stating that the accusation was a student based rumor and was "clearly not
25 the thinking or belief of the College or University." Snyder stated that an investigation into the rumor
26 would be conducted. Snyder also offered Heyman up to one month to take the Q-Exam. Heyman took
27 the examination on May 23-24, 2013 and passed it. *Id.* at ¶¶ 173-187.
28 . . .

1 | Snyder referred Heyman to Defendant Phillip Burns, the Director of the Office of Student
2 | Conduct.  Heyman met with Burns on May 31, 2013.  He asked Burns if he was friendly with
3 | Montgomery, Love, Malek or Moll-Cain.  Burns stated he was not.  Burns indicated that he did not know
4 | any of these individuals by name.  Heyman spent over two hours with Burns providing him with
5 | information about the sequence of events.  He also sent Burns a detailed written account of names, dates,
6 | e-mails, times, and events.  Heyman alleges that Burns purposefully did not inform him that he may have
7 | a Title IX claim against UNLV or the individuals involved in making the false accusation.  *Id.* at ¶¶ 195-
8 | 207.  Heyman sent Burns several emails inquiring about the investigation.  Burns informed Heyman that
9 | he could not question students or faculty who were not enrolled or present in school during the summer.
10 | Burns met with Heyman in September 2013 and informed him that he had completed the investigation.
11 | Burns stated that he only had authority over students and did not have authority over faculty.  He
12 | indicated that he had determined that the investigation of the students was a "he-said, she-said" situation,
13 | and he recommended that no action be taken against any student.  Burns also told Heyman that he was
14 | largely to blame for the accusation made against him.  Burns refused to tell Heyman whom he had
15 | questioned and refused to provide Heyman with the investigation report.  *Id.* at ¶¶ 211-227.

In June 2014, Heyman became aware that Burns actually did know Montgomery prior to his first meeting with Heyman, and that Burns had spoken to Montgomery's classes multiple times over the years and had also socialized with her.  Heyman sent an email to Snyder informing him that Burns had failed to disclose his relationship with Montgomery.  Snyder informed Heyman that he would no longer discuss the accusation with him.  Heyman was notified by UNLV's in-house counsel that any further discussion about the accusation should go through counsel.  Heyman met with UNLV's general counsel and recounted what had transpired.  He requested that UNLV hire an outside investigator.  However, no independent investigation was ever done.  No one was disciplined for making the false accusation. Instead, Defendant Tanford received tenure, Defendant Montgomery was promoted, and Defendant Love retired with a full pension.  *Id.* at ¶¶ 239-256.

Heyman alleges a variety of causes of action against Defendants UNLV, former University President Neal Smatresk, Snyder, Shoemaker, Burns, Montgomery, Love, Tanford, Malek and Moll-Cain,  arising from the false accusation and subsequent investigation, including defamation, false light,

conspiracy, concert of action, intentional infliction of emotional distress, breach of contract based on violations of UNLV's Code of Conduct, contractual and tortious breach of the covenant of good faith and fair dealing, constructive fraud, deceit and misrepresentation, fraudulent inducement, fraud/intentional misrepresentation, negligence, and negligent hiring, training and retention. *Id.* at ¶¶ 292-812.

Heyman alleges that on September 1, 2015, he filed a request for a leave of absence from UNLV until the fall of 2016 or 2017. On March 10, 2016, the UNLV Graduate College notified Heyman that he was being separated from the graduate program based on his failure to return from his leave of absence. On March 21, 2016, Heyman's leave of absence was reinstated and UNLV apologized for any undue stress that the notice of separation caused him. Heyman's twenty-sixth through thirtieth claims for relief allege claims against UNLV for intentional infliction of emotional distress, negligence, breach of contract, and contractual and tortious breach of the covenant of good faith and fair dealing relating to the letter of separation. His thirty-first claim for relief alleges a claim for civil conspiracy against UNLV and several individual Defendants including Montgomery, apparently on the grounds that they were involved in the decision to issue the separation letter. *First Amended Complaint*, at ¶¶ 1009-1096.

Heyman also alleged causes of action for sexual harassment against UNLV, Montgomery, Love, Tanford, Burns, Malek and Moll-Cain. These claims were dismissed by the Court on March 31, 2017. The Court also dismissed Heyman's claims against Defendant Smatresk and it dismissed Heyman's eighteenth through twenty-fifth claims for relief which were based on the allegation that UNLV's in-house counsel had filed a meritless complaint with the Nevada State Bar that Heyman was practicing law without a license. *Minute Order in Chambers* (ECF No. 14); s*ee also First Amended Complaint.* at ¶¶ 622-685. As a result of the Court's partial dismissal order, Plaintiff's complaint boils down to the following factual claims: First, Heyman alleges that he was falsely accused of intending to cheat on the Q-Exam in May 2013. Second, he alleges that UNLV and its administrators failed to conduct an impartial investigation and properly discipline the faculty members and students responsible for making the false accusation. Third, he alleges that Defendant improperly terminated him from the Ph.D. program for failing to return from his leave of absence.

. . .

**2.  Plaintiff's Motion to Compel Discovery Responses.**

Plaintiff moves the Court to compel Defendant Montgomery to respond to the following requests for production of documents, interrogatories and requests for admissions:

**A.  Requests for Production of Documents.**

**Request No. 1:** Please produce and identify all documents regarding any communications generated from January 1, 2012 until present, made and/or received by you, or an agent, involving all codefendants, witnesses, and any employee, faculty, staff, or students of the University of Nevada Las Vegas that concern or identify Plaintiff, any co-defendant, or any pertinent witness, that in any way involves any claim made in this lawsuit.

**Request No. 2:** Please produce and identify all documents regarding any communications generated from January 1, 2001 until present made and/or received by you, or an agent, involving all codefendants, witnesses, and any employee, faculty staff, or students of the University of Nevada, Las Vegas, that concern or identify any codefendant, or any pertinent witness, that in any way involves activities beyond that mandated by employment with the aforementioned people.

**Request No.  3:** Please produce and identify all documents regarding any activities or events you attended, or intended to attend, generated from January 1, 2002 until present, made and/or received by you, or an agent, involving all codefendants, witnesses, or any employee, faculty, staff, or students of the University of Nevada, Las Vegas, as well as any evidence that would verify attendance to said meetings/events, and any notes made at that meeting, as well as a key describing any shorthand or abbreviation that you may have used.

**Request No. 4:** Please produce and identify all documents regarding any UNLV student, faculty, or staff disciplining in which you were in any way involved, including, but not limited to, being involved in the instigation of a complaint, the accused, a witness, and/or on a panel making decisions regarding the fate of an accused.

**Request No. 5:** Please produce and identify all documents identifying communications generated from January 1, 2006 until present, made or received by you, involving any staff, or student of the University of Nevada, Las Vegas, with whom you have had any form of sexual relationship, including an attempt thereof, as well as any documents identifying communication to any third party regarding that person with whom you had that sexual relationship.

**Request No. 6:** Please produce and identify all documents regarding any time you have, in any way, been involved in the hiring, firing, and/or disciplining of any employee or student of UNLV, as well as any documents identifying communication with any other employee regarding said admission/hiring/firing/disciplining.  This includes, but is not limited to, being on the hiring committee, involved in the instigation of a complaint, the accused, a witness, and/or on a panel making decisions regarding the fate of an accused.

**Request No. 7:** Please produce and identify all documents regarding any and all criminal, administrative, or civil proceeding to which you have been a party, regardless

the jurisdiction, including the arresting officer's report, if any, and any court records, dispositions, settlements, etc., regardless of whether or not such records are sealed or otherwise publicly unavailable.

**Request No. 8:** Please produce and identify all documents regarding any and all records of your use of any drug prescribed or otherwise, as defined by the Drug Enforcement Administration since January 1, 2000.

**Request No. 9:** Please produce and identify any and all records of any contracts with, as well as payments made or received from, any codefendants, from January 1, 2000, or any witness, as well as documentation that involves such contractual relations.

**Request No. 10:** Please produce and identify all documents concerning all your class records while at UNLV including, but not limited to, syllabi, guest lecturers, your attendance records, your student evaluations, any communication with your graduate assistant(s) regarding the classes, and any evidence of any reason that required you to miss attending your own class.

Defendant Montgomery objected to Plaintiff's requests for production on several grounds, including that they are irrelevant, not proportional to the needs of the case, over broad, unduly burdensome, harassing, vague and ambiguous and seek information that constitutes inadmissible character evidence, and are not narrowly tailored to protect Defendant's privacy interests. Defendant also objects to the requests seeking employee personnel records or student disciplinary records on the grounds that they are confidential and protected from disclosure by law. It does not appear that Defendant produced documents in response to any of the requests for production.

**B.   Interrogatories.**

**Interrogatory No. 1:** Identify each and every person that you have communicated or met with concerning any allegation that Darren cheated, or planned to cheat, on the Q-Exam, together with, the date and time of said communication. Set forth the substance of each communication identified in response to this Interrogatory. In responding to this interrogatory, please specifically identify by Bates number any documents which support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 3:** Provide a detailed and complete description of any conversation that you had with Darren, including, but not limited to, that in which you claim Darren discussed cheating on the Q-Exam. In responding to this interrogatory, please specifically identify by Bates number any documents with (sic) support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 4:** Provide a detailed and complete description of any conversation that you had with any other Defendant, including, but not limited to, that in which you claim Darren discussed planning to cheat on the Q-Exam. In responding to this interrogatory, please specifically identify by Bates number any documents with (sic) support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 6:** Provide a detailed list of any and all online accounts that you may have, or had, from April 2012 to date, including, but not limited to, email, social media, personal or work related accounts, etc., as well as any and all names that you use in those accounts. In responding to this interrogatory, please specifically identify by Bates number any documents with (sic) support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 8:** Provide a detailed and complete list of any and all individuals with whom you have had a sexual history, other than your spouse at the time, including any form of sexual conduct, including kissing, and/or genital contact, including the dates, times, and places and whether or not they were a student of UNLV at the time, and in which college they were enrolled.

**Interrogatory No. 9:** Provide a detailed and complete list of any and all meetings that you have had with any other Defendant, not mandated by the State of Nevada contractual requirements, in particular any social meetings that you may have had which did not involve a sanctioned event regarding the State of Nevada.

**Interrogatory No. 10:** Provide a detailed and complete list of any and all meetings that you have had with any other Defendant, during which, what appeared to be, marijuana, or any other federally illegal narcotic(s) was seen, smelled, ingested, as well as the name the person who provided the narcotic(s) at the time, to whom that person gave the narcotic(s), and the name of the person who in any manner smoked or ingested the narcotic(s).

**Interrogatory No. 11:** Provide a detailed and complete list of any and all meetings and communications you had with Phillip Burns since you began your working for the State of Nevada to date. Please include any in-person or phone conversations, emails, notes, letters, texts, contact through social media, instant messaging, etc., between you and Burns. In responding to this interrogatory, please specifically identify by Bates number any documents which support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 12:** Provide a detailed and complete list of any and all Defendants who told you that they had a sexual history with UNLV students, or UNLV students who told you that they had a sexual history with a Defendant, as well as the name of the Defendant, and the name of the student(s), as well as any details of that encounter which the Defendant or student informed you.

**Interrogatory No. 13:** Provide a detailed history of any communications that you had about Plaintiff with Lisa Moll-Cain from April 2012 to date, as well as any communications that you had with Lisa Moll-Cain about Plaintiff during the same time period. Please include any in-person or phone conversations, emails, notes, letters, texts, contact through social media, instant messaging, etc., between you and Burns. In responding to this interrogatory, please specifically identify by Bates number any documents which support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 14:** Provide a detailed history of any time that you were on any committee that involved admissions, hiring, disciplining, as well as the names, ethnicity, race, sex, gender and country of origin, of any candidates/accused, and your recommendations regarding selection or discipline of the candidates/accused, at any time in your academic or professional career. In responding to this interrogatory, please

7

specifically identify by Bates number any documents with (sic) support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 15:** Provide a detailed history of any time during your academic or professional career that you consciously told another person a fact that you knew not to be true. In responding to this interrogatory, please specifically identify by Bates number any documents which support your answer. If no documents exist, please specifically state so.

**Interrogatory No. 16:** Provide a detailed history of any time during your academic or professional career that you had a graduate student or graduate assistant drive a vehicle in which you were a passenger and there were no other student passengers. Please include the dates, times, pick-up destination points, and the purpose of any such transportation. Please also be certain to describe all of the individuals within the vehicle at the time.

**Interrogatory No. 17:** Provide a detailed list of names of any graduate assistants and professional assistants that you may have had since starting working for the State of Nevada, as well as their names, contact information, ethnicity, race, sex, gender, and country of origin.

**Interrogatory No. 18:** Describe in detail any psychological, psychiatric, or mental-health related treatment you have received in the time since you have started working for the State of Nevada UNLV, including, but not limited to, treatment related to substance abuse and/or addiction. Your response should include, but is not limited to, the nature of treatment, the name and contact information of each medical provider, and the dates of treatment, as well as any instances of use between and after any treatment, and the name and contact information of anyone at UNLV, past or present, who you told about the treatment, their position within the university, and when you told them.

Defendant Montgomery objected to these interrogatories on grounds that they are irrelevant, not proportional to the needs of the case, over broad, unduly burdensome, seek privileged information, improperly seek information which constitutes inadmissible character evidence, and are not narrowly tailored to protect Defendant's privacy interests. Defendant also objects to interrogatories seeking information in employee personnel files or student disciplinary records on the grounds that they are confidential and protected from disclosure by law.

Except for Interrogatory No. 4, Defendant Montgomery did not answer any of the interrogatories. In answer to Interrogatory No. 4, she stated: "As to the part of this interrogatory that requests information concerning conversations in which [Defendant] claim[s] Darren discussed planning to cheat on the Q-Exam", Defendant states that no such conversations have taken place." *See Motion* (ECF No. 165), pg. 53.

. . .

**C.  Requests for Admissions.**

**Request No. 1** asks Defendant to admit that she "had had sexual intercourse with ****." Request No. 2 asks her to admit that she "had any intentional sexual contact, including kissing, or any type of genital contact with UNLV students in the Hotel College other than ****. Defendant objected to these requests on the grounds that they are irrelevant, harassing, abusive, and solely intended to embarrass.

**Request No. 14** asks Defendant to admit that at some point prior to August 2013 she communicated with Kristin Malek about UNLV faculty and staff beyond that required by UNLV employment.  **Request No. 17** asked her to admit that she would send Kristin Malek text messages about other UNLV faculty, staff, and/or students.  **Request No. 18** asked her to admit that Kristin Malek would send her text messages about other UNLV faculty, staff, and/or students beyond that required by UNLV employment.  Defendant objected to these requests as irrelevant, vague, ambiguous and confusing, over broad, unduly burdensome and as also presenting an improper hypothetical.

**Request No. 22** asks Defendant to admit that she has communicated to people that she has a license to smoke marijuana.  **Request No. 23** asks her to admit that she has a state issued license to smoke marijuana.  Defendant objected to these requests on the grounds that they are irrelevant, harassing, abusive, and solely intended to embarrass, and also seek privileged information.

**Request No. 34** asks Defendant to admit that prior to June 2013 she had reason to believe who Phillip Burns was.  Defendant objected to this request on the grounds that it is vague, ambiguous, and unintelligible in its entirety such that she cannot determine the assertion she is requested to admit. **Request No. 35** asked her to admit that prior to June 2013 she and Phillip Burns had spoken on more than one occasion.  Defendant objected to this request on the grounds that it unreasonable and unduly burdensome to expect a witness to recall all conversations with a particular person that have occurred at any point in time and to then determine whether two or more such conversations occurred prior to a specific date more than three years ago.

**Request Nos. 49 and 50** ask Defendant to admit that she has been to rehabilitation centers for alcohol abuse and drug abuse. **Request No. 58** asks her to admit that she willingly and knowingly consumed federally illegal narcotics prior to June 2016.  Defendant objected to these requests on the

grounds that they are irrelevant, harassing, abusive, and solely intended to embarrass and seek privileged information.

**Request Nos. 60 and 61** ask Defendant to admit that she has used her personal phone to communicate with or to contact Kristin Malek. Defendant objected to these request on the grounds that they are harassing, abusive, and irrelevant. She also objects on the grounds that they infringe her privacy interests.

## DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable."

The intent of the 2015 amendments to Rule 26(b) was to encourage trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse, and to actively manage discovery to accomplish the goal of Rule 1 "'to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Roberts v. Clark County School District*, 312 F.R.D. 594, 601–04 (D. Nev. 2016). The court, quoting Chief Justice Roberts' 2015 Year-End Report, states:

> The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary and wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery.

312 F.R.D. at 603. *See also Nationstar Mortgage v. Flamingo Trails No. 7*, 316 F.R.D. 327, 331 (D.Nev. 2016).

The party opposing discovery has the burden of showing that it is irrelevant, overly broad, or unduly burdensome. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D.Ind. 2000); *Fosbre*

10

*v. Las Vegas Sands Corp.*, 2016 WL 54202, at *4 (D.Nev. Jan. 5, 2016); *Izzo v. Wal-Mart Stores, Inc.*, 2016 WL 593532, at *2 (D.Nev. Feb. 11, 2016). When a request is overly broad on its face or when relevancy is not readily apparent, however, the party seeking discovery has the burden to show the relevancy of the request. *Desert Valley Painting & Drywall, Inv. v. United States*, 2012 WL 4792913, at *2 (D.Nev. Oct. 9, 2012) (citing *Marook v. State Farm Mut. Auto. Ins. Co.* 259 F.R.D. 388, 394-95 (N.D. Iowa 2009)). The 2015 amendments to Rule 26(b) have not changed these basic rules, although they must now be applied with a greater emphasis on proportionality. As the court in *In re Bard IVC Filters Products*, 317 F.R.D. 562, 563 (D.Ariz. 2016), states:

> Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case. The Advisory Committee Note makes clear, however, that the amendment does not place the burden of proving proportionality on the party seeking discovery. The amendment "does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Rule 26, Advis. Comm. Notes for 2015 Amends. Rather, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."

A party responding to a request for production under Rule 34 has an affirmative duty to seek and produce relevant documents within her possession, custody and control. *Envtech, Inc. v. Suchard*, 2013 WL 4899085, at *2 (D.Nev. Sept. 11, 2013) (citing *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal. 2006)). *See also Casun Invest, A.G. v. Ponder*, 2017 WL 3925417, at *2 (D.Nev. Sept. 6, 2017). The fact that other parties have produced similar documents is not a valid reason for the responding party not to produce relevant documents or information. If the responding party does not have responsive documents, she must provide an explanation of the search she conducted for responsive documents "with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id.* (quoting *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D.Cal. 2012)). To the extent that Defendant states that responsive documents exist, but are protected from disclosure by the attorney-client privilege, work product doctrine or other privilege, she should so state and provide a privilege log.

Plaintiff is entitled to obtain discovery relating to his allegations that he was falsely accused of intending to cheat on the Q-Exam in May 2013, and regarding the circumstances relating to the March

2016 letter notifying him that he was being separated from the graduate program for failing to return after the expiration of his leave of absence. Many of Plaintiff's discovery requests are directed at obtaining information or admissions relating to the allegations that Defendant Montgomery used or abused alcohol and controlled substances, that she engaged in sexual relations with a student, and that she discriminated against students on the basis of their sex, gender, race, or national origin. The Court sustains Defendant's objections to most of these discovery requests. Information regarding Defendant Montgomery's alleged use or abuse of alcohol or controlled substances, or her sexual conduct is irrelevant to the extent it is sought for purposes of impeaching her character for truthfulness. There is no relevant basis for inquiring into Defendant Montgomery's sexual history or behavior. Plaintiff may, however, explore the nature of Defendants' relationships with each other. *See Order* (ECF No. 188). While Defendant Montgomery's alleged alcohol or substance abuse problem could be relevant to her ability to perceive and recall relevant events, the Court will not require Defendant Montgomery to produce her private medical or mental health treatment records relating to alleged alcohol or substance abuse problems.

In addition to the fact than many of Plaintiff's discovery requests are irrelevant or over broad, they are also not proportional to the needs of the case. Plaintiff was questioned in May 2013 about an alleged accusation that he intended or was planning to cheat on the Q-Exam. He denied the accusation and was subsequently advised by the Dean of the Hotel College that the accusation was a student based rumor and was "clearly not the thinking or belief of the College or University." *Id.* at ¶ 176. Plaintiff then took the Q-Exam examination and passed it. This is not a case in which the University took adverse action against Plaintiff based on an accusation that was false. Similarly, Plaintiff was notified in March 2016 that he was being separated from the Ph.D. program for failing to return from his leave of absence. The letter was retracted 11 days later, and Plaintiff continued on his leave of absence. While Plaintiff is entitled to conduct reasonable discovery into the facts and circumstances relating to these two events, they do not warrant wide ranging discovery into the University's or Defendant administrators' alleged discrimination against students or faculty. Nor does it warrant discovery into the the facts and circumstances relating to disciplinary action against other students or faculty.

In the interests of moving this case forward, however, the Court will order Defendant to provide

substantive responses to discovery requests that can be reasonably limited to relevant and discoverable information.

**Request for Production No. 1** is clearly overbroad, but reasonably encompasses documents that may contain relevant information. In response to this request, Defendant Montgomery is ordered to produce any nonprivileged documents in her possession, custody or control that contain information regarding possible cheating on the May 2013 Q-Exam. This includes nonprivileged information regarding statements allegedly made by Plaintiff, Defendant Montgomery or others regarding cheating on the Q-Exam. It also includes documents relating to the investigation of the accusation, such as communications between individuals regarding the investigation, or statements made by Defendant Montgomery or others regarding whether Plaintiff may have intended to cheat on Q-Exam. Defendant Montgomery is also ordered to produce any nonprivileged documents in her possession, custody or control relating to the March 2016 letter to Plaintiff regarding his alleged failure to return from his leave of absence and separating him from the Ph.D. program.

**Request for Production No. 7** seeks all documents regarding any and all criminal, administrative or civil proceeding in which Defendant Montgomery has been a party. This request is also clearly overbroad. However, if Defendant has possession, custody or control of any records relating to a prior felony conviction or conviction of a crime involving dishonesty or falsehood, then she should produce such records. *See* Fed.R.Evid. 609. Likewise, if Defendant Montgomery has any records pertaining to a civil or administrative proceeding in which she was accused of dishonesty or untruthfulness, she should produce such records. *See* Fed.R.Evid. 608.

Defendant's objection to **Request for Production No. 9** is sustained. While it may be relevant to inquire into the financial relationship between a party and another party or witness, this request is clearly over broad in seeking all contractual relations with co-defendants and any payments received from co-defendants or witnesses. Defendant Montgomery was an employee of Co-Defendant UNLV and was paid a salary. Plaintiff has not shown the relevance of Defendant's employment contract or of her salary. Defendant Montgomery also is not required to respond to Requests for Production Nos. **2, 3, 4, 5, 6, 8,** and **10.**

. . .

13

**Interrogatory Nos. 1, 3,** and **4**, although inartfully worded, seek relevant information regarding Defendant Montgomery's knowledge of any communications with other persons regarding the allegation that Plaintiff planned to cheat on the Q-Exam and any conversations that Defendant Montgomery may have had with Plaintiff about the Q-Exam. Interrogatory No. 3 also seeks information about communications that Plaintiff and Defendant Montgomery may have had on other topics. The nature and extent of the communications between Plaintiff and Defendant Montgomery is generally relevant. Plaintiff has indicated that he had little or no contact with Defendant Montgomery. It therefore does not appear unduly burdensome for Defendant to answer this inquiry.

**Interrogatory No. 6** asks Defendant Montgomery to identify her email, text messaging or other social media accounts since April 2012. As stated above, Defendant Montgomery is required to produce nonprivileged documents that contain information relevant to the claims in this action. Such information could be contained in Defendant Montgomery's social media accounts. Both parties have cited *Roberts v. Clark County School District*, 312 F.R.D. at 608, in support of their respective positions on Interrogatory No. 6. The defendant in *Roberts* sought information relating to plaintiff's alleged emotional distress. The court ordered plaintiff to identify all of the social media sites on which she had an account from 2011 to the present. The court further required plaintiff's counsel to review the contents of those accounts and to produce any content that contained a reference to the lawsuit. The Court enters a similar order here. Defendant Montgomery shall provide access to her social media accounts to her attorney, who shall review the content of those accounts and produce any relevant, nonprivileged content contained therein.

Defendant's objections to **Interrogatory No. 9** are sustained because a request to identify all meetings or contacts that Defendant Montgomery may have had with any other Defendants is simply overbroad and irrelevant. While it is not improper for Plaintiff to inquire into the nature and extent of Defendant Montgomery's relationship with other Defendants or individuals involved in the subject events, the Court will not attempt to revise such an overbroad interrogatory to confine it to relevant information.

**Interrogatory No. 11** is modified to require Defendant Montgomery to describe the nature and extent of her professional or personal contacts, if any, with Defendant Phillip Burns prior to, during, and

14

after the investigation into the cheating accusation. Plaintiff alleges that Defendant Burns told him at their first meeting that he was not friendly with Defendant Montgomery and did not know her by name. Plaintiff alleges that he subsequently discovered, however, that Burns had previously spoken to Montgomery's classes and that Burns and Montgomery had socialized with each other. The interrogatory, as modified, therefore requests relevant information.

**Interrogatory No. 13** is also modified to require Defendant Montgomery to describe any communications she had with Defendant Lisa Moll-Cain about Plaintiff from April 2012 to the present. Plaintiff clarifies that the reference in this interrogatory to "Burns" was a typo and was intended to reference Defendant Moll-Cain.

Defendant is not required to answer **Interrogatory Nos. 8, 9, 10, 12, 14, 15, 16, 17,** and **18**.

Defendant's objections to **Requests for Admission Nos. 14, 17** and **18** as vague and over broad are sustained. The nature and extent of Defendant Montgomery's and Defendant Malek's relationship is relevant, however, given the implicit allegation that they acted in concert to defame Plaintiff and cause him to be removed from the Ph.D program. Communications between these Defendants regarding Plaintiff or the investigation of the accusation are obviously also relevant. Nothing in this order precludes Plaintiff from pursuing relevant discovery on these matters through properly worded requests for admissions or other discovery methods.

**Requests for Admissions Nos. 34** and **35** are not necessarily irrelevant. The Court agrees with the Defendant, however, that these requests are so inartfully worded, that Defendant cannot reasonably determine what it is asked to admit or deny. If Plaintiff desires that Defendant admit that she had a professional or personal acquaintance with Defendant Burns at any particular point in time, then he should serve a request for admission that clearly states such a request. Finally, **Requests Nos. 60** and **61**, are sufficiently relevant and clearly stated that Defendant will be required to admit or deny them.

Defendant is not required to answer **Requests for Admission Nos. 1, 2, 22, 23, 49, 50,** and **58.** Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Second Motion to Compel Defendant Rhonda Montgomery to Further Respond to Plaintiff's Discovery Requests (ECF No. 165) is **granted**, in part, as follows: Defendant Montgomery is ordered to respond to **Requests for Production Nos. 1** and **7**;

**Interrogatory Nos. 1, 2, 3, 4, 6, 11,** and **13**; and **Requests for Admissions Nos. 60** and **61** in accordance with the foregoing provisions of and as modified in this order. Defendant shall serve her responses to these discovery requests within fourteen (14) days of the filing of this order. Defendant is not required to respond to the other discovery requests.

**IT IS FURTHER ORDERED** that Defendant Montgomery's Countermotion for Protective Order (ECF No. 181) is **granted** with respect to Plaintiff's discovery requests that seek information regarding the use or abuse of alcohol, controlled substances, sexual conduct or behavior, and alleged acts of discriminatory conduct against other persons.

DATED this 27th day of September, 2017.

GEORGE FOLEY, JR.
United States Magistrate Judge